**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| XIONGEN JIAO, an individual, QIANJU JIAO, an individual, ZHONGHUA YU, an individual, JIATONG YU, an individual, PENGFEI ZHOU, an individual, XUANMEI ZHOU, an individual,<br><br>    Plaintiffs,<br><br> vs.<br><br> NINGBO XU, an individual, and LCL COMPANY LLC, a Texas limited liability company.<br><br>    Defendants,<br><br> And<br><br> DONGTAI INVESTMENT GROUP, LLC, a Texas Limited Liability Company<br><br>    Nominal Defendant | **AMENDED VERIFIED COMPLAINT AND AMENDED APPLICATION TO REINSTATE TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION INCLUDING THE APPOINTMENT OF A RECEIVER FOR DONGTAI AND APPLICATION FOR  TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION INCLUDING THE APPOINTMENT OF A RECEIVER FOR DONGTAI, AND PERMANENT INJUNCTION**<br><br> **(Expedited Briefing and Hearing Requested)**<br><br> Case No.: 4:19-cv-01848<br><br> Judge: Hon. Keith P. Ellison |

Plaintiffs Xiongen Jiao ("XJ"), Qianju Jiao ("Jiao"), Zhonghua Yu ("ZY"), Jiatong Yu ("Yu"), Pengfei Zhou ("PZ"), and Xuanmei Zhou ("Zhou")[1] by and through their attorneys, hereby file this Amended Verified Complaint[2] by right and Amended Application to Reinstate the Temporary Restraining Order, Preliminary Injunction including the Appointment of a Temporary

---

[1] The individual Plaintiffs also bring their claims derivatively on behalf and for the benefit of Dongtai.
[2] This action is initiated as a permissible re-filing of *Jiao v. Xu,* Case Number 4:18-cv-04756 due to the Court's dismissal of Plaintiffs' Second Amended Verified Complaint.

Receiver for Dongtai[3], and a new Amended Application for Temporary Restraining Order, Preliminary Injunction including the Appointment of a Temporary Receiver for Dongtai and for Permanent Injunction against Defendants Ningbo Xu ("Xu"), LCL Company LLC ("LCL"), and Dongtai Investment Group ("Dongtai") (nominal defendant) and alleges as follows:

## INTRODUCTION

This matter which involves claims and the need for immediate injunctive relief are the direct result of Defendants Xu and LCL's conduct arising out of Xu's theft of funds, violation of federal securities law, fraud, fraudulent concealment, conversion of Dongtai's and Plaintiffs' funds, and gross mismanagement of Dongtai's business operations including but not limited to the joint venture and investment in the Crowne Plaza Hotel located at 9090 Southwest Freeway Houston TX 77049 (the "Crowne Plaza Hotel" or the "Hotel").

Xu was, at all relevant times, the President and sole Managing Member of Dongtai and purportedly owned 50% of the member units in Dongtai.  Xu is also the sole owner of LCL. Dongtai is a limited liability corporation formed under the laws of the State of Texas.  Dongtai's original members of record are Plaintiffs XJ, ZY, and PZ.

As Dongtai's corporate records and American Title Company of Houston's ("ATOC") records demonstrate, Xu did not pay $3,000,000 for his 50% of Dongtai's member units as he agreed to do under the Parties' agreements.  Xu only contributed $750,000.00 ($2.25 million short) while misappropriating $1,335,561.97.  In other words, although Xu paid $750,000.00, he took the $750,000.00 back (and then some) and effectively nullified any "partial performance" he may

---

[3]  In matter number 4:18-cv-04756, Plaintiffs' Application for Temporary Restraining Order, Preliminary Injunction including the Appointment of a Temporary Receiver for Dongtai, and Permanent Injunction requested and filed in conjunction with the Original Verified Complaint [Doc. Nos. 1 and 2] was granted by the Court on December 20, 2018 [Doc. Nos. 7-9].

have made.  Thus, Xu is not a shareholder of Dongtai as he failed to pay for his shares and defrauded Plaintiffs into believing he had by providing them with a falsified HUD closing document.

Xu fraudulently induced the original members, Chinese foreign investors, into purchasing securities in Dongtai and investing in the purchase of the Crowne Plaza Hotel.  Xu made numerous material misrepresentations and/or omissions that Xu did knowingly or with deliberate recklessness and for the purpose and effect of concealing information regarding Dongtai and the Crowne Plaza purchase's true status as a façade and vehicle for a massive fraud and conversion to benefit Xu.  As a result of Xu's fraudulent actions, Plaintiffs were duped into purchasing Dongtai member units via wire transfers from China and the Crowne Plaza Hotel.

On January 6, 2017, Xu, through his limited liability company, LCL, entered into a joint venture with Plaintiffs Jiao, Yu, and Zhou[4] to acquire and operate the Crowne Plaza Hotel.  It was agreed that Dongtai would have 100% ownership of the Crowne Plaza Hotel.  Moreover, on January 6, 2017, Xu, as Dongtai's President and sole Managing Member entered into a contract with the Crowne Plaza Hotel's then-current owner to purchase the Hotel for Dongtai.

As Defendants have stolen and looted the funds and financial accounts of Dongtai and those associated with the joint venture including, but not limited to, the funds utilized to operate and fund the Crowne Plaza Hotel's operations, their actions have gravely jeopardized Plaintiffs' investment and ownership interests in the Crowne Plaza Hotel.  Notably, due to Defendants' willful and purposeful acts, the Crowne Plaza Hotel had not paid expenses vital to its operations

---

[4] Although Zhonghong, Xingxu, and Pengrui are mentioned in the Joint Venture Agreement, they are not and cannot be parties to the agreement as they were not in existence yet and are not members of Dongtai. *See* Ex. "3"

including but not limited to the license fee for the right to use the Crowne Plaza brand which was to terminate on or about January 7, 2019 unless payment had been made.  In addition, to losing the Crowne Plaza brand due to Xu and LCL's willful conduct, the Crowne Plaza Hotel is on the verge of defaulting on its loan and payroll obligations.

After receiving reports that Xu's conduct was potentially harming Dongtai and jeopardizing the Hotel's operations, Plaintiffs insisted that Dongtai obtain an audit of its corporate books and records to further investigate.   On Sunday, December 2, 2018, Plaintiffs learned that InterContinental Hotels Group ("IHG") sent Dongtai correspondence stating that because Dongtai failed to pay the Crowne Plaza brand fees on a quarterly basis as agreed to under the Parties' written agreement, Dongtai breached its agreement with IHG by failing to pay the licensing fee of $180,000 which was grossly overdue. As a direct result of Defendants' breach of fiduciary and managerial duties to Plaintiffs as well as Defendants' gross negligence, IHG issued an ultimatum stating that unless the $180,000 fee is paid in full by January 7, 2019, the License to use the Crowne Plaza brand will be terminated immediately and the Hotel will be removed from the Crowne Plaza system on the termination date.

As this along with other recent developments gravely jeopardized Plaintiffs' capital investments and equity in Dongtai as well as the joint venture, on December 7, 2018, Plaintiffs' counsel wrote to Xu demanding that Xu immediately: 1) provide to the shareholders a written explanation as to: a) why the shareholders were not notified in advance of Defendants' failure to pay the license fee; b) why was the license fee not timely paid; c) why Dongtai did not have the money to pay for the license fee; d) why did the shareholders received no dividend from their investment; and e) an explanation for the lack of money in the company's accounts to cover normal

4

expenses; and 2) That Xu tender full payment of the outstanding license fees to IHG on or before Monday, December 10, 2018.  Xu responded by immediately stopping the audit in order to conceal evidence of his wrongdoing.

Along with filing a Verified Complaint in *Jiao v. Xu,* Case Number 4:18-cv-04756, Plaintiffs moved for an immediate order of the Court under Rules 64, 65 and 66 of the FED. R. CIV. P., Chapter 64 of the TEX. CIV. PRAC. & REM. CODE, and TEX. BUS. & COM. CODE § 24.008: 1) to allow Plaintiffs to inspect Dongtai's corporate records and books and obtain an independent audit to determine the harm Defendants have inflicted upon Dongtai in order to prevent further and irreparable harm; 2) remove Xu as President and Managing Member of Dongtai and/or suspend and remove LCL's and Xu's management authority and ability regarding the affairs of the joint venture; 3) freeze and seize/attach to LCL's bank accounts; 4) freeze and seize and/or attach  Xu's and Dongtai's bank accounts; 5) appoint a temporary receiver for Dongtai to manage its operations and affairs and appoint or elect a new President and Managing Member; 6) compel Defendants via a constructive trust from the funds seized to return whatever funds they took from Dongtai and the Joint Venture; and 7) compel Xu and/or LCL via a constructive trust from the funds seized to pay any outstanding obligations (including the license fee and associated costs) to avoid the shutdown of the Crowne Plaza Hotel.  [4:18-cv-04756-Doc. No. 2].  The Court granted Plaintiffs' motion for immediate injunctive relief.  [4:18-cv-04756-Doc. No. 7] and thus allowed Plaintiffs to avert disaster for the time being.

As Defendants could not directly challenge the Court's Preliminary Injunction Order, Defendants in a clear attempt to dissolve the Preliminary Injunction in order to enable Xu to take, run, and hide with Plaintiffs' money, Xu was able to get the Plaintiffs' action in matter number

4:18-cv-04756 dismissed on technical grounds as at the time of the original filing Plaintiffs did not have sufficient evidence for a federal securities claim. However, recent evidence has come to light including Plaintiffs' obtainment and review of ATOH's records that Xu did not pay for his member units (that Xu never intended to given his actions) and that Xu may have conspired with the closing agent ATOC to hide this fact as Xu provided Plaintiffs with a fake HUD-Settlement Statement. Additionally, recent evidence has come to light that Xu took and embezzled Dongtai's property tax refund of over $28,000.00.

Plaintiffs also demand compensation in excess of $1,500,000.00.

## PARTIES

1. Defendant Xu was at all relevant times the President and sole Managing Member of Dongtai and purportedly owns 50% member units in Dongtai. Xu also is the owner and operator of LCL. Xu is a resident of the State of Texas and his residential address is 1810 Alcorn Bayou Dr., Sugar Land TX 77479.

2. Defendant LCL is a limited liability corporation formed under the laws of the State of Texas. Ex. "33." Xu is the registered agent for LCL and LCL is owned by Xu and Hao Lu. *Id.* LCL is a member of the joint venture involving the Crowne Plaza Hotel.

3. Dongtai is a limited liability corporation formed under the laws of the State of Texas. Dongtai's original members of record are Xu, XJ, ZY, and PZ. Collectively they were own/owned 100% of the LLC's member units. Under the joint venture agreement, Dongtai has 100% ownership of the Crowne Plaza Hotel.

4.     Plaintiff XJ is an individual residing in China and specifically at 91 Huancheng North Road, Shaoyang Hunan CN 422200.   XJ is and/or was a member of the LLC and owns and/or owned 16.66% member units in exchange for his capital contribution of $1,000,000.00.

5.     Plaintiff Jiao is XJ's son and is an individual residing in China and specifically at 791 Huancheng North Road, Shaoyang Hunan CN 422200.   Jiao is Dongtai's Treasurer.  XJ designated Jiao as his agent to manage and protect XJ's interest in Dongtai.  XJ assigned and/or transferred his LLC member units to Jiao.

6.     Plaintiff ZY is an individual residing in China and specifically at 113-1 Taohong Middle Road, Shaoyang Hunan CN 422200.  ZY is and/or was a member of the LLC and owns and/or owned 16.66% member units in exchange for his capital contribution of $1,000,000.00.

7.     Plaintiff Yu is ZY's son and is an individual residing in China and specifically at 113-1 Taohong Middle Road, Shaoyang Hunan CN 422200.   Yu is the Dongtai's Secretary.  ZY designated Yu as his agent to manage and protect ZY's interest in Dongtai.  Upon information and belief,  ZY assigned and/or transferred his LLC member units to Yu.

8.     Plaintiff PZ is an individual residing in China and specifically at 569 Furong Middle Roa  Building No.17 Yuhua District,  Changsha Hunan 410007.   PZ is and/or was a member of the LLC and owns and/or owned 16.66% member units in exchange for his capital contribution of $1,000,000.00.

9.     Plaintiff Zhou is PZ's spouse and is an individual residing in China and specifically at 69 Furong Middle Road Building No.17 Yuhua District, Changsha Hunan 410007.   PZ designated Zhou as his agent to manage and protect PZ's interest in Dongtai.  Upon information and belief, PZ assigned and/or transferred his LLC member units to Zhou.

## JURISDICTION AND VENUE

10.     This action involves, among other things, securities law and common law fraud, breach of contract, and breach of fiduciary duty that was perpetrated on Plaintiffs to obtain each of their investments and money for Defendants to steal, embezzle and convert.

11.     Plaintiffs are foreign Chinese nationals that were fraudulently induced to each invest millions of dollars via wire transfers from China of member units of Dongtai (a company Xu during all relevant times had control over as the President and sole Managing Member) based on material misrepresentations made by Xu.

12.     Some of the claims asserted herein arise under Sections 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and Section 27 of the Exchange Act, 15 U.S.C. §78aa

14.     This Court also has jurisdiction over the state-law claims asserted herein via supplemental  jurisdiction. 28 U.S.C. § 1367(a) as these claims are derived from Xu's fraudulent scheme to induce Plaintiffs into purchasing Dongtai's member units.

15.     In connection with the conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the United States mails and interstate communications.

16.     This Court has personal jurisdiction over the Defendants as they are Texas residents and their acts and/or omissions occurred in Texas.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) as the Defendants are either incorporated in Harris County, Texas or reside in Fort Bend County, Texas and because the act and/or omissions occurred in Harris County, Texas.

18.     As this matter involves claims and questions under federal and Texas law, both jurisdiction and venue in in the Southern District of Texas are appropriate and proper.

## ALLEGATIONS OF FACT

*A.  Background Information*

19.     On or about December 15, 2016, Dongtai Investment Group, LLC is formed by Xu, XJ, ZY, and PZ.

20.     Prior to December 15, 2016, Xu communicated via instrumentalities of interstate commerce including but not limited to emails, texts, written correspondences, and discussions via the App WeChat numerous representations and promises

21.     On or before January 6, 2017: 1) XJ designated Jiao as his agent to manage and protect XJ's interest in Dongtai (Jiao Declaration ¶ 2); ZY designated Yu as his agent to manage and protect ZY's interest in Dongtai; and 3) PZ designated Zhou as his agent to manage and protect PZ's interest in Dongtai.

22.     Moreover: 1) XJ assigned and/or transferred his Dongtai member units to Jiao (Jiao Declaration ¶ 2); 2) ZY assigned and/or transferred his Dongtai member units to Yu; and 3) PZ assigned and/or transferred his Dongtai member units to Zhou. Ex. "5."

23.     These assignments/transfers were ratified by Xu (who purportly owned 50% of Dongtai) as Dongtai's President and sole Managing Member.

24.     Xu has multiple businesses and companies which are not associated with Dongtai. Ex. 32.  These include World Auto Direct; Drive with Pride; Alkins; A, P&G; Yalu Group; Scott Investment; and Sweet Water Investment. *Id.* As demonstrated herein, Xu improperly and without authorization transferred Dongtai and Plaintiffs' funds to these companies for his own personal use.  Indeed, Xu induced Plaintiffs to purchase Dongtai shares so Xu could fund his own private enterprises.

25.     On January 6, 2017, LCL and its representative Xu, Yu, Jiao, Zhou, and Dongtai and its lawful shareholders and investors executed a Joint Venture M&A and Operation of the Crowne Plaza Hotel Agreement.  Ex. "2" (the "Joint Venture Agreement").

26.     As set forth in the Joint Venture Agreement: 1) Xu fully guaranteed the loan amount used to purchase the Hotel; 2) Xu agreed once a month to pay the Plaintiffs dividends in the ratio of 16% each; 3) Plaintiffs each must pay Xu $10,000.00 each for a guarantee fee and Plaintiffs must each pay Xu $10,000.00 for salary; 4) Xu enjoys the controlling stake and hotel management in the final decision-making rights serving as the Hotel's chairman and in sole charge of all hotel operations; 5) that Dongtai will set up an account under the Hotel's name; 6) that for more than $200 of Dongtai account expenditure, approval for said expenditure must be signed by both Xu and Zou Lingli; and 7) that the Hotel operator shall utilize the funds held in the Hotel's account (which is 100% owned by Dongtai)  to maintain the daily operation of the Hotel and related facilities. *Id.*

27.     Also on January 6, 2017, Xu, as Dongtai's President and Managing Member entered into a contract with the then-current owner of the Crowne Plaza Hotel to purchase the Hotel for Dongtai.  Ex. "1."

28.     Subsequently, Dongtai established two bank accounts with Golden Bank: 1) an operating account for the Hotel and 2) an account for the Hotel closing which after the closing became Dongtai's operating account. Jiao Declaration ¶ 9; *see generally* Ex. "11."  Moreover, Dongtai also established an account with Bank of America for the Hotel's restaurant revenue. Plaintiffs do not have access to the Bank of America account.  *Id.*

29.     On or about March 4, 2017, Michael Udayan ("Udayan") and American Hospitality Group, LLC entered into a Hotel Management Agreement with Dongtai. Ex. "30."

30.     The agreement calls for Udayan and American Hospitality to: 1) use best efforts in managing and operating the Hotel; 2) respond to and act upon concerns and issues raised by Dongtai; 3) manage the Hotel in accordance with the Franchise Agreement; 4) apply for and use its best efforts to obtain and maintain all licenses; 5) maintain the Hotel records accurately in a timely fashion; 6) be responsible for the maintenance and repair of the Hotel; 7) comply with all statutes, laws and regulations and operate the Hotel lawfully; 8) timely respond and address Guest complaints; 9) comply with the Annual Plan as approved by Dongtai and shall not incur any substantial expense not set forth in the annual plan; 10) will disburse funds on Dongtai's behalf from the Hotel's accounts as required to operate the Hotel including payment of franchise fees; and 11) provide the Hotel's financial statements to Dongtai.  *Id.*

   *B.  Plaintiffs are Fraudulently Induced to Invest in Dongtai*

31.     Prior to forming Dongtai, Xu made many material representations to XJ, ZY, and PZ to induce them to investing and forming Dongtai.  Xu communicated to Plaintiffs via telephone, mail, email, and/or the App WeChat may promises and assurances including, but not limited to: a) the proposal for funding Dongtai through each members' purchase of member units; b) Xu would

contribute $3,000,000 as his capital contribution in exchange for 50% stake in the LLC; c) Dongtai's profits would be distributed on a pro rata basis; d) that Dongtai's funds would be used solely for Dongtai's business purpose in purchasing and operating the Crowne Plaza Hotel; and d) that as President and sole Managing Member, Xu would carry out his duties as delineated in the Bylaws (Ex. "4") including but not limited to ensuring that Dongtai's financial obligations were timely satisfied to avoid defaults and filing accurate and timely tax returns for the company.

32.    Xu knowingly made these false promises and representations to Plaintiffs knowing full well Plaintiffs would reasonably rely on Xu's representations as Plaintiffs did not know that Dongtai and the Crowne Plaza Hotel investment was a façade and vehicle for Xu's scheme for massive fraud and conversion.

33.    On or about December 15, 2016, Xu, XJ, ZY, and PZ formed Dongtai, a limited liability corporation under the laws of the State of Texas for the purpose of acquiring a Crowne Plaza Hotel in Houston.  Ex. "4".

34.    Xu exclusively controlled as Dongtai as President and sole Managing Member.

35.    Indeed, Xu at all relevant times, had and exercised complete dominion over Dongtai including Dongtai's funds as Plaintiffs lacked the ability to change the LLC's governing documents and agreements given the 2/3 vote requirement and Xu's 50% stake.

36.    As a result of Xu's knowingly false material misrepresentations to induce Plaintiffs to purchase member units in Dongtai and make Xu President and sole Managing Member and Plaintiffs reasonable reliance upon Xu's material misrepresentations, Xu among other things stole, converted, and misappropriated the funds Plaintiffs invested in Dongtai as well as Plaintiffs' share of the profits congruent to their respective member units resulting in damage and harm to Plaintiffs.

37.     Plaintiffs' sustained damages include but are not limited to: loss or threatened loss of their capital investments; diminishment of their capital investments; devaluation of their member units; devaluation and threatened loss of Dongtai's primary asset the Hotel; threatened loss of the Crowne Plaza brand name; loss of profits and dividends; and loss of economic opportunities in other investments.

*C.  Xu and LCL Defraud Dongtai's Other Membership Unit Owners*

38.     Xu claims he made a capital contribution of $3,000,000.00 in exchange for 50% of Dongtai's member units and designation as Dongtai's sole managing member.  *Id.*  However, documentary evidence (including the closing statements for the purchase of the Hotel) demonstrates Xu did not satisfy his contractual obligations and did not make the required capital contribution and makes clear that Xu never intended to pay for his member units.  *See* Declaration of Huan Cong Nguyen, CPA with attached Accounting Report.

39.     As Dongtai's and ATOC's records demonstrate, Xu only contributed $750,000.00 ($2.25 million short) while misappropriating $1,335,561.97. *Id.*  In other words, although Xu paid $750,000.00, he took the $750,000.00 back (and then some) and effectively nullified any "partial performance" Xu may have made.  *Id.*

40.     Thus, Xu is not a shareholder of Dongtai, as he failed to pay for his shares and defrauded Plaintiffs into believing he had by providing Plaintiffs with a falsified HUD closing document.  As Xu did not pay for his member units, the documents reflecting the percentage of Xu's member units must be declared and adjusted accordingly.

41.     Specifically, Xu prepared a bogus HUD-Settlement Statement and gave it to Plaintiffs to fraudulently conceal that Xu did not tender any funds whatsoever for his shares. Ex.

42. Notably, the HUD-Settlement Statement the closing agent ATOC provided is vastly different than the one Xu provided to Plaintiffs. *Id.*; Ex. "22."

42. Interestingly, several of Xu's fraudulent transactions were made to ATOC. Upon information and belief, this is not coincidence and neither is ATOC's refusal to provide the requested information.

43. Given Xu's misrepresentations, XJ, ZY, and PZ each made a capital contribution of $1,000,000.00 in exchange for the other 50% of Dongtai's member units divided equally at approximately 16.66% member units respectively. *Id.*

   *D. Xu Misappropriates Funds From Dongtai*

44. In the Spring of 2017, Xu informed Jiao that a franchise application fee of $100,000.00 payable to IHG is due in order for Dongtai to take over the Crowne Plaza franchise from the sellers. Jiao Declaration ¶ 11; Ex. "31."

45. Xu's statement was false as the actual application fee was only $15,000.00. *Id.* The bank records clearly show that Xu deposited the $100,000.00 and made separate withdrawals including only $15,000.00 as payment for the franchise application fee. *Id.*

46. On or about March 7, 2017, Xu improperly and without proper authorization transferred $85,000.00 from Dongtai's Hotel bank account and used the funds for his own benefit and purpose. Exs. "11" and "31."

47. On April 7, 2017, Xu stole, embezzled, misappropriated and/or misused monies in Dongtai's dividend account with Golden Bank, by unlawfully and without authorization transferring $27,003.00 from that account for his own purposes and benefit. Ex. 37.

48.     On May 1, 2017, Xu stole, embezzled, misappropriated and/or misused monies in Dongtai's dividend account with Golden Bank for his own purposes and benefit.   More specifically, Xu unlawfully and without authorization transferred $55,006.00 that account for his own purposes and benefit.  Ex. 38.

49.     On or about May 26, 2017, Xu told Plaintiffs that they still needed $860,000.00 for closing. As a result, Plaintiffs paid half ($430,000.00) and provided Xu a loan to pay his half ($430,000.00).  Exs. "8" and "12."

50.      Xu has not paid back any portion of the loan.  Jiao Declaration ¶ 15.

51.     On or about July 19, 2017, Xu sent Plaintiffs a document titled "Notice of Dividend for June of Fiscal Year 2016" stating that Dongtai made a profit of $82,652.00 and that each member would receive a dividend payment based on the percentage of ownership.  Ex. "7." Plaintiffs were to receive a total of $39,672, payable to their newly created domestic corporations for tax purposes. *Id.*

52.     Xu never paid and Plaintiffs never received any dividend payment. Jiao Declaration ¶ 17.

53.     Xu willfully withheld Plaintiffs' dividend distribution and used the funds for his own purposes and benefit as on July 26, 2017, Xu transferred $69,500.00 to ATOC for his purchase of a car dealership.  Jiao Declaration ¶ 18; Exs.  "10" and "11."

54.     Plaintiffs confronted Xu and asked what happened to their dividend distribution and to justify the $69,500.00 expenditure to the American Title.  Xu did not address and did not attempt to resolve Plaintiffs' inquiry.  Jiao Declaration ¶ 19.

*E.  Xu Violates Dongtai's Bylaws and Operating Agreement*

55.     On July 19, 2017, Xu, XJ, ZY, and PZ executed Dongtai's Bylaws and Operating Agreement. Ex. "4."

56.     As set forth in the section titled "Managers' Responsibilities" in the Bylaws and Operating Agreement: "Managers and managing members should remember that they owe a duty of loyalty and a duty of care to the business.  They cannot compete with the business before dissolution, they must refrain from grossly negligent or reckless conduct, and they must account to the company for any property, profit or benefit derived by the member from the company." *Id.*

57.     As set forth in the section titled "Members' Rights" in the Bylaws and Operating Agreement: "The limited liability company must allow the members to access company records. Additionally, the company must provide each member with information necessary for the exercise of the member's duties under the operating agreement.  This requirement cannot be waived in the Operating Agreement." *Id.*

58.     As set forth in the section titled "Liability for Wrongful Distributions" in the Bylaws and Operating Agreement:  Members or Managers "who receive distributions in violation of the Certificate of Formation, the Operating Agreement, or the Act are liable to the LLC in an amount equal to the wrongful distribution." *Id.*

59.     Also in July 2017, Jiao learned of the Settlement Statement (HUD-2) showing that Dongtai reserved $1,000,000.00 for Hotel renovations.  Jiao Declaration ¶ 20; Ex. "22."

60.     As previously stated, Xu manufactured or created a false and fake HUD settlement statement to conceal the fact he did not pay for his member units as Xu was required to do.  It is currently unknown what part the closing agent, ATOC had in Defendants' scheme.

61.     On August 2, 2017, Xu sent Plaintiffs a Loan Notice memorializing and affirming that Xu borrowed $430,000.00 from Plaintiffs. Ex. "12."

62.     Xu has not paid back any portion of this loan. Jiao Declaration ¶ 23.

63.     On August 2, 2017, Xu transferred $200,000.00 from Dongtai's Hotel bank account to Xingxing Zou. Exs. "10" and "11."

64.     Xu willfully concealed that this transfer came from Dongtai's Hotel bank account as Xu fraudulently told Jiao that the $200,000.00 payment came Xu's personal bank account. *Id.*; Jiao Declaration ¶ 25-26.

65.     Udayan and American Hospitality knew about Xu's unethical behavior as early as September 2017 and requested Xu return the money to Dongtai's Hotel bank account.  Ex. "9."

66.     On September 28, 2017, Xu without notifying Plaintiffs or obtaining valid authorization, improperly transferred funds ($100,000.00) from Dongtai's Hotel bank account to the Drive with Pride Car Dealership so Xu could purchase the dealership from the seller.  Jiao Declaration ¶ 27-28; Exs. "10" and "11."

67.     On October 6, 2017, Xu without notifying Plaintiffs or obtaining valid authorization, improperly transferred funds ($160,000.00) from Dongtai's Hotel bank account to ATOC to further Xu's own personal interests. *Id.*; Jiao Declaration ¶ 29-30.

68.     On or about October 27, 2017, Xu transferred $80,000.00 from Dongtai's Hotel's bank account operating account into Dongtai's dividend account. Exs. "10" and "11."   As such, Xu made a second dividend distribution to himself and kept Plaintiffs' share of the dividends to use for his own personal benefit. *Id.*; Jiao Declaration ¶ 31-32.

69.     On October 27, 2017, Xu boldly continued to plunder Dongtai's bank accounts for his own personal use and without notifying Plaintiffs or obtaining valid authorization made the following transfers from Dongtai's dividend bank account: 1) $50,000.00 to Future Pyramid INC for expenses associated with Xu's car dealership; 2) $3,000.00 to Alkins Capital Investment; and 3)  $6250.22 to Scott Capital Investment. Exs. "6," "10," "11," and "32."

F.  *Xu's Malfeasance is Revealed*

70.     As of December 2017, Jiao's immigration status permitted him to obtain Optional Practical Training ("OPT") in order to legally stay in the United States.

71.     As such, in accordance with the OPT rules which require a foreign student to obtain a job within the first three month from the Employment Authorization Document ("EAD") start date in order to legally stay in the United States, Jiao asked Xu if Dongtai could hire him.

72.     In response, Xu on Dongtai's behalf, offered Jiao a position at the Hotel beginning on March 1, 2018.  On December 29, 2017, Xu sent Jiao a written offer of employment with terms indicating the start date and the terms of compensation. Ex. "13."

73.     Jiao accepted the position, provided the requested documentation, and worked accordingly.  Ex. "17."  Despite Jiao's compliance and satisfaction of the terms of the employment offer and agreement, Xu violated the agreement and did not pay Jiao.

74.     Jiao was owed approximately $21,000.00 in past wages.  As a result of Xu's plundering of Dongtai's accounts Dongtai did not have the money to pay Jiao.  Exs. "24" and "27."

75.     Jiao did not at any time have any control over Dongtai during his employment with the Hotel.

18

76.     On December 30, 2017, Xu sent Jiao an email willfully misrepresenting that Xu would withdraw $250,000.00 from the Dongtai's Hotel bank account operating account, he would not use the withdrawn money, and would return the money to the operating account within the next day or two.  Jiao Declaration ¶ 33-35; Ex. "19."

77.     Xu never returned the money and used the money for his own purposes and benefit. *Id.*

78.     Xu has and continues to make false and misleading representations to the Plaintiffs in order to conceal his actions including his fraudulent scheme for which he induced Plaintiffs into purchasing securities in Dongtai.

79.     On January 10, 2018, Xu without notifying Plaintiffs or obtaining valid authorization, improperly transferred $286,096 from Dongtai's Hotel bank account to ATOC for his personal use and benefit. Jiao Declaration ¶ 35; Exs. "10" and "11."

80.     Jiao asked Xu about this transfer and Xu told Jiao that Xu was closing the car dealership he purchased and considered the transfer as a loan from Dongtai. Jiao Declaration ¶ 36-38.  Jiao informed Xu that Plaintiffs did not agree to such a loan and Xu was to pay back the money as soon as possible. *Id.* Xu responded that he would pay the money back as soon as he could.  *Id.* Xu has never paid Dongtai back for this unauthorized "loan." *Id.*

81.     Xu's plundering of Dongtai and the Hotel continued as from March 1, 2018 to November 19, 2018 Xu made the following unauthorized transfers from Dongtai's Hotel bank account:

      a.   3/1/2018-Xu transferred $25,500 to Yalu Group USA LLC (Car dealership owner) ("Yalu");
      b.   3/30/2018-Xu transferred $28,521 to Yalu;
      c.    4/02/2018-Xu transferred $26,000 to Yalu;

     d.    4/16/2018-Xu transferred $15,000 to Yalu;

     e.    4/19/2018-Xu transferred $26,000 to Yalu;

     f.    4/19/2018-Xu transferred $24,000 to Yalu;

     g.    4/20/2018-Xu transferred $26,000 to Yalu;

     h.    5/01/2018-Xu transferred $26,000 to Yalu;

     i.    5/31/2018-Xu transferred $26,000 to Yalu;

     j.    6/15/2018-Xu transferred $26,000 to Yalu;

     k.    7/31/2018-Xu transferred $26,000 to Yalu; and

     l.    11/19/2018-Xu transferred $15,500 to Yalu.

Exs. "10," "11," and "40."

82.     When Jiao recently discovered these transactions, Xu's response was that this just another loan Xu received from Dongtai. Jiao Declaration ¶ 36.

83.     Xu has never paid Dongtai back for these unauthorized "loans." Jiao Declaration ¶ 38.

84.     On May 19, 2018, Dongtai's members, Xu and the Plaintiffs entered into a Supplementary Agreement of Financial Management of the Crowne Plaza Hotel. Ex. "14." Specifically, the agreement states that: 1) a minimum of $350,000.00 must be maintained in the Dongtai's Hotel bank account operation account all year round; 2) Udayan is the only person authorized to use the funds in the account; 3) Xu borrowed $638,000.00 from the Hotel and must pay it all back on or before August 31, 2018; and 4) Xu borrowed $228,000.00 from the Plaintiffs and must pay it all back on or before August 31, 2018. *Id.*

85.     On May 22, 2018, Xu sent an email to the Hotel's operator affirming that Jiao was Dongtai's employee. Ex. "17."

86.     Sometime in early August 2018, due to Xu's failure to return the money and pay Plaintiffs and Dongtai anything, Jiao suspected something was amiss and initiated action to

investigate Xu's conduct and actions. Jiao Declaration ¶ 41.  As such, Jiao investigated the Hotel and Dongtai's bank accounts.  *Id.*

87.    Initially Jiao discovered the following: 1) that the actual amount of the license application fee was $15,000.00; 2) that Xu transferred $85,000.0 from Dongtai's dividend bank account to his own companies (A, F&G, Inc.-$15K; Scott Capital Investment-$25K; and Alkins Capital Investment LTD-$45K); and 3) that these transfers were not listed on the General Ledger Activity Detail. Jiao Declaration ¶ 43; Exs. "6," "10," "11," and "31."

88.    As Jiao's initial findings demonstrated a pattern of fraud, theft, and conversion, Plaintiffs hired a CPA on Dongtai's behalf to conduct an audit into Dongtai's records. Jiao Declaration ¶ 42.

89.    On August 3, 2018, Jiao emailed Xu and demanded Xu return all "Moved" Money to the Hotel's account. Ex. "20."

90.    On August 16, 2018, Jiao emailed Xu again reiterating the demand to return the money. Ex. "21."

91.    Thereafter, Xu spoke with Jiao and agreed to return the money. Jiao Declaration ¶ 46.  Xu has not returned any of the money.  *Id.*

92.    On August 17, 2018, Xu without notifying Plaintiffs or obtaining valid authorization, improperly transferred $145,000 from Dongtai's Hotel bank account to Kenneth Ting for Xu's own purpose and benefit. Jiao Declaration ¶ 47; Exs. "10" and "11."

93.    Jiao asked Xu about this transfer and Xu responded he would return the money to the operating Dongtai's Hotel bank account tomorrow.  Xu never returned the money. Jiao Declaration ¶ 48.

94.     On August 31, 2018, Xu was to have repaid the Hotel and Plaintiffs for the amount he borrowed per the "Amended Financial Management Agreement of Crowne Plaza Hotel" Xu signed and agreed to. Ex. "14."

95.     Xu has not repaid the "loans" totaling $866,000.00 due on August 31, 2018.  Jiao Declaration ¶ 50.

96.     As such, Xu breached and continues to breach the Amended Financial Management agreement.

97.     Significantly, the CPA prepared a General Ledger Activity Detail for Dongtai (from 05/30/2017 to 11/28/2018) showing Xu's theft and conversion of funds from Dongtai's Hotel bank account Dongtai and the Hotel's bank accounts as previously described above.  Exs. "10" and "11."

98.     According to the General Ledger Activity Detail provided by the CPA, Xu stole and converted approximately $ 1,909,286.16 from Dongtai's bank accounts and credit cards from July 26, 2017 to November 19, 2018. *See generally Id.* and Ex. "40."

    G. *Xu's Actions Imperil Dongtai's Interest in the Hotel*

99.     On or about November 28, 2018, Udayan sent Jiao an email stating that the Hotel received complaints about its elevators.  Ex. "16."

100.    Udayan also informed Jiao that he sent Xu multiple prior emails about the elevator issues and Xu has refused to address the issue. Jiao Declaration ¶ 53.

101.    Although Xu on the Hotel's behalf entered into an Elevator Services contract with the elevator company on September 8, 2018, the Hotel has not satisfied its obligation to pay for the servicing of the Hotel's elevators. Ex. "15."

102.     As currently $100,000.00 is owed to begin the elevator service agreement Xu, Udayan and American Hospitality's failure to pay for the service agreement has harmed the Hotel's operations. Jiao Declaration ¶ 54; Ex. "27."  Indeed, since Hurricane Harvey, the Hotel has two elevators down which has and continue to have a profound negative effect on the Hotel's operations. *Id.*

103.     On November 28, 2018, the investigating CPA requested additional information and access to more records.  However, in an attempt to conceal his actions Xu refused or did not respond in order to conceal his gross negligence in managing Dongtai. Ex. "18."

104.     On Sunday, December 2, 2018, Plaintiffs learned that InterContinental Hotels Group sent Dongtai correspondence on November 28, 2017 stating that because Dongtai failed to pay the Crowne Plaza brand fees on a quarterly basis as agreed to under the parties written agreement, Dongtai has breached its agreement with IHG by failing to pay the licensing fee of $180,000 which is now grossly overdue.  Jiao Declaration ¶ 55; Ex. "23" and "34."

105.     As a direct result of Xu's actions including his breach of his fiduciary and managerial duties to Dongtai and Plaintiffs, IHG issued an ultimatum stating that unless the $180,000 fee is paid in full by January 7, 2019, the License to use the Crowne Plaza brand will be terminated immediately and the Hotel located at 9090 Southwest Fwy, Houston, TX 77074 will be removed from the Crowne Plaza system on the termination date. *Id.*

106.     Udayan made one last attempt to get the licensing fee due date extended, but was unsuccessful.  Ex. "25."

107. Unless, Xu either returns the money he stole, converted and or owes the Hotel and Plaintiffs or pays the licensing fee directly, the Hotel will go out of business and Plaintiffs' investment in the Hotel will be irreparably harmed. Jiao Declaration ¶ 57; Exs. "25" and "27."

108. Given the dire situation, Plaintiffs retained counsel to protect their interests and to save the Hotel. As such, on December 7, 2018, Plaintiffs' counsel sent correspondence to Xu demanding: 1) Xu provide the shareholders a written explanation as to: a) why the shareholders were not notified in advance of the IHG default ; b) why was the fee not timely paid; c) why doesn't Dongtai have the money to pay for the license fee; d) why have the shareholders received no dividend from their investment; and e) an explanation for the lack of money in the company's accounts to cover normal expenses; and 2) Xu tender full payment of the outstanding license fee on or before Monday, December 10, 2018. Ex. "29."

109. On December 10, 2018, Xu responded by immediately stopping the audit in order to conceal evidence of his wrongdoing. Ex. "28" and "35."

110. In addition to the outstanding license fee, Plaintiffs recently learned from Udayan that as a result of Defendants' misappropriation, misuse and stealing of Dongtai and/or the Hotel's funds, Dongtai and the Hotel were unable to pay the following vital operating expenses due in the next 90 days: 1) property tax due on 1/31/19 in the amount of $340,000.00; 2) loan interest payments due on every 2nd day of month with the next payment due on 1/2/19 in the amount of $71,000.00; and 3) Hotel employee payroll due twice a month on the 1st and 15th day of each month with the next payment due on 1/1/19 in the amount of $73,000.00. Jiao Declaration ¶ 58; Ex. "27."

H. *Xu Tries to Thwart Plaintiffs' Attempts to Investigate*

24

111.    Given the dire situation, on December 14, 2018, Plaintiffs wrote to Xu demanding as individual member unit holders to inspect Dongtai's and the Hotel's records with Plaintiffs' own independent auditor beginning on Monday, December 17, 2018 at 10:00 at Dongtai's office and the Hotel's office to protect Dongtai and the members' interests in order to: 1) ascertain the financial condition of the company and of the Hotel; 2) determine the value of our member units; and 3) to investigate Xu's mismanagement, of the company including but not limited to Xu's waste of corporate assets, self-dealing or other breaches of fiduciary.  Ex. "24" and "29."

112.    On December 17, 2018, Xu ignored Plaintiffs demand and prevented Plaintiffs from accessing and auditing Dongtai and the Hotel's corporate books and records. Jiao Declaration ¶ 60; Ex. "34."

I.   *First Filing in Federal Court and Judge Ellison's Preliminary Injunction Order*

113.    Facing no other choice and the Hotel on the verge of losing the franchise name and inability to pay its critical operating expenses, Plaintiffs filed suit along with applications for TRO, Preliminary Injunction, and Appointment of a Temporary Receiver in *Jiao v. Xu,* Case Number 4:18-cv-04756.

114.    Given the overwhelming evidence demonstrating Xu's fraudulent and unlawful conduct, Judge Ellison properly determined in matter number 4:18-cv-04756 [Doc. No. 7], that emergency relief granting access to the corporate books and records, appointing a receiver to manage Dongtai's affairs, and compelling Xu to return the money he stole, misappropriated and/or "borrowed" was indicated and necessary to prevent irreparable harm to Plaintiffs and to avoid the shutdown of the Hotel.

115.    Despite the Preliminary Injunction, Xu took, embezzled and converted Dongtai's property tax refund in the amount of $28,962.48. Ex. "39."  As such, the amount Xu stole, embezzled, and converted exceeds $1.5 million. Exs. "40" and "41."

116.    As a result of Judge Ellison's issuance of the Preliminary Injunction, namely removal of Xu as Dongtai's President and Managing Member, appointment of Michael Udayan as Temporary Reciever for Dongtai, freezing of Xu's personal and business bank accounts, and denying Xu access to Dongtai's bank accounts, the Hotel was able to "stop the bleeding" and begin recovering from Xu's unlawful and fraudulent conduct.

117.    As Judge Ellison's Preliminary Injunction is dissolved due to the Court' dismissal of 4:18-cv-04756, immediate reinstatement of Judge Ellison's Preliminary Injunction or the issuance of an equal TRO and Preliminary Injunction by this Court is necessitated to protect Plaintiffs and prevent Xu from doing the same or worse harm and damage to Plaintiffs as he did before (as Xu has indicated to Plaintiffs directly he wants revenge) as well as to prevent Xu from taking the money out of his personal and business accounts (which is believed to contain Plaintiffs' funds)  to hide it from Plaintiffs and this Court.

118.    Plaintiffs also seek immediate declaratory relief that Xu is not a member of Dongtai given Xu did not pay for his member units as Dongtai is $3,000,000 short of the capital it needs to conform with the Crowne Plaza franchise's requirements for the Hotel.

119.    As such, Plaintiffs require immediate relief to raise capital with the member units Xu did not purchase or else the Crown Plaza franchise will pull the brand from the Hotel.

**FIRST CAUSE OF ACTION**
**(Declaratory and Injunctive Relief to Account for Shares Xu actually purchased)**

120.    Plaintiffs reallege and reassert all allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

121.    Under Dongtai's Bylaws and Operating Agreement, Xu was contractually obligated to make a capital contribution of $3,000,000.00 in exchange for 50% member units and for designation as Dongtai's sole managing member. Ex. "4."

122.    However, upon information and belief, the closing statements reveal that Xu did not make a capital contribution of $3,000,000.00 and thus, the amount of shares Xu actually has and which Xu paid for more must be adjusted accordingly.

123.     As such, Plaintiffs seek declaratory relief from this Court to declare that: 1) Xu did not make a capital contribution of $3,000,000.00 as he was contractually obligated to do so to obtain 50% member units of Dongtai; 2) Xu must surrender to Dongtai the units he did not purchase; and 3) the amount of shares Xu actually has is to be adjusted accordingly based on the amount Xu misappropriated, and if necessary, on a pro-rata basis.

124.    Plaintiffs seek injunctive relief from this Court to: 1) compel Xu to surrender to Dongtai the units he did not purchase; 2) order that the shares Xu actually has is to be adjusted accordingly based on the amount Xu misappropriated, and if necessary, on a pro-rata basis; and 3) enjoin Xu from purchasing the shares he failed to make payment for and/or allow the current shareholders to decide by a majority vote as to the whom may purchase the outstanding shares and for what price.

125.    The requested injunctive relief is necessary to protect Plaintiffs' legitimate business interests and is necessary in the interest of fairness and equity.

## SECOND CAUSE OF ACTION
### (Breach of Contract- Bylaws and Operating Agreement)

126.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 125 as if fully set forth herein.

127.    Dongtai's Bylaws and Operating Agreement constitute a binding and enforceable agreement.

128.    Defendants initially materially breached the Bylaws and Operating Agreement by denying members and unit holders Plaintiffs from access to Dongtai's corporate books and records. The Court rectified this in its granting of Plaintiffs' application for preliminary injunctive relief. [4:18-cv-04756-Doc. No. 7].

129.    Defendants have further materially breached the Bylaws and Operating Agreement by denying Plaintiffs, as Dongtai unit holders entitlement to their rightful distributions and dividends from Dongtai's profits and Xu did not make a capital contribution of $3,000,000.00 as he was contractually obligated to do so to obtain 50% member units of Dongtai.

130.    Moreover, Defendants have routinely violated the Bylaws and Operating Agreement as Defendants have received his/its full distributions while Plaintiffs have not despite Plaintiffs having a collective 50% interest in Dongtai's profits.

131.    Plaintiffs have fully performed all their obligations under the Bylaws and Operating Agreement.

132.    As a direct and proximate result of the material breaches by Defendants, Plaintiffs have suffered and continue to suffer actual and consequential damages in an amount to be determined at trial.

133.    Plaintiffs are entitled to actual and/or liquidated damages, to an award of costs and attorney fees, and to all other such relief as may be available.

## THIRD CAUSE OF ACTION
**(Breach of Contract- Supplementary Agreement of Financial Management of the Crowne Plaza Hotel and Dongtai's Bylaws)**

134.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 133 as if fully set forth herein.

135.    Dongtai's Bylaws/Operating Agreement and Supplementary Agreement of Financial Management of the Crowne Plaza Hotel ("Supplementary Agreement") constitute binding and enforceable agreements.

136.    Defendants have materially breached Supplementary Agreement by failing to repay the money Defendants' "borrowed" from Plaintiffs.

137.    Defendants have further materially breached the Dongtai Bylaws/Operating Agreement by failing to make the $3,000,000.00 capital contribution in exchange for 50% member units.

138.    Plaintiffs have fully performed all their obligations under the Supplementary Agreement.

139.    Plaintiffs have fully performed all their obligations under the Bylaws/Operating Agreement.

140.    As a direct and proximate result of the material breaches by Defendants, Plaintiffs have suffered and continue to suffer actual and consequential damages in an amount to be determined at trial.

141.     Plaintiffs are entitled to actual and/or liquidated damages, to an award of costs and attorney fees, and to all other such relief as may be available.

### FOURTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**
**(Individually)**

142.     Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 141 as if fully set forth herein.

143.     Under Dongtai's Bylaws/Operating agreement and Texas law, Xu as President and Managing Member of Dongtai owes the fiduciary duties of loyalty, good faith, care, and fair dealing to Plaintiffs (individually and collectively) as investors and unit holders.

144.     Xu breached the duties of loyalty, good faith, fair dealing and care owed to Plaintiffs (individually and collectively) as unit holders and were breached by Xu in the scope of his duties by his conduct and/or inaction by, among other things,

    a.     misappropriating, embezzling, stealing, and/or converting funds from Dongtai and the Hotel's bank accounts for his own personal use and benefit;

    b.     wrongfully withholding Dongtai's distributions/dividends to Plaintiffs;

    c.     mismanaging and misappropriating Dongtai's assets and final resources resulting in the Hotel's inability pay its financial obligations necessary to operate the Hotel including but not limited to the licensing fee and loan payments for fund Dongtai has borrowed in order to operate the Hotel; and

    d.     mismanaging Dongtai to the point where Dongtai's units have been devalued and profits have been diminished; and

    e.     failing to file Dongtai's income tax return.

145.    Defendants' various breaches of fiduciary duties to Plaintiffs (individually and collectively) have irreparably harmed and damaged Plaintiffs and will continue to do so.

146.    As a result of Defendants' unlawful and unethical conduct Plaintiffs have not received their distributions and dividends, their Dongtai units have been devalued, Plaintiffs have not received the money back that Defendants unlawfully and wrongfully "borrowed" from Plaintiffs and the Hotel, Plaintiffs have been denied their right to inspect Dongtai's corporate books and records, and Plaintiffs are on the verge losing Dongtai's most valuable asset, the Hotel.

### FIFTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**
**(Derivatively on Behalf of Dongtai)**

147.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 146 as if fully set forth herein.

148.    Plaintiffs (individually and/or collectively) bring this claim derivatively in the right and for the benefit of Dongtai to redress injuries suffered by Dongtai as a direct result of Defendants' breaches of fiduciary duties owed to Dongtai as President and Managing Member of the company.

149.    Under Dongtai's Bylaws/Operating agreement, Xu as President and Managing Member of Dongtai owes the fiduciary duties of loyalty, good faith, care, and fair dealing to Plaintiffs (individually and collectively) as unit holders.

150.    Plaintiffs (individually and/or collectively) are members of and holder of member units of Dongtai at the time of the wrongdoing alleged herein and have been Dongtai member unit holders continuously since that time.

151.   This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

152.   Plaintiffs (individually and/or collectively) will adequately and fairly represent the interests of Dongtai and its unit holders in enforcing and prosecuting its rights.

153.   Aside from the demands for inspection, Plaintiffs have not made any demand on Dongtai to institute this action because such a demand would be a futile and useless act because the alleged wrongdoer, Xu purportedly owns 50% of the company and was the only managing member.

154.   As such, Dongtai's management is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

155.   By reason of his positions as President and Dongtai's Managing Member and because of his ability to control the business and corporate affairs of Dongtai, Xu owed Dongtai fiduciary obligations of good faith, care, loyalty and candor, and is required to use his utmost ability to control and manage the company in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Dongtai and not in furtherance of his personal interest.

156.   As purported 50% unit holder of Dongtai, Defendants owed and owes the fiduciary duty of loyalty to Plaintiffs in their capacity as unit holders of Dongtai.

157.   Defendants breached their fiduciary duty to Dongtai by virtue of the self-dealing and intentional injuries they inflicted on Dongtai as alleged herein.

158.   Defendants have breached their fiduciary duties owed to Plaintiffs in their capacity unit holder of Dongtai by, among other things, their conduct in devaluing Dongtai units, misusing

corporate credit, misappropriating and stealing Dongtai assets, and jeopardizing Dongtai's most valuable asset, the Hotel.

159.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Dongtai has been damaged in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION
**(Promissory Estoppel, Quantum Meruit and Constructive Trust)**

160.     Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161.     To the extent that a contract does not govern the obligations of Defendants to Plaintiffs, Plaintiffs plead this claim in the alternative.

162.     Xu readily informed Plaintiffs that he would repay and/or return the money he took from Dongtai and the Hotel's financial accounts.

163.     Xu readily informed Plaintiffs that he would repay the money Plaintiffs "loaned" him.

164.     Xu readily informed Plaintiffs that he would pay Plaintiffs their fair share of dividends.

165.     Xu readily informed Plaintiffs that he would make a capital contribution of $3,000,000.00 for 50% of the member units.

166.     Plaintiffs reasonably and justifiably relied upon Xu's representations and thus delayed legal action against Xu and allowed Xu to operate as 50% unit holder.

167.     As Xu now has gone back on his word and refuses to pay Plaintiffs the dividends promised as well as pay back the money he misappropriated, stole, and/or "borrowed" Xu is liable to Plaintiffs under the equitable doctrine of promissory estoppel.

168. Moreover, Plaintiffs conferred benefits upon Defendants, including but not limited to capital investment in Dongtai in exchange for units in which distributions and dividends are to be paid to Plaintiffs and the sharing of profits.

169. As Xu did not make a capital contribution of $3,000,000.00 for 50% member units, Xu has been unjustly enriched with member units he did not purchase and pay for.

170. Xu appreciated or realized the benefits conferred by Plaintiffs without compensating Plaintiffs.

171. Plaintiffs request a constructive trust on all proceeds, funds, or property obtained by Defendants as a result of Defendants' theft, fraud, and other unlawful actions and disgorgement of all profits or remuneration obtained by Defendants as a result of their actions.

172. As such, Defendants are liable to Plaintiffs and Plaintiff Jiao under the theories of quantum meruit and/or unjust enrichment, for the value of the benefits conferred upon Defendants.

## SEVENTH CAUSE OF ACTION
### (Fraudulent Concealment)

173. Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 172 as if fully set forth herein.

174. Defendants had knowledge that Xu:

    a.    used Plaintiffs' share of Dongtai profits for Xu's own benefit;

    b.    misused Dongtai's credit;

    c.    failed to make the $3,000,000.00 contribution for 50% member units;

    d.    manufactured or created a fake and false HUD closing statement to conceal his failure to pay for his units;

    e.    misused and misappropriated Dongtai's assets including from the Hotel financial accounts for Defendants' gain; and

      f.     stole and converted for his own benefit Dongtai's corporate funds.

175. Defendants suppressed these material facts by hiding evidence of these wrongful acts and denying Plaintiffs the opportunity and ability to investigate and further discover such facts by: 1) refusing to allow the audit to continue; 2) refusing to allow Plaintiffs to learn of the audit results; and 3) refusing to allow Plaintiffs to inspect Dongtai's cooperate books and records.

176. Plaintiffs cannot and could not know the full extent of Defendants' self-dealing and improper transactions without the audit as Defendants have purposely attempted to conceal their wrongdoing from Plaintiffs.

177. Defendants have withheld this information and continue to hide this information from Plaintiffs in order to avoid being sued or removed as President and Managing Member and to avoid possible criminal prosecution for their actions.

178. Defendants' representations to Plaintiffs and the information provided to Plaintiffs intentionally misled Plaintiffs to believe Defendants were competently running Dongtai and not plundering Dongtai for their own benefit and cause irreparable harm to Plaintiffs and their interests.

179. As a result of Defendants' concealment and efforts to continue to conceal, Plaintiffs have sustained injury and their units continue to be devalued due to Defendants' hidden and unlawful conduct.

## EIGHTH CAUSE OF ACTION
### (Conversion)

180.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 179 as if fully set forth herein.

181.    Defendants intentionally conspired to convert and/or did convert Dongtai's profits, assets, and the amount owed to Plaintiffs for their distribution/dividends to their own use and benefit knowing that they did not have any legal right, justification, or claim to Dongtai's profits, assets and the amount owed to Plaintiffs for their distributions and dividends.

182.    Defendants intentionally and unlawfully asserted dominion over Dongtai's profits, assets when Xu wrongfully took Dongtai's property tax refund and transferred money from Dongtai and the Hotel's financial accounts without legally being entitled to use these assets for Defendants' own benefit and purposes.

183.    Dongtai's assets including and Plaintiffs' share of Dongtai's profits wrongfully taken by Defendants was Dongtai's rightful property as well as Plaintiffs through their ownership of Dongtai.

184.    Plaintiffs' distribution and dividends that were wrongfully taken by Defendants were Plaintiffs' rightful property which Plaintiffs are entitled to under the Bylaws and given Dongtai's profits.

185.    Dongtai's assets, Plaintiffs' shares of Dongtai's profits and Plaintiffs' distribution/dividends remains in the possession of the Defendants.

186.    Defendants' conduct has been and continues to be egregious, willful and wanton warranting an award of exemplary damages.

## NINTH CAUSE OF ACTION
### (Violation of the Texas Civil Theft Statute)

187.     Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 186 as if fully set forth herein.

188.      Under Chapter 134 of the TEX. CIV. PRAC. & REM. CODE, a person "who commits theft is liable for the damages resulting from the theft." "Theft" means "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13, or 31.14, PENAL CODE." Appropriation of property is unlawful if it is without the owner's effective consent, or if the property is stolen and the actor appropriates the property knowing it was stolen by another.

189.     In violation of TEXAS PENAL CODE § 31.03, Xu unlawfully appropriated property and monies of Plaintiffs and Dongtai with the intent to deprive Plaintiffs and Dongtai of the property and its proceeds, namely, the assets in Dongtai, member units he did not pay for, and the Hotel's financial accounts and any remuneration generated thereby.

190.     Plaintiffs did not consent to Defendants' misappropriation of the funds and member units provided by Plaintiffs and Dongtai including but not limited to the funds in Dongtai's and the Hotel's financial accounts, Xu's Dongtai shares, Dongtai's property tax refund, and Defendants appropriated said funds knowing that the property and proceeds generated therefrom were stolen.

191.     Accordingly, Plaintiffs seek to recover all actual and consequential damages caused by the theft, all statutory penalties under TEX. CIV. PRAC. & REM. CODE §134.005(A), and all pre-judgment and post-judgment interest Plaintiffs are entitled.

192.     Plaintiffs further seek all reasonable and necessary attorneys' fees and costs pursuant to TEX. CIV. PRAC. & REM. CODE §134.005(b).

193.    In addition, Defendants' conduct was willful, malicious, and intentional, and was done with the specific intent to cause substantial injury to Plaintiffs, Defendants should be further assessed exemplary damages in an amount to be ascertained at trial. *See* TEX. CIV. PRAC. & REM. CODE §41.008(c).

## TENTH CAUSE OF ACTION
### (Intentional or Tortious Interference with a Contract)

194.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 193 as if fully set forth herein.

195.    Dongtai has a contract with IHG so that Dongtai can use the Crowne Plaza brand for its Hotel.

196.    Defendants had knowledge of this contract.

197.    Defendants intentionally and improperly interfered with this contract by preventing, blocking and/or intentionally interfering with Dongtai's contract with IHG.

198.    As a direct result of Defendants' actions as alleged herein, Plaintiffs have been or will be irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
### (Fraud)

199.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 198.

200.    Xu made numerous representations to Plaintiffs that: 1) he would fulfill his duties as Dongtai's President and Managing Member and pay for his 50% member units; 2) he would repay Plaintiffs for the amount he "borrowed"; 3) he would pay Plaintiffs the dividends owed to

Plaintiffs; and 4) attesting to the purpose and, at times, the source of the withdrawals; 5) the HUD statement he gave to Plaintiffs was the real HUD statement from the closing; and 6) he would immediately return the $250,000.00 he withdrew on December 30, 2017 from Dongtai's Hotel Bank account.

201.    Xu's representations were false.

202.    Xu knew the misrepresentations made to Plaintiffs were false when Xu made them, and intended Plaintiffs to rely on said misrepresentations.

203.    Plaintiffs relied on Xu's misrepresentations and continued to fund Dongtai, allow Xu to have 50% member units, and did not seek legal action under the pretense that Xu's withdrawals were for legitimate business reasons and he was going to return and repay the money he took from Dongtai and Plaintiffs.

204.    As a result of Xu's misrepresentations, Plaintiffs and Dongtai have suffered actual damages and are entitled to recover in the amount determined by the trier of fact. Plaintiffs and Dongtai further request an award of exemplary damages, a constructive trust on the proceeds, funds, or property obtained as a result of the fraud, all pre-judgement and post-judgment interest, and costs of court.

## TWELFTH CAUSE OF ACTION
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Xu)

205.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 204 as if fully set forth herein.

206.    Xu carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase member units and

interests in Dongtai.  In furtherance of this unlawful scheme, Xu took the actions set forth hereinabove.

207.    Membership interests in Dongtai are investment contracts, which fall within the '34 Act's definition of "securities."  *See* Ex. "4" DONGTAI OPERATING AGREEMENT at ¶¶ 8-10, 15, & 18.

208.    The Operating Agreement vested essentially all power in the hands of Xu, the sole Managing Member.

209.    Said Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of Dongtai units for the purchase of the Crowne Plaza Hotel in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. These Defendants are sued as primary participants in the wrongful and illegal conduct charged herein.

210.    Xu, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a course of conduct to conceal adverse material information about his ability to contribute capital, his intentions to steal and abscond Plaintiffs' capital investment and Dongtai's profits, among other things, as specified herein.

211.    Xu employed devices, schemes and artifices to defraud and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of the value of investing in Dongtai, namely the Crowne Plaza Hotel, which included the making of, or the participation in the making of, untrue statements of material facts about funding for the Crowne Plaza Hotel and the purchasing of membership units and omitting to state material facts necessary

in order to make the statements made not misleading.

212.     Xu's primary liability arises from the following facts, among others: (i) he was at all relevant times the sole managing member of and high-level officer within Dongtai in the scheme to sell foreign investors membership units in Dongtai and/or in the Crowne Plaza Hotel; (ii) Xu, by virtue of his responsibilities and activities as sole-managing member of Dongtai, perpetuated his scheme to have Plaintiffs without Plaintiffs' knowledge of Xu's willful deceit purchase Xu's member units, hide his fraudulent scheme by providing Plaintiffs with a fake HUD-settlement statement for the Hotel's closing, embezzle the funds Plaintiffs contributed to the company, and embezzle the profits from Plaintiffs' membership units; and (iii) Xu's knew or recklessly disregarded the materially false and misleading representations Xu made to Plaintiffs in order to entice and defraud Plaintiffs to invest in Dongtai and continue to contribute money for the Crowne Plaza Hotel.

213.     Xu had actual knowledge of the misrepresentations and omissions of material facts set for herein, or acted with severely reckless disregard for the truth as set forth herein, in that Xu failed to ascertain and disclose such facts, even though Xu knew these facts.

214.     Xu's material misrepresentations and/or omissions were done knowingly or with deliberate recklessness and for the purpose and effect of inducing Plaintiffs to invest and concealing information regarding Dongtai and the Crowne Plaza Hotel's true status as a façade and vehicle for massive fraud and conversion for Xu's sole benefit.

215.     As Xu's unlawful conduct has demonstrated, Xu never intended to: 1) pay for his members units; 2) pay $3,000,000 as his capital contribution as he knew he did not have those funds at the time he made promises to Plaintiffs and at the time the governing documents were

executed; 3) fulfill his duties as President and Managing Member; 4) pay back the money he stole, misappropriated, and converted 5) pay back the money he allegedly "borrowed"; 6) timely file accurate tax returns on behalf of the company; and 7) use Dongtai's and Plaintiffs' funds for the benefit of Dongtai and the Hotel.

216.    Prior to forming Dongtai, Xu made many material representations to XJ, ZY, and PZ to induce them to investing and forming Dongtai.  Xu communicated to Plaintiffs via telephone, mail, email, and/or the App WeChat many promises and assurances including, but not limited to: a) the proposal for funding Dongtai through each members' purchase of member units; b) Xu would contribute $3,000,000 as his capital contribution in exchange for 50% stake in the LLC; c) Dongtai's profits would be distributed on a pro rata basis; d) that Dongtai's funds would be used solely for Dongtai's business purpose in purchasing and operating the Crowne Plaza Hotel; and d) that as President and sole Managing Member, Xu would carry out his duties as delineated in the Bylaws (Ex. "4") including but not limited to ensuring that Dongtai's financial obligations were timely satisfied to avoid defaults and filing accurate and timely tax returns for the company.

217.    Xu willfully made these false promises and representations to Plaintiffs knowing full well Plaintiffs would reasonably rely on Xu's representations as Plaintiffs did not know that Dongtai and the Crowne Plaza Hotel investment was a façade and vehicle for Xu's scheme for massive fraud and conversion.

218.    On or about December 15, 2016, Xu, XJ, ZY, and PZ formed Dongtai, a limited liability corporation under the laws of the State of Texas for the purpose of acquiring a Crowne Plaza Hotel in Houston.  Ex. "4".

219.    Xu exclusively controlled as Dongtai as President and sole Managing Member.

42

220.    Indeed, Xu at all relevant times, had and exercised complete dominion over Dongtai including Dongtai's funds as Plaintiffs lacked the ability to change the LLC's governing documents and agreements given the 2/3 vote requirement and Xu's 50% stake.

221.    As a result of Xu's fraudulent and unlawful actions and dissemination of materially false and misleading information and failure to disclose material facts, as set forth herein, Dongtai and the Crowne Plaza Hotel purchase appeared to be a legitimate investment opportunity for foreign investment. In ignorance of the fact that Dongtai's securities and the Crowne Plaza Hotel purchase were merely a façade for a fraudulent and criminal scheme, Plaintiffs invested their money into Dongtai and the Hotel and were damaged thereby.

222.    At the time of said misrepresentations and omissions, Plaintiffs were ignorant of their falsity and believed them to be true. Had Plaintiffs known of Xu's fraudulent practices, Plaintiffs would not have purchased or otherwise acquired their interests/securities in Dongtai and would not have purchased the Crowne Plaza Hotel.

223.    Moreover, Plaintiffs have only recently discovered the scope of Xu's fraud and deceptions.

224.    By virtue of the foregoing, Xu has violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated.

225.    As a result of Xu's knowingly false material misrepresentations to induce Plaintiffs to purchase member units in Dongtai and make Xu President and sole Managing Member and Plaintiffs reasonable reliance upon Xu's material misrepresentations, Xu among other things stole, converted, and misappropriated the funds Plaintiffs invested in Dongtai as well as Plaintiffs' share of the profits congruent to their respective member units resulting in damage and harm to Plaintiffs.

226. Plaintiffs' sustained damages include but are not limited to: loss or threatened loss of their capital investments; diminishment of their capital investments; devaluation of their member units; devaluation and threatened loss of Dongtai's primary asset the Hotel; threatened loss of the Crowne Plaza brand name; loss of profits and dividends; and loss of economic opportunities in other investments.

227. In sum, as a direct and proximate result of Xu's wrongful conduct, Plaintiffs suffered damages in connection with their respective purchases of member units in Dongtai and the Crowne Plaza Hotel.

## THIRTEENTH CAUSE OF ACTION
**(Application for Reinstatement of TRO, Temporary and Permanent Injunctive Relief including Appointment of Temporary Receiver for Dongtai issues in Matter 4:18-CV-4756) (Individually and/or Derivatively on behalf Dongtai)**

228. Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 227 as if fully set forth herein.

229. In *Jiao v. Xu,* Case Number 4:18-CV-4756, Plaintiffs (individually and/or derivatively) sought an immediate order of the Court under FRCP 64, 65 and 66, Chapter 64 of the TEX. CIV. PRAC. & REM. CODE, and TEX. BUS. & COM. CODE § 24.008 to: 1) remove Xu as President and Managing Member of Dongtai suspend and remove LCL's and Xu's management authority and ability regarding the affairs of the joint venture including the operation of the Crowne Plaza Hotel; 2) freeze and seize/attach to LCL's bank accounts; 3) freeze and seize/attach to Xu's and Dongtai's bank accounts; 4) appoint a temporary receiver for Dongtai to manage its operations and affairs and appoint/elect a new President and Managing Member; 5) compel Xu and/or LCL to return whatever funds he/they took from Dongtai and the Joint Venture create a constructive trust for this purpose; and 6) compel Xu and/or LCL via the funds seized via

a constructive trust to pay any outstanding obligations (including the license fee and associated costs) to avoid the shutdown of the Crowne Plaza Hotel.

230.    The Court in matter number 4:18-CV-4756 granted the requested relief. [4:18-CV-4756-Doc. Nos. 7 and 10].  As such, Plaintiffs seeks reinstatement of Judge Ellison's Orders in this matter.

231.    The general requirements for obtaining both temporary restraining orders and preliminary injunctions under Rule 65 are the same. *See Clark v. Prichard,* 812 F.2d 991,993 (5th Cir. 1987) ("The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted."). Plaintiffs will first address the relief they seek under Rule 65 and will then address the additional or alternative relief they seek under Rule 64.

232.    To obtain a preliminary injunction, a plaintiff must establish four elements: 1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest. *Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 768 (5th Cir. 2007) (alterations omitted) (internal quotation marks omitted). Plaintiffs satisfy each of these elements.

## A Substantial Likelihood of Success on the Merits

233.    As demonstrated herein, Plaintiff have shown a substantial likelihood of success on the merits on all their claims.  Nonetheless, Plaintiffs need only satisfy the substantial-likelihood-of- success-on-the-merits element for some of these claims. *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 378 (5th Cir. 2008) ("Even assuming arguendo that the [movants] have demonstrated a

substantial likelihood of success on the merits on **some** and/or all of their claims ….” (emphasis added)). Further, to satisfy this “element, the plaintiff’s evidence need not prove that plaintiff is entitled to summary judgment; plaintiff needs only to present a prima facie case, but not demonstrate that he is certain to win.” *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).   As such, Plaintiffs further highlight the substantial likelihood of success as to their most pertinent and pressing claims:

### Breach of Fiduciary Duty

234.   Plaintiffs have met the substantial-likelihood-of-success element with regard to their breach-of-fiduciary-duty claim. Under Texas law, there are three elements of a breach-of-fiduciary-duty claim: "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in jury to the plaintiff or benefit to the defendant.*" Saenz v. JP Morgan Chase Bank, N.A.*, 2013 WL 3280214, at *4 (S.D. Tex. June 27, 2013) (internal quotation marks omitted). Plaintiffs have established each of these three elements.

235.   First, as the Bylaws and Operating Agreement Section “Managers’ Responsibilities” demonstrates it is beyond dispute that a fiduciary duty existed between Xu as President and Managing Member of Dongtai and Plaintiffs. Ex. “4.” Indeed, Plaintiffs placed great trust in Xu, appointing him as President and Managing Member of Dongtai, permitting him to manage Dongtai’s operations including managing the Hotel’s operations, authorizing him to make payments on Plaintiffs’ and Dongtai’s behalf, and giving him great autonomy to act in Plaintiffs’ and Dongtai’s best interests in managing Dongtai. *See* Jiao Declaration at ¶ 3 to 62.

236.    It is beyond reasonable dispute that Xu breached the fiduciary duties owed to Plaintiffs and Dongtai. Xu used his position of trust not to further the interests of Plaintiffs and Dongtai, but to enrich his and Defendants' pockets. *See* Jiao Declaration at ¶ 3 to 62;  Verified Complaint Paragraphs 1 through 89 and 134 through 151.  Indeed, the General Ledger Activity Detail provided by the CPA demonstrates Xu stole and converted approximately $1,854,169.82 from Dongtai's bank accounts and credit cards from July 26, 2017 to November 19, 2018.  A majority of these transfers were made to his own companies and for his own use. *See* Exs. "6," "10," "11," and "33."

237.    As such, Dongtai and Plaintiffs have been harmed and require immediate relief to save the Hotel.  *See* Jiao Declaration at ¶ 49-62; Exs. "23," "25," and  "27."  Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their breach-of-fiduciary-duty claims.

### Fraud

238.    Plaintiffs also meet the first requirement for their fraud claim. Under Texas law, there are six elements of fraud: 1) that a material misrepresentation was made; 2) the representation was false; 3) when the representation was made, the speaker knew that it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). Plaintiffs have alleged—with the requisite particularity required by Federal Rule of Civil Procedure 9(b)—each of these elements, and, through the exhibits referenced and attached to the Complaint along with the declaration in support of this motion, Plaintiffs have established a *prima facie* case that each of these elements is satisfied.

239.    Specifically, Xu represented the among other things the following: 1) he would act in Plaintiffs' and Dongtai's best interests; 2) he would pay back the money he "borrowed" from Plaintiffs and Dongtai; 3) he told Plaintiffs the franchise application fee was $100,000.00; 4) he told Plaintiffs he would send them their dividend payment; 5) on December 30, 2017 he told Plaintiffs he would immediately return the $250,000.00 he withdrew from Dongtai's Hotel bank account; and 6) he told Jiao Dongtai would pay Jiao for his work at the Hotel.  *See* Jiao Declaration at ¶ 9-62; Exs. "6," "7," "10," "11," and  "31."

240.    Xu representations were false and Xu knew when the representation was made, that they were false or made it recklessly without any knowledge of the truth and as a positive assertion. *Id.*

241.    Xu made the representations with the intent that Plaintiffs should act upon it, which Plaintiffs reasonably relied on by: 1) continuing to trust Xu;  2) allowing Xu to operate and manage Dongtai; 3) making capital contributions to Dongtai to purchase and operate the Hotel; 4) "loaning" money to Xu to further Dongtai's legitimate business interests; 5) Jiao continuing to work for Dongtai; and 6) forgoing legal action due to Xu's false promises.  *Id.*

242.    As such, Dongtai and Plaintiffs have been harmed and require immediate relief to save the Hotel.  *See* Jiao Declaration at ¶ 57-62;  Exs. "23," "25," and  "27."  Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their fraud claims as well.

### Conversion

243.    Plaintiffs also meet the first requirement for their conversion claims.

244.    Under Texas law, there are four elements to the claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised

dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.--Austin 1997, writ denied); *see also Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.--El Paso 1993, no writ).

245.     It is beyond dispute that Defendants intentionally and unlawfully asserted dominion over Dongtai's profits, assets when Xu transferred money from Dongtai and the Hotel's financial accounts without legally being entitled to use these assets for Defendants' own benefit and purposes. Exs. "6," "7," "10," "11," "24," and "31."

246.     Dongtai's assets including Plaintiffs' share of Dongtai's profits wrongfully taken by Defendants was Dongtai's rightful property as well as Plaintiffs through their ownership of Dongtai. *Id.*; Jiao Declaration at ¶ 9-62.

247.     Plaintiffs' distribution/dividends wrongfully taken by Defendants were Plaintiffs' rightful property which Plaintiffs are entitled to under the Bylaws and given Dongtai's profits. *Id.*

248.     Dongtai's assets, Plaintiffs' shares of Dongtai's profits and Plaintiffs' distribution/dividends remains in the possession of the Defendants. *Id.*

249.     As such, Dongtai and Plaintiffs have been harmed and require immediate relief to save the Hotel.  *See* Jiao Declaration at ¶ 57-62; Exs. "23," "25," and "27."  Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their conversion claims as well.

**Irreparable Harm**

250.     To satisfy the second element of the preliminary-injunction standard, a movant "must demonstrate that if the district court denied the grant of a preliminary injunction, irreparable

harm would result." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). It is well-established that "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* For example, a "district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.* Indeed, a preliminary injunction, designed to maintain the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be hide funds or be insolvent at the time of judgment. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986) (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)) *see also Tisino v. R&R Consulting & Coordinating Group, LLC*, 478 Fed. Appx. 183, 185-86 (5th Cir. 2012)(allowing preliminary injunction to restrain assets related to the litigation).

251.    Here, injunctive relief is needed to prevent Defendants from transferring or dissipating the millions of dollars they stole from Plaintiffs, and which Plaintiffs seek to recover in this case. This threat is real and highly probable given Defendants prior and most recent actions as set forth herein. *See Janvey*, 647 F.3d at 601 ("The party seeking a preliminary injunction must also show that the threatened harm is more than mere speculation."). If Defendants dissipate the money, Plaintiffs' equitable remedies will be rendered moot. *Id.* ("If the defendants were to dissipate or transfer these assets out of the jurisdiction, the district court would not be able to grant the effective remedy, either in equity or in law, that the Receiver seeks.").

252.    Plaintiffs' request is narrowly tailored to freezing and seizing the money Defendants unlawfully obtained from Plaintiffs and Dongtai.  Plaintiffs do not seek to freeze money necessary for Xu to pay for reasonable living expenses during this action.

253.    As such, the imposition of a constructive trust from the funds seized from Xu and LCL are necessary to protect Plaintiffs and save the Hotel.

254.    Plaintiffs and Dongtai will suffer irreparable harm if Xu is permitted to continue as Dongtai's President and Managing Member as Xu will continue to grossly mismanage and loot Dongtai.  *See* Jiao Declaration at ¶ 57-62; Exs. "23," "24,"  "25," and "27."

255.    If Xu is permitted to continue as Dongtai's President and Managing Member the value of Plaintiffs' units will continue to diminish significantly as will Plaintiffs' share of Dongtai's profits, and Plaintiffs and Dongtai will lose it most valuable asset, the Hotel.  *Id.*

256.    If Xu is permitted to continue as Dongtai's President and Managing Member, Xu will continue to plunder Dongtai for Defendants' benefit and Dongtai and Plaintiffs will be irreparably harmed.  *Id.*

257.    As such, the appointment of a temporary receiver is necessary to help Dongtai navigate these next few months to avoid insolvency and the loss of its most valuable asset, the Hotel.  *See* Jiao Declaration at ¶ 57-62.

258.    Plaintiffs and Dongtai will suffer irreparable harm if Xu is able to access and withdraw/transfer money from Dongtai's accounts, LCL's accounts, and Xu's personal accounts. *Id.*

259.    If Xu is able to access and withdraw/transfer money from these accounts, Xu will take and fraudulently transfer these funds to hide or shield them from Plaintiffs and this Court's authority.  As such, these funds are vital to Dongtai and the Hotel's continued existence and without such relief the value of Plaintiffs' units will continue to diminish significantly as will

Plaintiffs' share of Dongtai's profits, and Plaintiffs and Dongtai will lose it most valuable asset, the Hotel. *Id.*

260.    Plaintiffs and Dongtai will suffer irreparable harm if the Court does not compel Xu and LCL to immediately return the money he stole, converted, and/or "borrowed" or compel Xu compel Xu and/or LCL to pay any outstanding obligations as set forth herein (including the license fee and associated costs) to avoid the shutdown of the Crowne Plaza Hotel. *Id.*

**The Threatened Injury Outweighs the Threatened Harm**

261.    This element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. April 2014). Here, Plaintiffs are seeking to: 1) remove Xu as President and Managing Member to prevent further harm; 2) appoint a temporary receiver to manage Dongtai through the "storm" Defendants created with their unlawful and unethical actions; 3) prevent Defendants from transferring or dissipating the money Defendants stole, converted and "borrowed" from Plaintiffs as if Defendants are allowed to transfer or dissipate this money, Plaintiffs will effectively be left without a remedy; 4) seize the money Defendants stole, converted and "borrowed" from Plaintiffs and Dongtai and establish a constructive trust so the money can be used to keep the Hotel running; and 5) compel Defendants to immediately return the money Defendants stole, converted and "borrowed" from Plaintiffs and Dongtai or compel Defendants to use said funds to pay the Hotel's bills as set forth herein to keep the Hotel operational.

262.    Conversely, maintaining the status quo pending the resolution of this action would not harm Defendants because relief sought including the money sought to be frozen and seized is

traceable entirely to Defendants' scheme, and because Defendants would have access to money sufficient to provide for reasonable living expenses. As the threatened and continuing injury to Plaintiffs and Dongtai outweighs the harm that the injunction may cause to Defendants this factor weighs in favor of Plaintiffs.

**Granting the Preliminary Injunction Will Not Disserve the Public Interest**

263.    Finally, granting the preliminary injunction will not disserve the public interest. Defendants' conduct was criminal, fraudulent and unlawful, and providing a remedy to uphold the law and keep a major Hotel serving the Houston Metro area operational is in the public interest. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957) (noting "the public interest in effective law enforcement"); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553 ¶ 35 (S.D. Tex. 2014) ("[I]t is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law."). Thus, if an injunction is issued, it will not adversely affect the public interest.

**No Security Should Be Required**

264.    Rule 65(c) of the Federal Rules of Civil Procedure states that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Fifth Circuit, the amount can be nothing. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court, we have ruled that the court may elect to require no security at all." (footnote omitted) (internal quotation marks omitted)); *Donovan*, 830 F. Supp. at 235 ("The Fifth Circuit has held that courts in this Circuit have the discretion to issue injunctions without security.").

265.     The Court should not require any security to be posted. Plaintiffs are the victims of Defendants' fraudulent scheme, and seek to prevent Defendants from doing further harm, recover their own money, and keep the Hotel operational by paying the Hotel's operating costs. In this circumstance, Plaintiffs submit the Court should use its considerable discretion in ordering that no security be posted.

### Temporary Restraining Order

266.     The purpose of Plaintiffs application for a TRO and temporary injunctionis to maintain the status quo by keeping the Hotel operational.

267.     The Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if" "specific facts in an affidavit … clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b).

268.     A temporary restraining order "should be limited to preserving the status quo only as long as necessary to hold a preliminary injunction hearing." *Rio Bravo Produce, Ltd. v. Superior Tomato-Avocado, Ltd.*, 2011 WL 6938450, at *2 (W.D. Tex. Dec. 30, 2011); WRIGHT ET AL., *supra*, § 2948.3 ("***The [temporary restraining] order is designed to preserve the status quo*** until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party.") (emphasis added).

269.     Here reinstating the Judge Ellison's TRO, Preliminary Injunctive Order and Order making Michael Udayan Dongtai's temporary receiver preserves the status quo. [4:18-CV-4756-Docs. No. 7 and 10]

270.    The Fifth Circuit has held "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Foreman*, 193 F.3d at 323.

271.    As shown above and herein, Plaintiffs have satisfied these requirements as well as all the elements for a temporary restraining order to be entered.  Indeed, the TRO is necessary and justified to maintain the status quo; the continued operation of the Hotel by meeting its financial obligations which it was not able to do as a direct result of Defendants' conduct, preserving Plaintiffs assets and the money Xu stole, and actions as set forth herein.

272.    Plaintiffs have a serious, cogent, and legitimate concern that if a temporary restraining order reinstating the Preliminary Injunction is not entered, Defendants will immediately seek to transfer or further dissipate the money from their and Dongtai's accounts.

273.    As such, Plaintiffs pray that the Court take the necessary action to preserve the status quo and grant its application for TRO to reinstate the Court's Preliminary Injunction and Order to Appoint Dongtai's receiver as this injunctive relief will allow the Hotel to continue to operate and preserve the funds Xu stole.

**Permanent Injunction**

274.    For the reasons stated herein and as articulated in the Court's Order granting temporary injunctive relief [4:18-CV-4756-Doc. No. 7], Plaintiffs are entitled to permanent injunctive relief and pray the Court enters an order making the temporary injunctive relief permanent.

## FOURTEENTH CAUSE OF ACTION
**(Application for TRO, Temporary and Permanent Injunctive Relief including
Appointment of Temporary Receiver for Dongtai which is the same
as Judge Ellison granted in 4:18-CV-4756)
(Individually and/or Derivatively on behalf Dongtai)**

275.    Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 274 as if fully set forth herein.

276.    If the Court denies reinstatement of Judge Ellison's Order for Temporary Injunction and Order to Appoint Receiver as requested here, Plaintiffs alternatively apply to the Court for the same relief in this new matter.

277.    Specifically, as in matter number 4:18-CV-4756, Plaintiffs (individually and/or derivatively) in this new matter move and apply for an immediate order of the Court under FRCP 64, 65 and 66, Chapter 64 of the TEX. CIV. PRAC. & REM. CODE, and TEX. BUS. & COM. CODE § 24.008 to: 1) remove Xu as President and Managing Member of Dongtai suspend and remove LCL's and Xu's management authority and ability regarding the affairs of the joint venture including the operation of the Crowne Plaza Hotel; 2) freeze and seize/attach to LCL's bank accounts; 3) freeze and seize/attach to Xu's and Dongtai's bank accounts; 4) appoint a temporary receiver for Dongtai to manage its operations and affairs and appoint/elect a new President and Managing Member; 5) compel Xu and/or LCL to return whatever funds he/they took from Dongtai and the Joint Venture create a constructive trust for this purpose; and 6) compel Xu and/or LCL via the funds seized via a constructive trust to pay any outstanding obligations (including the license fee and associated costs) to avoid the shutdown of the Crowne Plaza Hotel.

278.     The reasons for the requested relief are the same as set forth in Paragraphs 207 through 253 and are hereby incorporated and adopted into this cause of action and application to streamline this pleading and application.

279.     For the reasons stated herein, Plaintiffs pray this Court adopts and duplicates Judge Ellison's Orders for Preliminary Injunctive Relief and Motion to Appoint Receiver.

280.     Additionally, for the reasons set forth herein Plaintiffs pray that the Court add to the Orders the following: 1) Xu is to preserve all documents relevant to this action; 2) Xu is not to engage in any fraudulent transfers from any of his personal and business financial accounts; 3) Xu is not to hide any of his personal and business assets from Plaintiffs and the Court; and 4) Xu is not to interfere in Dongtai's and the Hotel's operations.

### FIFHTEENTH CAUSE OF ACTION
**(Application for Temporary and Permanent Injunctive Relief to Compel and Enjoin Xu as to Certain Actions Involving Dongtai Shares)**
**(Individually and/or Derivatively on behalf Dongtai)**

281.     Plaintiffs reallege and reassert all allegations contained in paragraphs 1 through 280 as if fully set forth herein.

282.     Plaintiffs seek an immediate order of the Court under FED. R. CIV. P. 64 and 65, Chapter 64 of the TEX. CIV. PRAC. & REM. CODE, and TEX. BUS. & COM. CODE § 24.008 to obtain immediate temporary and permanent injunctive relief from this Court: 1) compelling Xu to surrender to Dongtai the units he did not purchase; 2) invalidating Xu's current unit certificate(s), calculating Xu's units adjusted on a pro-rata basis based on the amount actually paid by Xu for said units and to order the issuance of new certificates Xu evidencing the actual member units Xu purchased; and 3) enjoining Xu from purchasing the shares he failed to make payment for and/or allow the current shareholders to decide by a majority vote as to how to address and

distribute the outstanding (unpurchased) member units.   Such relief is available via an injunction

upon an appropriate showing that the requirements for an injunction are met.  *See, e.g., Hsien-Chi-*

*Su v. Vantage Drilling Co.*, 474 S.W.3d 284 (Tex. Ct. App., Houston Div.)(upholding injunction

preventing transfer of shares); *Miller v. K&M Partnership*, 770 S.W.2d 84, 87 (Tex. Ct. App.,

Houston Div. 1989)(upholding order preventing defendant from transferring or encumbering

shares).

283.    The general requirements for obtaining both temporary restraining orders and

preliminary injunctions are set forth in paragraphs 207 through 253 above and incorporated herein

by reference.

### A Substantial Likelihood of Success on the Merits

284.    As demonstrated herein, Plaintiff have shown a substantial likelihood of success on

the merits on all their claims.   Nonetheless, Plaintiffs need only satisfy the substantial-likelihood-

of- success-on-the-merits element for some of these claims. *See Nichols v. Alcatel USA, Inc.*, 532

F.3d 364, 378 (5th Cir. 2008) ("Even assuming arguendo that the [movants] have demonstrated a

substantial likelihood of success on the merits on some and/or all of their claims …." (emphasis

added)). Further, to satisfy this "element, the plaintiff's evidence need not prove that plaintiff is

entitled to summary judgment; plaintiff needs only to present a prima facie case, but not

demonstrate that he is certain to win." *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d

223, 227 (S.D. Tex. 2011).   As such, Plaintiffs further highlight the substantial likelihood of

success as to their most pertinent and pressing claims:

**Breach of Fiduciary Duty**

285.    Plaintiffs have met the substantial-likelihood-of-success element with regard to their breach-of-fiduciary-duty claim. Under Texas law, there are three elements of a breach-of-fiduciary-duty claim: "(1) a fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in jury to the plaintiff or benefit to the defendant." *Saenz v. JP Morgan Chase Bank, N.A.*, 2013 WL 3280214, at *4 (S.D. Tex. June 27, 2013) (internal quotation marks omitted). Plaintiffs have established each of these three elements.

286.    First, as the Bylaws and Operating Agreement Section "Managers' Responsibilities" demonstrates it is beyond dispute that a fiduciary duty existed between Xu as President and Managing Member of Dongtai and Plaintiffs. Ex. "4." Indeed, Plaintiffs placed great trust in appointing Xu as President and Managing Member of Dongtai, permitting him to manage Dongtai's operations including managing the Hotel's operations, authorizing Xu to make payments on Plaintiffs' and Dongtai's behalf, and giving him great autonomy to act in Plaintiffs' and Dongtai's best interests in managing Dongtai. *See* Jiao Declaration at ¶ 3 to 62.

287.    It is beyond reasonable dispute that Xu breached the fiduciary duties owed to Plaintiffs and Dongtai. Xu used his position of trust not to further the interests of Plaintiffs and Dongtai, but to enrich his and Defendants' pockets. *See* Jiao Declaration at ¶ 3 to 62; Nguyen Declaration with attached Accounting Report.   Indeed, the General Ledger Activity Detail provided by the CPA demonstrates Xu stole and converted approximately $1,854,169.82 from Dongtai's bank accounts and credit cards from July 26, 2017 to November 19, 2018.  A majority

of these transfers were made to his own companies and for his own use. *See* Exs. "6," "10," "11," "33," "40," and "41."

288.    Significantly, Xu paid only $750,000.00 out of the $3 million he agreed to pay for his member units. *See* Nguyen Declaration with attached Accounting Report; Ex. 4.  Moreover, Xu took his $750,000.00 contribution back (and then some) and effectively nullified any "partial performance" Xu may have had for his units.  *See* Nguyen Declaration with attached Accounting Report; Exs. "40" and 41."

289.    As such, Dongtai and Plaintiffs have been harmed and require immediate relief so that Xu cannot interfere in Dongtai's operations as a Dongtai member as Xu has not paid for his member units as Dongtai's books and records and the recently obtained ATOC documents demonstrate, Xu only contributed $750,000.00 ($2.25 million short) while misappropriating $1,335,561.97. *Id.*; *see also Jiao Declaration at ¶ 49-62; Exs. "23," "25," and "27.*"

290.    Additionally, Plaintiffs need to raise capital with the shares Xu wrongfully and fraudulently obtained as Dongtai is $3 million dollars short.  Moreover, Plaintiffs need to pass measures and amend Dongtai's corporate documents to prevent this situation from ever happening again.    Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their breach-of-fiduciary-duty claims.

### Fraud

291.    Plaintiffs also meet the first requirement for their fraud claim. Under Texas law, there are six elements of fraud: 1) that a material misrepresentation was made; 2) the representation was false; 3) when the representation was made, the speaker knew that it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the

representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009). Plaintiffs have alleged—with the requisite particularity required by Federal Rule of Civil Procedure 9(b)—each of these elements, and, through the exhibits referenced and attached to the Complaint along with the declaration in support of this motion, Plaintiffs have established a *prima facie* case that each of these elements is satisfied.

292. Specifically, Xu represented among other things the following: 1) he would act in Plaintiffs' and Dongtai's best interests; 2) he would pay back the money he "borrowed" from Plaintiffs and Dongtai; 3) he told Plaintiffs the franchise application fee was $100,000.00; 4) he told Plaintiffs he would send them their dividend payments; 5) on December 30, 2017 he told Plaintiffs he would immediately return the $250,000.00 he withdrew from Dongtai's Hotel bank account; 6) he would pay for his member units; and 7) he was a shareholder of Dongtai. *See* Jiao Declaration at ¶ 9-62; Exs. "6," "7," "10," "11," and "31."

293. Xu representations were false and Xu knew when the representation was made, that they were false or made it recklessly without any knowledge of the truth and as a positive assertion. *Id.*

294. Xu made the representations with the intent that Plaintiffs should act upon it, which Plaintiffs reasonably relied on among other things by: 1) continuing to trust Xu;  2) allowing Xu to operate and manage Dongtai; 3) purchasing member units in Dongtai; 4) making capital contributions to Dongtai to purchase and operate the Hotel; 5) "loaning" money to Xu to further Dongtai's legitimate business interests; and  6) forgoing legal action due to Xu's false promises. *Id.*

295.     As such, Dongtai and Plaintiffs have been harmed and require immediate relief to prevent Xu from interfering in Dongtai and the Hotel's business and operations, and to raise capital to comply with IHG's (owner of the Crown Plaza franchise) requirements for hotel remodeling and renovations to keep the Crown Plaza brand name.  Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their fraud claims as well.

### Federal Securities Fraud

296.     Rule 10b-5 implements section 10(b) of the 1934 Act and makes it unlawful for any person, directly or indirectly: (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5(b).

297.     The overwhelming evidence (Exs. 1 to 43, Jiao's Declaration and Nguyen Declaration with attached Accounting Report) demonstrates Xu carried out a plan, scheme, and course of conduct that was intended to, and did (i) deceive Plaintiffs, as alleged herein; and (ii) cause Plaintiffs to purchase member units and interests in Dongtai.  In furtherance of this unlawful scheme, Xu took the actions set forth hereinabove.

298.     Xu's primary liability arises from the following facts, among others: (i) he was at all relevant times the sole managing member of and high-level officer within Dongtai in the scheme to sell foreign investors membership units in Dongtai and/or in the Crowne Plaza Hotel; (ii) Xu, by virtue of his responsibilities and activities as sole-managing member of Dongtai,

perpetuated his scheme to have Plaintiffs without Plaintiffs' knowledge of Xu's willful deceit purchase Xu's member units, hide his fraudulent scheme by providing Plaintiffs with a fake HUD-settlement statement for the Hotel's closing, embezzle the funds Plaintiffs contributed to the company, and embezzle the profits from Plaintiffs' membership units; and (iii) Xu's knew or recklessly disregarded the materially false and misleading representations Xu made to Plaintiffs in order to entice and defraud Plaintiffs to invest in Dongtai and continue to contribute money for the Crowne Plaza Hotel.  *See* (Exs. 1 to 43, Jiao's Declaration and Nguyen Declaration with attached Accounting Report).

299.    Prior to forming Dongtai, Xu made many material representations to XJ, ZY, and PZ to induce them to investing and forming Dongtai.  Xu communicated to Plaintiffs via telephone, mail, email, and/or the App WeChat many promises and assurances including, but not limited to: a) the proposal for funding Dongtai through each members' purchase of member units; b) Xu would contribute $3,000,000 as his capital contribution in exchange for 50% stake in the LLC; c) Dongtai's profits would be distributed on a pro rata basis; d) that Dongtai's funds would be used solely for Dongtai's business purpose in purchasing and operating the Crowne Plaza Hotel; and d) that as President and sole Managing Member, Xu would carry out his duties as delineated in the Bylaws (Ex. "4") including but not limited to ensuring that Dongtai's financial obligations were timely satisfied to avoid defaults and filing accurate and timely tax returns for the company. *See* (Exs. 1 to 43, Jiao's Declaration and Nguyen Declaration with attached Accounting Report).

300.    Xu had actual knowledge of the misrepresentations and omissions of material facts set for herein, or acted with severely reckless disregard for the truth as set forth herein, in that Xu failed to ascertain and disclose such facts, even though Xu knew these facts.

301.    Xu's material misrepresentations and/or omissions were done knowingly or with deliberate recklessness and for the purpose and effect of inducing Plaintiffs to invest and concealing information regarding Dongtai and the Crowne Plaza Hotel's true status as a façade and vehicle for massive fraud and conversion for Xu's sole benefit. *See* (Exs. 1 to 43, Jiao's Declaration and Nguyen Declaration with attached Accounting Report).

302.    As such, Dongtai and Plaintiffs have been harmed and require immediate relief and Plaintiffs have shown a substantial likelihood of success on the merits of their federal securities claim as well.

### Conversion

303.    Plaintiffs also meet the first requirement for their conversion claims.

304.    Under Texas law, there are four elements to the claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.--Austin 1997, writ denied); *see also Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.--El Paso 1993, no writ).

305.    It is beyond dispute that Defendants intentionally and unlawfully asserted dominion over Dongtai's profits, assets when Xu transferred money from Dongtai and the Hotel's financial accounts without legally being entitled to use these assets for Defendants' own benefit and purposes. Exs. "6," "7," "10," "11," "24," and "31."

306.     Dongtai's assets including unpaid for Dongtai member units along with Plaintiffs' share of Dongtai's profits wrongfully taken by Defendants was Dongtai's rightful property as well as Plaintiffs through their ownership of Dongtai. *Id.*; Jiao Declaration at ¶ 9-62.

307.     Dongtai's member units and Plaintiffs' distribution/dividends wrongfully taken by Defendants were Plaintiffs' rightful property which Plaintiffs are entitled to under the Bylaws and given Dongtai's profits. *Id.*

308.     Dongtai's assets and member units, Plaintiffs' shares of Dongtai's profits and Plaintiffs' distribution/dividends remains in the possession of the Defendants. *Id.*

309.     As such, Dongtai and Plaintiffs have been harmed and require immediate relief to save the Hotel.  *See* Jiao Declaration at ¶ 57-62; Exs. "23," "25," and "27."  Thus, Plaintiffs have shown a substantial likelihood of success on the merits of their conversion claims as well.

**Irreparable Harm**

310.     To satisfy the second element of the preliminary-injunction standard, a movant "must demonstrate that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). It is well-established that "the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.'" *Id.* For example, a "district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." *Id.* Indeed, a preliminary injunction, designed to maintain the status quo and protect the damages remedy is an appropriate form of relief when it is shown that the defendant is likely to be hide funds or be

insolvent at the time of judgment. *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir. 1986) (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)).

311.    Here, injunctive relief is needed to retrieve Dongtai's shares from Xu that Xu stole so Plaintiffs can raise much needed capital for required renovations and remodeling to comply with IHG's standards; prevent Defendants from interfering in Dongtai and the Hotel's operations and business; and revise and amend Dongtai's corporate documents to protect Plaintiffs' interests. This threat is real and highly probable given Defendants prior and most recent actions as set forth herein. *See Janvey*, 647 F.3d at 601 ("The party seeking a preliminary injunction must also show that the threatened harm is more than mere speculation."). If Defendants interfere and Xu is allowed to vote as a 50% member in member meetings (even though he has no untis) Plaintiffs may lose the IHG brand as Dongtai is short $3 million dollars which Plaintiffs thought Dongtai had when they purchase their shares and entered the joint venture to purchase the Hotel.

312.    Plaintiffs' request is narrowly tailored to Xu's shares and the documentation of said shares.

313.    Plaintiffs and Dongtai will suffer irreparable harm if Xu is permitted to continue as Dongtai's shareholder as he will purposefully interfere and further scheme to loot from Plaintiffs and Dongtai. *See* Exs. "40" and "41." *See generally* Jiao Declaration at ¶ 57-62; Exs. "23," "24," "25," and "27."

314.    If Xu is permitted to continue as shareholder, Xu's interference and ability to veto Plaintiffs proposed actions for the betterment of Dongtai will diminish the value of Plaintiffs' units, will continue to diminish significantly as will Plaintiffs' share of Dongtai's profits, and Plaintiffs

and Dongtai will lose it most valuable asset, the Hotel if the renovations are not timely accomplished.

315.     Plaintiffs and Dongtai will suffer irreparable harm if the Court does not compel Xu and LCL to immediately return the shares he stole, converted, and/or "borrowed" or enjoin Xu from interfering in Dongtai and the Hotel's operations and business.

**The Threatened Injury Outweighs the Threatened Harm**

316.     This element "involves an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied." 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.2 (3d ed. April 2014).  Here, Plaintiffs are seeking to: 1) compel Xu to surrender to Dongtai the units he did not purchase; 2) invalidate Xu's current unit certificate(s), calculate Xu's units adjusted on a pro-rata basis based on the amount actually paid by Xu for said untits and to order the issuance of new certificates Xu evidencing the actual member units Xu purchased; and 3) enjoin Xu from purchasing the shares he failed to make payment for and/or allow the current shareholders to decide by a majority vote as to how to address and distribute the outstanding (unpurchased) member units.

317.     Conversely, maintaining the status quo pending the resolution of this action would not harm Defendants because Xu never had shares to begin with, and at bottom, the Court can put into escrow the member units Xu actually paid for as at least this would allow the other shareholders to get things done without Xu's interference As the threatened and continuing injury to Plaintiffs and Dongtai outweighs the harm that the injunction may cause to Defendants this factor weighs in favor of Plaintiffs.

**Granting the Preliminary Injunction Will Not Disserve the Public Interest**

318.    Finally, granting the preliminary injunction will not disserve the public interest. Defendants' conduct was criminal, fraudulent and unlawful, and providing a remedy to uphold the law and keep a major Hotel serving the Houston Metro area operational is in the public interest. *See Roviaro v. United States*, 353 U.S. 53, 59 (1957) (noting "the public interest in effective law enforcement"); *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553 ¶ 35 (S.D. Tex. 2014) ("[I]t is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law.").  Thus, if an injunction is issued, it will not adversely affect the public interest.

**No Security Should Be Required**

319.    Rule 65(c) states that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Fifth Circuit, the amount can be nothing. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court, we have ruled that the court may elect to require no security at all." (footnote omitted) (internal quotation marks omitted)); *Donovan*, 830 F. Supp. at 235 ("The Fifth Circuit has held that courts in this Circuit have the discretion to issue injunctions without security.").

320.    The Court should not require any security to be posted. Plaintiffs are the victims of Defendants' fraudulent scheme, and seek to prevent Defendants from doing further harm, recover their own money, and keep the Hotel operational by paying the Hotel's operating costs. In this

circumstance, Plaintiffs submit the Court should use its considerable discretion in ordering that no security be posted.

**Permanent Injunction**

321.     For the reasons stated herein, Plaintiffs are entitled to permanent injunctive relief and pray the Court enters an order making the temporary injunctive relief permanent.

**CONDITIONS PRECEDENT**

322.     All conditions precedent to Plaintiffs' rights of recovery have been performed or are excused.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment including the following against Defendants:

1.     For immediate reinstatement of Judge Ellison's Preliminary Injunction Order in Jiao v. Xu, Case Number 4:18-CV-4756;

2.     Immediate injunctive relief to remove Xu as Dongtai's President and Managing Member;

3.     For immediate injunctive relief to prohibit Xu from accessing and conducting any transactions with all Dongtai bank accounts and to freeze LCL's bank accounts and Xu's personal bank accounts to prevent fraudulent transfers;

4.     For immediate injunctive relief to appoint a receiver of Dongtai to manage Dongtai and elect a new President and Managing Member;

5.     For monetary damages caused as a direct and proximate result of Defendants' prior refusal to provide access to Dongtai's books and records;

6.     For immediate injunctive relief ordering: 1) Xu is to preserve all documents relevant to this action; 2) Xu is not to engage in any fraudulent transfers from any of his personal and business financial accounts; 3) Xu is not to hide any of his personal and business assets from Plaintiffs and the Court; and 4) Xu is not to interfere in Dongtai's and the Hotel's operations

7.     For declaratory relief from this Court declaring: 1) Xu did not make a capital contribution of $3,000,000.00 as he was contractually obligated to do so to obtain 50% member units of Dongtai; 2) Xu must surrender to Dongtai the units he did not purchase; and 3) the

amount of shares Xu actually has must be adjusted accordingly as Xu took back his $750,000.00 contribution and stole $1,335,561.97 from Plaintiffs;

8.      Immediate and permanent injunctive relief from this Court to: 1) compel Xu to surrender to Dongtai the units he did not purchase; 2) invalidate Xu's current unit certificate(s), calculate Xu's units adjusted on a pro-rata basis based on the amount actually paid by Xu for said untits and to order the issuance of new certificates Xu evidencing the actual member units Xu purchased; and 3) enjoin Xu from purchasing the shares he failed to make payment for and/or allow the current shareholders to decide by a majority vote as to how to address and distribute the outstanding (unpurchased) member units;

9.      For monetary damages caused as a direct and proximate result of Defendants' misconduct and wrongful actions;

10.     For exemplary damages given Defendants' egregious, willful and wanton conduct;

11.     Any other specific relief alleged herein, including costs and attorney fees incurred in bringing this action;

12.     Pre- and post-judgment interest on all damages as allowed by law; and

13.     Such other and further relief as this Court deems reasonable and just.

DATED this 24th day of May, 2019.

Respectfully submitted,

NGUYEN CHEN LLP

By: /s/ *Brian M. Gargano*
    Brian M. Gargano (Attorney-in-Charge)
    SBOT # 24102898
    bgargano@nguyen-chen.com
    11200 Westheimer Ste 120
    Houston, Texas 77042
    Telephone: (832) 767-0339
    Fax: (832) 767-0669

**ATTORNEYS FOR PLAINTIFFS**

## RULE 23.1 VERIFICATION

I, Jiatong Yu, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai"). I have reviewed the allegations made in this Amended Complaint. The allegations in the Amended Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

Jiatong Yu 禹佳彤
Jiatong Yu

## RULE 23.1 VERIFICATION

I, Pengfei Zhou, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai").  I have reviewed the allegations made in this Amended Complaint.  The allegations in the Amended Complaint about which I have personal knowledge are true.  As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information.  Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

_peng fei zhou 周鹏飞_
Pengfei Zhou

**RULE 23.1 VERIFICATION**

I, Zhonghua Yu, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai"). I have reviewed the allegations made in this Amended Complaint. The allegations in the Amended Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

Zhonghua Yu

## **RULE 23.1 VERIFICATION**

I, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai").

I have reviewed the allegations made in this Amended Complaint. The allegations in the Amended Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

_Xuan mei Zhou_ 周炫美
_____
Xuanmei Zhou

## RULE 23.1 VERIFICATION

I, Xiongen Jiao, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai"). I have reviewed the allegations made in this Amended Complaint. The allegations in the Amended Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

_____
Xiongen Jiao

## RULE 23.1 VERIFICATION

I, Qianju Jiao, have at all relevant times been a member and unit holder of Dongtai, LLC. ("Dongtai"). I have reviewed the allegations made in this Amended Complaint. The allegations in the Amended Complaint about which I have personal knowledge are true. As to those allegations of which I may not have personal knowledge, I believe them to be true to the best of my information. Having received a copy of this Amended Complaint and reviewed it, I authorize its filing.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of May, 2019.

_____
Qianju Jiao