**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **XIONGEN JIAO, an individual, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **NINGBO XU, an individual, and LCL** | § | **C.A. NO. 4:19-CV-01848** |
| **COMPANY LLC, a Texas limited** | § | |
| **liability company,** | § | **Hon. Keith P. Ellison** |
| | § | |
| **Defendants,** | § | |
| | § | |
| **And** | § | |
| | § | |
| **DONGTAI INVESTMENT GROUP,** | § | |
| **LLC, a Texas limited liability company** | § | |
| | § | |
| **Nominal Defendant.** | § | |
| | § | |

<u>**ORIGINAL COMPLAINT IN INTERVENTION**</u>

TO THE HONORABLE JUDGE ELLISON:

Intervenors, New Era Life Insurance Company, and Philadelphia American Life Insurance Company, under Federal Rule of Civil Procedure 24, file their Original Complaint in Intervention, complaining of Dongtai Investment Group, LLC, Ningbo Xu, Zu, Pengfei Zhou, Zhonghua Yu, and Xiongen Jaio, individually,  and would respectfully show the Court as follows:

## I.    PARTIES

1.     Intervenor New Era Life Insurance Company ("NELIC") is a Texas professional corporation recognized by the Texas Department of Insurance, with a principal office in Houston, Texas.

<u>**EXHIBIT 1**</u>

2.      Intervenor Philadelphia American Life Insurance Company ("PALIC") is a professional corporation recognized by the Texas Department of Insurance, with a principal office in Houston, Texas.

3.      Pengfei Zhou, Zhonghua Yu, and Xiongen Jaio are individuals residing in China and are Plaintiffs in this case. These plaintiffs may be served via their attorney of record.

4.      Defendant Ningbo Xu ("Xu") is a resident of the State of Texas. Xu has appeared and answered. Xu may be served via his attorney of record.

5.      Defendant LCL Company, LLC ("LCL") is a limited liability corporation formed under the laws of the State of Texas. LCL may be served via its attorney of record.

6.      Dongtai Investment Group, LLC, ("Dongtai") a Texas Limited Liability Company, is a Nominal Defendant.

7.      Numerous other parties have already intervened in this case: Certain Underwriters at Lloyds' London; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona, United Specialty Insurance Company; Lexington Insurance Company; Princeton Excess and Surplus Lines Insurance Company; HDI Global Specialty SE (formerly known as International Insurance Company of Hannover SE); and Old Republic Union Insurance Company. They may be served via their counsel of record.

## II.      PROCEDURAL POSTURE

8.      On May 22, 2019, Plaintiffs filed their Original Verified Complaint against Defendants Ningbo Xu and LCL Company. (*Doc. 1*). Plaintiffs brought claims derivatively on behalf of and for the benefit of Dongtai Investment Group, LLC ("Dongtai") and named Dongtai as a Nominal Defendant. *Id.* Plaintiffs alleged that their claims and applications for injunctive relief were the direct result of Defendants Xu and LCL's conduct arising out of Xu's theft of funds, violation of federal securities law, fraud, fraudulent concealment, conversion of

Dongtai's and Plaintiffs' funds, and gross mismanagement of Dongtai's business operations including but not limited to the joint venture and investment in the Crowne Plaza Hotel located at 9090 Southwest Freeway Houston TX 77049 (the "Crowne Plaza Hotel" or the "Hotel"). (*Doc. 1, page 2*).

9.      In their Complaint, Plaintiffs brought claims for (1) declaratory and injunctive relief regarding shares actually purchased by Xu, (2) breach of contract—bylaws and operating agreement, (3) breach of contract—supplementary agreement of financial management of the Crowne Plaza Hotel and Dongtai's bylaws, (4) breach of fiduciary duty against Xu individually, (5)  breach of fiduciary duty derivatively on behalf of Dongtai, (6) promissory estoppel, quantum meruit and constructive trust, (7) fraudulent concealment, (8) conversion, (9) violation of the Texas civil theft statute, (10) intentional or tortious interference with a contract, (11) fraud, (12) violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against Xu, (13) application for injunctive relief and appointment of a temporary receiver for Dongtai. (*Doc. 1*).

10.     On or about June 3, 2019, the Court entered an Order appointing a temporary receiver for Dongtai named Michael Udayan. (*Doc. 19*).

11.     On January 29, 2020, the Court entered an order granting a preliminary injunction and a declaratory judgment, which required Zu to turnover his Dongtai membership interest to Udayan, as receiver, and ordered Udayan to sell and/or liquidate that membership interest and pay the Plaintiffs as judgment creditors the proceeds from that sale. (*Doc. 56; Doc 136*).

12.     On February 4, 2020, certain insurers filed a motion to intervene in this case—Certain Underwriters at Lloyds' London; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona, United Specialty Insurance Company; Lexington Insurance Company; Princeton Excess and Surplus Lines Insurance Company; HDI Global Specialty SE (formerly known as

International Insurance Company of Hannover SE); and Old Republic Union Insurance Company (collectively the "Insurers"). (*Doc. 64*). In their motion, the Insurers explained that they subscribed to a commercial property insurance policy issued to Dongtai with respect to the Crowne Plaza-branded hotel located at 9090 Southwest Freeway, Houston, Texas 77074. (*Doc. 64*). Further, the Insurers also indicated that Dongtai was pursuing a breach of contract claim against Insurers seeking damages of approximately $15 million stemming from purported wind-related damage to the hotel that occurred on or about August 26, 2017. (*Doc. 64*).

13.     On February 21, 2020, the Court signed an order granting the Insurers' motion to intervene. (*Doc. 80*).

14.     On November 13, 2020, Plaintiffs served Lenders NELIC and PALIC with subpoenas requesting production of documents and noticing depositions.

15.     To date, the existing parties to this action, not including the Insurers', are arguing on appeal the grant of declaratory judgment against Xu.

### III.    RELEVANT FACTUAL BACKGROUND AND LENDERS' INTEREST

16.     On or about May 19, 2017, NELIC and PALIC (collectively, "Lenders") executed certain Loan Agreements, Promissory Notes, and Security Agreements with Dongtai pertaining to the Crowne Plaza-branded hotel located at 9090 Southwest Freeway, Houston, Texas 77074.

17.     The Loan Agreement by and between NELIC as lender and Dongtai as borrower, provides that NELIC agreed to lend $7.5 million to Dongtai. Per its terms, Dongtai agreed to pay interest as it accrued on the first day of every month, beginning on July 1, 2017 and continuing regularly through June 1, 2018. Thereafter, beginning on July 1, 2018, the unpaid principal balance and interest would be due and payable in 47 monthly installments of $53,020.53, on the same day of each successive calendar month until June 1, 2022, when the entire, remaining, unpaid balance will become ana payable. The Loan Agreement by and

between PALIC as lender and Dongtai as borrower included almost identical terms, save for an except, the principal amount of the loan, which was $2 million. Per the PALIC Loan Agreement, the monthly payments are $14,138.81.

18.     In further consideration of the Loan Agreements, Zu, Pengfei Zhou, Zhonghua Yu, and Xiongen Jaio, each personally and individually guaranteed Dongtai's performance under the Loan Agreements and Promissory Notes.

19.     Under the Loan Agreements, Dongtai made a number of affirmative covenants to NELIC and PALIC, including but not limited to 1) produce all existing annual financial reports, balance sheets, statements of income, etc.; 2) make available all of Borrower's books of account and other records to Lenders; 3) provide notice of all litigation and proceedings; and 4) pay taxes.

20.     On or about May 19, 2017, Dongtai executed an Assignment of Leases, Rents and Profits to NELIC and PALIC. Thereby, Dongtai assigned and transferred to NELIC and PALIC all of its rights, titles and interests as owner, licensor, lessor, landlord and otherwise in, to and under any and all leases, licenses, contracts, written or oral then in existence of thereafter entered into covering space in or applicable to the Crowne Plaza-branded hotel located at 9090 Southwest Freeway, Houston, Texas 77074  (the "Hotel").

21.     Dongtai gave the Assignment as security for the payment of the indebtedness evidenced by the Promissory Notes, the performance of the terms of a Deed of Trust and Security Agreement, and the repayment of all sums secured by them. Under the Assignment, in the event of Dongtai's breach or default on its obligations, NELIC and PALIC may take certain actions including but not limited to taking possession of the Hotel; collecting and receiving all rents, revenues and profits of the Hotel; and applying such rents, revenues and profits to items such as renovation and repair of the Hotel and payment of the secured indebtedness.

22.     On or about May 30, 2017, Dongtai executed a Deed of Trust and Security Agreement for the benefit of Beneficiaries NELIC and PALIC pertaining to the Hotel.

23.     Under Dongtai's loan agreements, it agreed to promptly give notice of all litigation and proceedings affecting it which, if adversely determined, would have a material adverse effect upon its activities, assets, or condition, financial or otherwise.

24.     Further, under Dongtai's Deed of Trust for the mortgaged property at 9090 Southwest Freeway, Houston Texas 77074, NELIC and PALIC are Beneficiaries. Under that Deed of Trust, Dongtai was and is required to maintain liability insurance on the mortgaged property, as well as property insurance against loss or damage by windstorm and other hazards. Moreover, any proceeds under these insurance policies may be applied by Beneficiaries NELIC and PALIC at their sole discretion, including but not limited to permitting Grantor Dongtai to use the proceeds to repair or replace all damaged or destroyed property covered by the insurance policies.

25.     On November 4, 2020, NELIC and PALIC issued a Notice of Default and Notice of Intent to Accelerate to Dongtai. The Notice memorialized that Dongtai had failed to make payment of amounts owing under the Promissory Notes. Dongtai was given notice that its failure to pay the amounts due constituted a monetary default under the terms of the Notes and the Deed of Trust. Demand was made for payment in full of the past-due amounts, together with all lawful accrued and unpaid interest due. Dongtai did not and has not made any payment on the amounts due.

26.     On December 7, 2020, NELIC and PALIC wrote to the Receiver to give notice of and demand compliance with several issues. First, concerning Dongtai's ongoing and unresolved default under its loan agreements, promissory notes, and deed of trust. Second, that NELIC and PALIC had been informed that IPFS Corporation, an insurance premium finance company, had provided Borrower Dongtai with notice of intent to cancel insurance policies

for the Hotel and demanded payment. NELIC and PALIC were subsequently informed by the Receiver that Dongtai was not able to make this payment, which constitutes a non-monetary default.

27.     Third, NELIC and PALIC demanded Dongtai's compliance with its affirmative covenants within 10 days of the date of the letter, including but not limited to:

    1)  produce all existing annual financial reports, balance sheets, statements of income, etc. from 2017 to present;

    2)  make available all of Borrower's books of account and other records to Lenders;

    3)  take all reasonable and necessary steps to ensure that Borrower comply with its obligation to provide notice of all litigation and proceedings, such as a lawsuit filed October 29, 2020 by Harris County and Houston Sports Authority against Dongtai contending that $23,892.81 is due for hotel occupancy taxes, penalties and interest, which includes an action for temporary injunction that would seek to enjoin Dongtai from operating the Hotel, and a lawsuit filed August 29, 2020 by Southwest Management District, Harris County against Dongtai contending that $399,742.46 is due for delinquent ad valorem taxes; and

    4)  take all reasonable and necessary steps to ensure that Borrower comply with its obligation regarding payment of taxes, including by paying and discharging of the above-referenced lawsuits, and provide documentation confirming that this has occurred.

28.     Fourth, NELIC and PALIC demanded to conduct a site visit of the Hotel, because Borrower Dongtai's failure to pay insurance had created significant concerns about the condition and security of the property.

29.     In response, Receiver has complied, in part, however, significant issues that were identified in NELIC and PALIC's letter remain unaddressed and unresolved.

30.     On December 10, 2020, NELIC and PALIC conducted a site visit at the Hotel. The site visit revealed numerous issues with the condition and security of the Hotel. The roof has severe leakage and bubbling that has resulted in water damage on the ninth floor, which is immediately below it. A fire sprinkler pipe burst on the fourth floor, which caused water

damage and mildew on ever floor below it, down to the first floor. Approximately 100 rooms are out of commission and in need of repair. Of the Hotel's four elevators, two have recently been replaced but require additional work to keep them operational; the other two require complete replacement. By all accounts, completing necessary and basic renovations to bring the Hotel back to operation will require millions of dollars.

31.     Lenders recently learned that on or about February 11, 2020, the Insurers filed suit against Dongtai Investment Group, LLC d/b/a Crowne Plaza Suites in New York State Supreme Court, County of New York, case number 650922/2020. At the time, Dongtai did not notify Lenders of this lawsuit, as it was obligated to do under the Deed of Trust.

32.     In the Insurers' New York litigation, the Insurers had issued a commercial property insurance policy to Dongtai under account number 445023, effective May 30, 2017 to May 30, 2018. The policy covered loss or damage to the Hotel, subject to the policy's terms and conditions. Michael Udayan, on behalf of Dongtai, submitted a notice of claim regarding wind damage to the Crowne Plaza Hotel from Hurricane Harvey. The insurers invoked the policy's arbitration clause, and according to the lawsuit arbitration proceedings were scheduled to begin later that month. On or about February 12, 2020 the lawsuit was removed to the United States District Court for the Southern District of New York, case number 1:20-cv-01231-LJL. On February 14, 2020, the lawsuit was dismissed without prejudice.

33.     Lenders have been informed that the above-referenced lawsuit/arbitration has been settled or is about to be settled.

34.     More importantly, Lenders have been informed that Plaintiffs may be seeking to use the settlement proceeds for purposes contrary to Dongtai's commitments in its Deed of Trust.

35.     On December 15, 2020, Lenders sent a request to Plaintiffs' counsel that Dongtai produce all relevant documentation and information pertaining to the above-referenced lawsuit/arbitration, including copies of all insurance policies. Further, Lenders requested

that Dongtai produce copies of all other relevant insurance policies pertaining to Dongtai Investment Group, LLC and/or the Hotel, including but not limited to policies naming Lenders as beneficiaries or additional insureds. Further, Lenders requested that Dongtai produce all relevant documentation and information pertaining to all claims, lawsuits, or arbitrations including but not limited to (1) matters involving damage to the Crowne Plaza Hotel, arising out of Hurricane Harvey or otherwise; (2) suits by any taxing authority related to the Crowne Plaza Hotel; and (3) all suits involving a claim for damages against Dongtai Investment Group, LLC or any of its members.

36.    Lenders requested that Dongtai produce all of the above to Lenders' counsel as soon as possible and no later than 5:00 p.m. CDT on Friday December 18, 2020. Moreover, Lenders gave notice that Dongtai's failure to provide the information as requested would give rise to a basis for finding additional fault under the lending agreement by and between Dongtai, its members as guarantors, and Lenders.

37.    Plaintiffs have provided mere cursory response to that request but have not provided any information regarding the status of settlement negotiations nor have they sought Lenders' approval to accept any such settlement proceeds.

38.    Furthermore, neither Plaintiffs nor Dongtai have paid the amounts now due and owing under the Loan Agreements and related documents.

## IV.    CLAIMS AND REQUESTS FOR RELIEF
### DECLARATORY JUDGMENT

39.    Lenders incorporate by reference the facts and allegations made in all foregoing and subsequent paragraphs of this motion.

40.    Lenders seeks a declaratory judgment, pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201, declaring the rights and obligations and construction and validity of

the agreements between Lenders, Dongtai, Ningbo Zu, Pengfei Zhou, Zhonghua Yu, and Xiongen Jaio.

41.     As the foregoing circumstances convey, Lenders and Dongtai are parties interested in written agreements regarding the Property whose rights and legal obligations thereunder are subject to ongoing controversy.

42.     Specifically, Lenders ask that the Court enter judgment declaring:

   a) The Deed of Trust obligates Dongtai to carry insurance on the Hotel;

   b) The Deed of Trust requires that Dongtai add Lenders as a named insured on any insurance policy related to the Hotel;

   c) Lenders must be, at least nominally, to any action or legal proceeding by which Dongtai seeks recovery of insurance proceeds in connection with the Hotel.

   d) Lenders are entitled to receipt of all settlement proceeds from any such insurance policy.

   e) Lenders' approval is necessary prior Dongtai's use of any such funds.

## **BREACH OF CONTRACT**

43.     Lenders incorporate by reference the facts and allegations made in all foregoing and subsequent paragraphs of this motion.

44.     Lenders and Dongtai were parties to a series of lending documents, as follows: that deed of trust and security agreement recorded in the Harris County Real Property Records at RP-2017-235094; a loan agreement by and between PALIC as lender and Dongtai as borrower; a promissory note by Dongtai as maker PALIC as holder; a loan agreement by and between NELIC as lender and Dongtai as borrower; promissory note by Dongtai as maker and NELIC as holder (collectively, "Lending Documents").

45.     Lenders have fully performed all of their contractual obligations under the Lending Documents. In the alternative, to the extent necessary, Lenders are excused from performing any of their contractual obligations as a result of Dongtai's material breaches of the Lending

Documents, including but not limited (i) to timely paying all amounts due and owing; (ii) timely paying all taxes associated with the Hotel, as per the terms of the Lending Documents; (iii) keeping the Hotel free and clear of other liens; (iv) providing Lenders with timely notice of all claims made under insurance policies benefitting the Hotel; and (v) providing Lenders notice of all litigation and proceedings.

46.     All conditions precedent to Dongtai's performance of its obligations were satisfied or occurred before Dongtai's breach.

47.     Dongtai's breach has caused and continues to cause Lenders consequential damages to Lenders, which damages are within the jurisdictional limits of this Court. Lenders are entitled to and, therefore, seek recover of damages in the sum of the unpaid principal, plus accrued interest, costs, and attorneys' fees.

48.     Further, due to Dongtai's material breach of the Lending Documents, pursuant to the personal guaranty agreement executed in connection with the Lending Documents, Ningbo Zu, Pengfei Zhou, Zhonghua Yu, and Xiongen Jaio, are personally, jointly and severally liable for the damages Dongtai's breach has caused and continues to cause to Lenders.

## RECEIVER FOR THE HOTEL

49.     Lenders incorporate by reference the facts and allegations made in all foregoing and subsequent paragraphs of this motion.

50.     Lenders request that the court appoint a receiver for the Hotel.

51.     Upon appointment, Receiver is to be authorized, in the exercise of his discretion, and subject to control of this Court and the laws regarding receivership, to do any and all acts necessary for the proper and lawful conduct of the receivership.  Specifically, the following:

> (1) **Appointment of Receiver.**  Receiver is appointed to act and serve as receiver with respect to the Hotel, with respect to income (of any kind) therefrom, whether now existing or hereafter collected, and with respect to any and all other property and property interests pledged or assigned to Lender under the Loan Documents on or in which Lender holds a lien or

security interest under the Loan Documents or in which Lender otherwise has an interest under the Loan Documents. The Receiver shall perform his duties in accordance with current hospitality industry practice for a hotel of this type in this market and consistent with the standards under any applicable license or franchise agreement;

(2) **Receiver's Exclusive and Complete Control over the Hotel**. Receiver is authorized to take and have complete and exclusive control and possession of the Hotel, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits and all other forms of accounts, accounts receivable, payment rights, cash and cash equivalents, along with any and all information necessary to operate the Hotel, including, but not limited to, all security codes, combinations, passwords and other access codes, and all other collateral securing the indebtedness owed to Lender pursuant to the Loan Documents;

(3) **Items to be Delivered to Receiver by Borrower**. Borrower, its General Partner (and all officers and directors of General Partner), and the property manager for the Hotel (Ameristar Hospitality, referred to herein as "**Manager**"), are ordered to deliver possession of the Hotel to the Receiver, including access to all property-related information related to the operation of the Hotel, without any right of offset or recoupment, along with all other collateral securing the indebtedness owed to Lender pursuant to the Loan Documents, including, but not limited to: (i) cash collateral (whether consisting of cash on hand, cash in any and all bank accounts or other accounts, all rights to security deposits, including, but not limited to, amounts that Borrower or its agents may have deposited with utility companies, and all other cash and cash equivalents); (ii) all keys and key cards; (iii) all currently outstanding loans other than the Loan and written correspondence files relating thereto; (iv) security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement, or occupancy of all or any part of the Hotel, and any accounts of any of the foregoing; (v) [intentionally deleted]; (vi) any and all currently due accounts receivable and related accounts payable reports; (vii) any and all contracts in effect with respect to the Hotel and all communications and written correspondence pertinent thereto; (viii) any and all current contracts, bids, or other materials relating to any contractor work at the Hotel; (ix) if requested because the Receiver intends to reopen the Hotel and hire prior employees, then, any and all payroll records, employee files, applications, and other materials relevant to those persons employed at the Hotel within the last year (subject to reasonable confidentiality agreement as to employee confidential information); (x) if not available to the Receiver from Lender, any and all current insurance policies and certificates covering the Hotel, and all written correspondence pertinent thereto; (xi) any and all bank statements relating to any accounts associated with the Hotel for the past twelve (12) months; (xii) without warranty and subject to applicable laws, any liquor licenses and related permits and approvals, with Receiver having the right to continue to operate under all existing licenses,

including any such liquor license and related permit and/or approval issued with respect to the Hotel by the Texas Alcoholic Beverage Commission, provided, however, that Receiver also has the obligation to comply after the date of this Order with all applicable Texas regulations with respect to such licenses, including filing an application to succeed to the interest of Borrower with respect to the above-referenced permits (and Borrower will reasonably cooperate); (xiii) titles to all vehicles operated in connection with the Hotel, if any; (xiv) any and all communications from franchisors to the Borrower regarding any current issue relating to the use, management, or operation of the Hotel, including but not limited to any franchise or license agreement; (xv) [intentionally deleted]; (xvi) all records related to construction work under any property improvement plan for the Hotel, if any, and (xvii) such other information relating to the operation of the Hotel as specifically requested by the Receiver from the books and records relating to the operation of the Hotel; all of which information in this Section (c) may be provided electronically or in paper, with copies retained;

(4) **Borrower's Actions**.   Borrower, General Partner (and all officers and directors of General Partner), and Manager are (i) directed to deliver possession of the Hotel to Receiver; (ii) enjoined from materially disturbing the possession of the Hotel or other property that is the subject of this Order; (iii) prohibited and restrained from disposing of, dissipating, mishandling, or misappropriating the Hotel or other such property; (iv) prohibited from taking any actions that would, directly or indirectly, have a material, adverse impact on the value of the Hotel; (v) prohibited and restrained from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Hotel, unless directed to do so by the Receiver; (vi) prohibited and restrained from collecting any rents, profits, or proceeds from the Hotel, or other sums due to Borrower or its agents, all until further order of the Court; and (vii) directed to disclose to the Receiver any personal property and/or any furniture, fixtures, and/or equipment that has been removed from the Hotel in violation of the Loan Documents; and (viii)  cooperate to facilitate Receiver succeeding to the interest of Borrower and/or the Manager with respect to all permits and licenses associated with operating the Hotel;

(5) **Receiver's Duty to Prevent Waste of, and to Preserve, the Hotel**. Effective immediately, subject to the availability of funds, Receiver is ordered to take any and all actions Receiver deems reasonable and appropriate to prevent waste of the Hotel and to preserve, secure, manage, maintain, and safeguard the Hotel and all other forms of property to which Receiver is entitled to take possession and control under this Order;

(6) **Receiver's Right to use the Information Related to the Hotel**. Receiver has the right to possess and use the books and records of Borrower and its agents with respect to operation of the Hotel and other property subject to this Order, including any and all information related to:  (i) rent rolls and leases affecting the Hotel; (ii) amounts paid by tenants, and other

obligors of Borrower; (iii) liens, encumbrances, and other interests against or affecting the Hotel; (iv) real and personal property taxes owed by Borrower or its agents, including the status of any tax appeal; (v) all types of insurance policies in effect with respect to the Hotel; (vi) plans, specifications, surveys, and drawings of the Hotel; (vii) access codes to the Hotel; (viii) all current operating and bank statements of Borrower; and (ix) all other aspects of the Hotel;

(7) **Receiver's Duty to Manage, Maintain, and Operate the Hotel**. Receiver is authorized to manage and operate the Hotel, to market and make the Hotel available for hotel guests, and to employ such managers, agents, contractors, employees, servants, accountants, and attorneys as may in Receiver's judgment be advisable or necessary in the management, conduct, control, or custody of the affairs of the Hotel; is authorized to make (or not make, if the Receiver deems it justified) payments and disbursements in the ordinary course of business of the Hotel and to make such payments and disbursements as may be needed and proper for the preservation of the Hotel; and is directed to pay, on a monthly basis, Net Income[1] from the Hotel to Lender, in reduction of the indebtedness owed to Lender by Borrower.

Receiver is authorized to terminate the agreement with Manager, without regard to any notice period, and to engage a professional property management company of his choosing ("**Receiver's Property Manager**").  Receiver's Property Manager will be paid (i) a monthly fee equal to the greater of $6,000 and 3% of monthly total gross Hotel revenue; and (ii) a $1,250 monthly accounting fee.  The Receiver's will select a Property Manager, subject to Court approval, and subject replacement by Receiver consistent with this Order.

Lender may (but is not required to) deliver to the Receiver funds held by Lender in escrows or reserves relating to the Property to be used to fund the operation of the Hotel with priority to taxes and insurance.  Borrower is not obligated to provide additional funding for the Hotel (other than to cooperate in turning over Borrower funds in accordance with this order).

With the permission of the Court and the Lender, the Receiver may apply for available non-recourse and non-taxable stimulus funding available to the Hotel under new government programs;

(8) **Receiver Authorized to Sell the Hotel**.  With the approval of the Court and the Lender, Receiver is hereby authorized to take any and all actions necessary to effectuate a sale of the Hotel (including the right to retain a qualified hospitality broker, and if such broker is retained, Receiver shall provide prompt notice to the Court, Borrower and Lender with a copy of the

---

[1]      "**Net Income**" means income after operating expenses and does not include (i) debt service payments to Lender due and owing under the Loan Documents; and (ii) a reasonable reserve for working capital.

listing agreement and copies of all marketing materials), whether together, individually, or in any combination, with or without an assignment and assumption of the Loan and the Loan Documents, including, but not limited to, entering in to a Purchase and Sale Agreement and other related documents; provided that nothing stated herein shall preclude Lender from electing to post the Hotel for nonjudicial foreclosure sale and conducting that sale, without prior permission from the Court, as provided in this Order, The Borrower shall receive at least 30 days advance notice of any auction, or any deadline for bids relating to the Hotel, the Loan or other disposition of any assets by the Receiver. The Receiver and the Lender may not bar or discriminate against any affiliate of Borrower in the sale process;

(9) **Receiver's Authorization to Lease**. Receiver may negotiate with any and all persons concerning the leasing and/or occupancy of the Hotel, including all personal property and/or collateral used in, or associated with, the ownership and operation of the Hotel or any portion or portions thereof;

(10) **Receiver's Right to Collect Amounts Due**. Receiver is authorized to receive and collect any and all sums due or owing to Borrower in any manner related to the Hotel, including any rents and revenues from the Hotel, and insurance proceeds relating to the Hotel, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, without regard to any cash management agreement between Lender and the Borrower, and to expend sums on the operation and management of the Hotel, as is necessary and appropriate, in the ordinary course of business;

(11) **Legal Actions Related to the Hotel**. Receiver is authorized to institute, prosecute, defend, compromise, and/or intervene in, or become a party to, in its capacity as Receiver, such actions or proceedings in state or federal courts, or any other proceeding, necessary for the protection, maintenance, and preservation of the Hotel and to carry out the terms of this Order, including but not limited to, the removal of Hotel guests or other persons from the Hotel, and/or defense against any action brought against Receiver acting in such capacity. Receiver is authorized to hire legal counsel and to pay its legal counsel reasonable fees to represent the Receiver and the Receiver's Property Manager in matters directly related to the receivership and operation of the Hotel;

(12) **Insurance**. Receiver and/or Receiver's Property Manager shall and are authorized to maintain appropriate property insurance for the Hotel, public general liability insurance, worker's compensation insurance, fire and extended coverage insurance, employer's liability insurance, employment practices insurance, liquor liability insurance, non-owned auto umbrella insurance, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Hotel; and is authorized to continue any current policies in place and to purchase further insurance, all to be compliant with

the Loan Documents.  Receiver, Receiver's Property Manager, Lender and Borrower shall be named insureds on all generally liability policies. Notwithstanding anything contrary in this provision, if financially prudent to do so, then Receiver may cancel any existing insurance policy for the Hotel, and any refund of premiums shall be paid to the Receiver;

(13)     **Payment of Property Taxes; Preparation and Filing of Tax Returns for the Hotel**.  Receiver shall and is authorized to pay all current and past due real estate taxes, personal property taxes, and any other taxes, assessments, and liens against the Hotel; provided that Receiver may pay real estate taxes, personal property taxes, and any other taxes or assessments that are past due as of the date of the Receiver's appointment in his sole discretion;

(14)     **Hotel-Related Taxes**.  Receiver is authorized to prepare and file sales, beverage, and occupancy tax returns with respect to the Hotel, as may be required by law for the period of Receiver's operation of the Hotel; provided, however, Receiver is not responsible for, and may not, prepare income tax returns for Borrower or any of its affiliates or to pay any such taxes for Borrower or any of its affiliates; Receiver and Receiver's Property Manager shall obtain new Tax Identification Numbers;

(15)     **Property Protection Advances from Lender**.   Receiver and Lender are authorized to enter into further lending transactions by which Lender may, in Lender's sole and absolute discretion, lend monies to Receiver (on a nonrecourse basis as to Receiver and Borrower) to enable Receiver to perform its duties hereunder, which may be advanced pursuant to the applicable pooling and servicing agreement and the Loan Documents, and will be secured by the existing liens, security interests, terms, and provisions contained within the Loan Documents; Receiver and Borrower shall have no obligation to advance funds beyond revenues from the Hotel and funds received from Lender;

(16)     **Agreements; Payment of Utilities; Maintaining the Hotel; Compliance with Laws**.  Receiver and Receiver's Property Manager: (i) may negotiate and enter into new leases, occupancy agreements, franchise and/or license agreements, and contracts in the ordinary course of the business of the Hotel; (ii) may modify existing leases, occupancy agreements, franchise and/or license agreements, and contracts in the ordinary course of the business of the Hotel; (iii) subject to available funds, shall pay all utilities, expenses, and other obligations secured by the Hotel or which may give rise to liens on the Hotel, and all other outstanding obligations to suppliers and service providers in the ordinary course of business, including obligations incurred prior to the commencement of the receivership, so long as Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the Hotel or the conduct of the receivership; (iv) subject to available funds, shall make repairs necessary to the maintenance of the Hotel in order to preserve the Hotel in the ordinary course of business; and (v) subject to available funds,

shall comply with all requirements and regulations applicable to the Hotel; for the avoidance of doubt, each of the actions permitted pursuant to the foregoing subprovisions (17)(i) and (17)(ii) is to be taken, or not taken, in the Receiver's sole and absolute discretion, and, without limitation of the foregoing, Borrower, General Partner and Manager, and all those acting in active participation or concert with them who receive notice of this Order, and all those having claims against the Hotel and any other property in Receiver's possession who receive notice of this Order are enjoined from, and shall not, terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Hotel or any other property in Receiver's possession, require return or refund of any utility deposit, or otherwise interfere with the operations of the Hotel (if reopened) or any other property in Receiver's possession; further, each utility company or entity providing service to the Hotel shall forthwith transfer any deposits which it holds relating to the Hotel to the exclusive control of Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance or satisfy obligations incurred prior to the date of this Order to maintain or secure such service;

(17)     **Application of Income from the Hotel**.  Receiver is directed to apply income from the Hotel and funds received from Lender, subject to the lien and security interest rights of Lender, as follows:  (i) taxes and insurance, (ii) Receiver's approved fees and expenses; (iii) the current operating expenses of the Hotel in the ordinary course of business; (iv) a reasonable reserve for working capital for the Hotel; (v) on a monthly basis, to the obligations owed to Lender under the Loan Documents; and (vi) such other obligations incurred;

(18)     **Receiver's Cash on Hand**.  Receiver is permitted to maintain sufficient cash on hand (in an amount to be agreed to between Receiver and Lender) to enable Receiver to meet the expenses set forth herein, the payment of which is authorized herein;

(19)     **Payment of Property Expenses**.  Receiver and Receiver's Property Manager are permitted to pay all expenses incurred with regard to the Hotel in the normal and ordinary course of business of the Hotel by Receiver on or after the date Receiver is appointed.  Neither Receiver, nor Receiver's Property Manager, nor Lender shall be liable for any expenses incurred with regard to the Hotel prior to Receiver taking possession of the Hotel, nor shall Receiver or Lender be required to use any rents or additional funds advanced by Lender or other revenues collected after Receiver takes possession of the Hotel in payment of such expenses.  Notwithstanding the foregoing, Receiver may, in Receiver's sole and absolute discretion, pay those expenses that were incurred in the normal and ordinary course of business of the Hotel and that were incurred prior to Receiver taking possession of the Hotel, if, and only if, the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Hotel (*e.g.*, utilities).  It shall be incumbent upon Receiver, in Receiver's sole and absolute discretion, to make a determination as to which expenses, if any,

incurred prior to the Receiver's taking possession of the Hotel, were incurred in the normal and ordinary course of business and the payment of which is necessary and critical to the ongoing operation of the Hotel. Receiver's determination of such is binding on the parties hereto and will not be overturned by this Court.  Otherwise, no pre-existing expenses shall be paid by Receiver without written approval by Lender or further order of this Court;

(20)   **Liability**.  Except in the event of gross negligence, willful misconduct, or actions in violation of orders of the Court, Receiver and Receiver's Property Manager have no personal liability for any obligations incurred in the course of the receivership, any and all such liabilities being limited to the assets (including the cash and cash equivalents) received and generated by Receiver in the course of the receivership, subject to the existing lien of Lender.  The cost associated with any and all claims brought against Receiver and/or Receiver's Property Manager, except in the case of gross negligence, willful misconduct, or actions in violation of this Order or other Orders of this Court, shall be an Operating Expense, including insurance premiums, deductibles, retention, costs, expenses, attorneys' fees, and settlement costs;

(21)   **Receiver's Authority**.   The authority granted to Receiver is self-executing;

(22)   **General Authority**.  The Receiver shall and is authorized to take any and all actions necessary to preserve the income to and value of the Hotel; and to perform any other acts in regard to the Hotel as authorized by this Court**.**

(23)   **No Borrower Liability for Receiver Actions**.  The Borrower (and its General Partner) are not liable for Receiver's actions or the results of Receiver's actions. Receiver is not an agent of or for Borrower (or its General Partner).  Except as expressly required to fulfill Receiver's duties under this Order, Receiver may not represent that he is authorized to act for Borrower (or its General Partner).  Borrower is not obligated to provide additional funding for the Hotel (other than to cooperate in turning over Borrower funds in accordance with this order).  Neither Borrower nor any Loan guarantor shall have any personal liability for (i) receivership expenses; or (ii) damage or liability caused by any act or omission by the Receiver or the Lender.

52.     At the request of Receiver, any depositary institution holding funds related to the

Hotel shall close accounts holding the Hotel's funds and transfer those funds pursuant to the

Receiver's direction.

53.     On filing a receiver's bond, to be posted by surety bond or by personal or business

check, in the amount of $500.00 conditioned as provided by law and approved by this Court,

together with the oath prescribed by law, Receiver is authorized, subject to control of this Court, to do any and all of the above acts necessary to the proper and lawful conduct of the receivership.

54.     To ensure the orderly operation of the receivership and maximize the value of the assets, Receiver shall do the following:

a)  Receiver, his employees and retained professionals, including Receiver's counsel, shall prepare monthly statements of services rendered and time expended during the course of the receivership.  Those periodic statements shall be filed with the Court and made available to the parties in this litigation.  The periodic statements may be included in the monthly reports filed by the Receiver.

b)  Receiver shall, to the extent of available funds, pay the items stated in Receiver's monthly report in due course unless there is any objection by a party.  If a party objects to a payment item in the Receiver's report, the objection should be set for hearing by the objecting party as soon as possible.

55.     Receiver will, within thirty (30) days of qualification and appointment, file in this action an inventory of all property of which Receiver has taken possession, including all funds in the Receiver's possession, all rents and revenues received by the Receiver, and all expenses paid by Borrower or its agent related to the Hotel in the three (3) months before Receiver's appointment. If Receiver subsequently comes into possession of additional property, Receiver will file a supplemental inventory as soon as practical.  In addition, Receiver shall file monthly reports with the Court (copying Lender and Borrower) advising the Court of the status of the Hotel.

56.     In order to promote judicial efficiency, all persons who receive actual notice of this Order are enjoined in any way from disturbing the receivership assets or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve Receiver, the receivership assets or the Hotel (including any proceeding initiated pursuant to the

United States Bankruptcy Code) unless such person or persons first obtains the permission of this Court.

57.     Notwithstanding the foregoing, Lenders NELIC and PALIC shall be permitted, without prior permission, prior approval, or further order of this Court, to take such actions as are necessary to prepare to conduct and to conduct non-judicial foreclosure sales of the Hotel pursuant to the terms of the Loan Documents and applicable Texas statutes, including, without limitation, posting notices of sale, sending notices and demand letters, if necessary, filing notices where and when required, and conducting non-judicial foreclosure sales of the Hotel on any statutorily authorized date, all in accordance with the Loan Documents and applicable Texas statutes.

58.     The Receiver shall maintain accurate accounting and other records of his activities in connection herewith and shall file reports detailing the results from operations of the Hotel as subsequently ordered by the Court.

59.     In addition to any financial, operating, and other reports and information required to be delivered pursuant to the Loan Documents, Receiver shall deliver to Lender, Borrower and all parties' counsel and file in the record of the above-captioned case, no later than the twentieth (20th) day of each calendar month, beginning the month following appointment of the Receiver, each of the following with respect to the immediately preceding calendar month, certified by Receiver as true, correct, and complete:

a) a balance sheet, statement of income and expenses, statement of cash flows (each on a budget versus actual comparison basis) for the Hotel, monthly STR reports for the Hotel, and trailing twelve months profit and loss statements;

b) for space leases, if any, a detailed rent roll for the Hotel showing the occupancy of the Hotel, name of each tenant and, for each tenant, the space occupied, the lease commencement and expiration dates, the rent payable, the rent paid to date and the security deposit being held for such tenant, and a leasing activity report for the Hotel in detail reasonably satisfactory to Lender;

    c)   an aged payables report and an aged receivables report for the Hotel;

    d)   a capital expenditure report for the Hotel;

    e)   all bank statements with monthly reconciliations; and

    f)   within thirty (30) days of the Court's Order, an annual budget for the Hotel.

60.    No later than sixty (60) days after the date on which the last of the Hotel is transferred out of the receivership estate (via non-judicial foreclosure sale, note sale, or otherwise), Receiver shall deliver to Lender and Borrower, and file in the record of the above-captioned case, (i) a final report and accounting, and (ii) a motion to formally discharge the Receiver from his duties.  Receiver shall retain or be paid sufficient funds to pay final bills and expenses related to the Hotel.  Receiver shall also have the right to apply to the Court for discharge of all duties under this Order.

61.    Borrower and Manager shall fully cooperate with Receiver in adding Receiver, Receiver's Property Manager, Borrower and Lender, if necessary, as named insureds, and Lender as the loss payee, to the extent entitled to do so, on all insurance relating to the operation and management of the Hotel including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by Receiver.  Borrower and Manager (and their insurance agent) are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Hotel.

62.    No lien, claim, or other security interest in any property affected by this receivership will in any manner be affected by the Court's Order.  Any party's failure to oppose the appointment of Receiver, any party's consent to the appointment, or any party's procurement of the appointment will not constitute a waiver of any lien, claim, or right.

63.     Lender shall not seek to enforce recourse liability under the Loan Documents with respect to taxes and insurance obligations that become due while Receiver is in possession of the Hotel.

64.     All third parties (including but not limited to financial institutions) in possession of assets subject to the Court's Order are hereby ordered to turn over such assets to Receiver within five (5) business days of receipt of a copy of the Court's Order, to the extent practical in the exercise of diligence, and as soon thereafter as is practical in the exercise of diligence, if beyond such date.

65.     No person or entity, including governmental entity, shall file suit against Receiver, Receiver's Property, or take other action against Receiver or Receiver's Property Manager, regarding anything related to the Hotel or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action.

66.     Receiver and his employees, agents, and attorneys, including Receiver's Property Manager, shall have no personal liability in connection with any claims, liabilities, obligations, liens, or amounts arising out of operation of the Hotel, owed to any of Borrower's creditors because of his duties as Receiver. Nothing in the Court's Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with the laws of the State of Texas.

67.     If the debt held by Lender secured by the Hotel is sold or otherwise transferred to another lender or holder, Receiver may seek discharge from his duties as receiver from this Court.

68.     Receiver and his employees, agents, and attorney, including Receiver's Property Manager, shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under the Court's Order, except for claims due to their gross

negligence, gross or willful misconduct, malicious acts, or the failure to comply with the Court's orders.

## V.      DAMAGES AND LIABILITY

69.    Lenders incorporate by reference the facts and allegations made in all foregoing and subsequent paragraphs above and hereafter.

70.    As a result of Dongtai's refusal to perform its contractual obligations, Lenders have suffered actual damages, including but not limited to the total monies due and owing under the Lending Documents, out-of-pocket expenses associated with Dongtai's failure to maintain insurance, and attorneys' fees and costs in an amount exceeding the minimus jurisdictional limit of this Court.

71.    Pursuant to the Lending Documents and TEX. CIV. PRAC. & REM. CODE § 38.001, Plaintiff is entitled to and therefore seeks to recover its reasonable and necessary attorneys' fees and costs associated with prosecuting this action.

72.    Pursuant to Chapter 304 of the Texas Finance Code and the Texas common law, Plaintiff is entitled to recover pre-judgment and post-judgment interest at the maximum statutory rate.

## VI.      CONDITIONS PRECEDENT

73.    All conditions precedent to Lenders' right to recover have been performed, have occurred, or have been waived.

## VII.      PRAYER

74.    New Era Life Insurance Company, and Philadelphia American Life Insurance Company respectfully pray that upon answer herein and upon final hearing that they be awarded judgment, as follows:

a) render judgment Dongtai, Ningbo Zu, Pengfei Zhou, Zhonghua Yu, and Xiongen Jai, jointly and severally, awarding all damages proximately caused by Dongtai's breach of the Lending Documents;

b) appoint a receiver for the Crowne Plaza Hotel as set forth herein;

c) a declaration regarding the construction and validity of the agreements between Lenders and Defendant;

d) Judgment for reasonable and necessary attorneys' fees and costs;

e) All such other and further relief to which Lenders are justly entitled.

Respectfully submitted,

**WILSON, CRIBBS & GOREN, P.C.**

By: _____/s/ Scot Clinton_____
         Scot Clinton
         Texas Bar No. 24045667
         Sara Prasatik
         Texas Bar No. 24088251
2500 Fannin Street
Houston, Texas 77002
Tel. (713) 222-9000
Fax. (713) 229-8824
sclinton@wcglaw.com
sprasatik@wcglaw.com

**ATTORNEYS FOR INTERVENING PLAINTIFFS NEW ERA LIFE INSURANCE COMPANY AND PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2021 a true and correct copy of the above and foregoing was filed on the CM/ECF system and served to all counsel of record via electronic notices, facsimile, and/or U.S. Postal Mail in compliance with the Federal Rules of Civil Procedure.

<u>*/s/ Scot Clinton*</u>
Scot Clinton

IN THE UNITED STATES DISTRICT COURT         FOR THE S(
OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| XIONGEN JIAO, an individual, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| NINGBO XU, an individual, and LCL | § | C.A. NO. 4:19-CV-01848 |
| COMPANY LLC, a Texas limited | § | |
| liability company, | § | Hon. Keith P. Ellison |
| | § | |
| Defendants | § | |

## VERIFICATION

STATE OF TEXAS          §
                        §
COUTY OF HARRIS         §

    Before me, the undersigned notary, on this day personally appeared *Bill S. Chen* the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

    "My name is *Bill S. Chen*. I am capable of making this verification. I am an authorized representative of New Era Life Insurance Company, and Philadelphia American Life Insurance Company. I have read the Complaint in Intervention and the facts stated are within my personal knowledge and are true and correct."

By:  _____
        [name]

       _____
        [title]

Sworn to and subscribed before me by *Bill S. Chen* on *January 12*, 2021.

_____
Notary public in and for
the State of Texas

CATHERINE E MATTHEW
Notary ID #10562125
My Commission Expires
July 3, 2024