Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

Lessee (Complete Legal Name): Donglai Investent Group LLC

Lease Agreement Number: HOUVR.5429862126.01

# Business Lease Agreement

This Lease (including the attached Schedules A and B, this "Lease") refers throughout to Lessee as "you" or "your" and to Lessor as "we", "us" or "our". In consideration of our purchase of the equipment described on Schedule A (the "Equipment"), you hereby lease the Equipment from us for your business purposes only (and not for personal, family or household purposes), subject to all terms and conditions of this Lease. You acknowledge that you selected the vendor as identified in Schedule A (the "Vendor") and all such Equipment without our assistance. You agree that this Lease is a net lease so you will pay, by Lease payment increase or upon our demand, all costs, fees, taxes (e.g. property, sales and use taxes) or other charges connected with the Lease and the Equipment, as well as all costs for insurance, repairs, maintenance, shipping, and filing fees. You authorize us to adjust your Lease payment by up to ten percent (10%) if the actual total cost of the Equipment at acceptance varies from the original estimate. Lease payments shall commence on the Acceptance Date, as defined below, and are due in advance or arrears each monthly or quarterly period ("Period") during the Lease term on the monthly or quarterly anniversary of the Acceptance Date, all as specified in Schedule A. You agree to pay a one-time documentation fee in the amount specified in Schedule A with the first Lease payment to cover account-setup costs. If you do not elect to either purchase the Equipment, renew the Lease or return the Equipment by the end of the Lease term in accordance with the terms of Schedule A hereto, or you fail to comply with your obligations arising from the election, you will continue to pay the original Lease payments for any full or partial Period that you keep the Equipment. If you have selected either a FMV or a 10% End of Term Purchase Option (as indicated on Schedule A), then we and you intend this Lease to be a "Finance Lease" as defined in Article 2A of the Uniform Commercial Code (as enacted and in effect in any applicable jurisdiction, the "UCC") and you authorize us to file a UCC financing statement to give public notice of our ownership of the Equipment. If you have selected a $1.00 End of Term Purchase Option or if this Lease is otherwise deemed to be a "lease" intended for security", then to secure payment and performance of your obligations under this Lease, you hereby grant us a purchase money security interest in the Equipment and in all attachments, accessories, additions, products, replacements, and proceeds (including insurance proceeds) to and of the Equipment, as well as a security interest in any other equipment we have leased to or financed for you, and you authorize us to file a UCC financing statement to perfect such security interest. You hereby appoint us as your attorney-in-fact to: (i) sign any UCC financing statements in your name, (ii) modify Schedule A to reflect any Lease payment adjustment provided for above and to complete or modify any Equipment description in Schedule A or any related document to accurately describe the Equipment actually accepted by you, and (iii) correct all typographical, clerical or legal name errors discovered in any or all of the documentation required in connection with this Lease and execute or initial all such documentation corrections in your name.

EXCEPT AS TO QUIET ENJOYMENT, WE MAKE ABSOLUTELY NO REPRESENTATIONS OR WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING NO WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. You can only make any claim relating to the Equipment against the Vendor or manufacturer, and you waive any such claim against us. We hereby assign any Equipment warranties during the Lease term for your exercise at your expense. WE WILL NOT BE LIABLE FOR INCIDENTAL, SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES. YOU AGREE TO MAKE PAYMENTS TO US WHEN DUE, UNCONDITIONALLY, WITHOUT ABATEMENT OR OFFSET FOR ANY CAUSE AND REGARDLESS OF ANY PROBLEMS WITH THE EQUIPMENT, VENDOR, OR US AND YOU WAIVE ANY CLAIM OR DEFENSE TO ANY LEASE PAYMENT.

You agree to indemnify us against third party claims or other loss or damages, including attorneys' fees, arising directly or indirectly out of Equipment defects, use, or operation, and whether arising out of breach of contract, tort, or strict or product liability. You agree not to move the Equipment or to transfer, sell, sublease, or encumber the Equipment or any rights under this Lease without our prior written consent. We may freely assign our rights and interests under this Lease without notice to you or your consent. You agree that our assignee will have the same rights and remedies as we do, and that our assignee's rights will not be subject to any claims or defenses you may have against us. You and any guarantor hereby authorize us to share information about you and any guarantor (including personally identifiable information) with our assignees, potential assignees, the Vendor and other third parties providing services to us.

We own the Equipment and, unless you have selected a $1.00 End of Term Purchase Option, we retain all benefits of ownership and you agree not to take any position inconsistent with our ownership. We may inspect the Equipment and attach Equipment ownership labels. You are solely responsible for the installation, operation, and maintenance of the Equipment, will keep it in good condition, will use it in compliance with applicable law, and will not attach it to building fixtures. You bear all risk of loss or damage to or from the Equipment arising prior to its return to us and will have it duly insured against all risk of loss and damage up to the greater of its replacement value or the Stipulated Loss Value (as defined below) and against public liability for bodily injury or damage to property arising in connection with the Equipment. You will provide to us a certificate showing that you have such insurance coverages, naming us as loss payee. Upon the occurrence of any loss or irreparable damage to the Equipment ("Casualty Loss"), you agree to immediately (a) replace the affected Equipment with equipment of equivalent or better value and supplied by a manufacturer acceptable to us or (b) pay us an amount ("Stipulated Loss Value") which is the sum of (i) all arrears in Lease payments as of the date of payment of the Stipulated Loss Value, if any (ii) all Lease payments payable from the date of payment of the Stipulated Loss Value up until expiry of the term (discounted at a rate equal to the 3% per annum (the "Discount Rate"), compounded monthly) and (iii) an amount calculated by multiplying the Equipment Total Cost with the applicable percentage specified in the next sentence. The applicable percentage will be 40% for Equipment having an initial Term of less than 24 months; 35% for Equipment having an initial Term of 24 months or greater, but less than 36 months; and 30% for Equipment having an initial Term of 36 months or greater.

You do not and will not: 1) export, re-export, or transfer any Equipment, software, source code or any direct product thereof to a prohibited destination, or to nationals of proscribed countries wherever located, without prior authorization from the United States and other applicable governments; and 2) use any Equipment, software or technology, technical data, or technical assistance related thereto or the products thereof in the design, development, or production of nuclear, missile, chemical, or biological weapons or transfer the same to a prohibited destination, or to nationals of proscribed countries, without prior authorization from the United States and other applicable governments. You are not an entity or person designated by the United States government or any other applicable government with which transacting business without the prior consent of such government is prohibited.

You are familiar with the U.S. Foreign Corrupt Practices Act, the U.K. Bribery Act, and other analogous anti-corruption legislation in other jurisdictions in which you conduct business or which otherwise apply to you, and with related regulations. (collectively the "Anti-Corruption Laws"). You shall not in connection with this Lease: (i) make any improper payment or transfer anything of value, offer, promise or give a financial or other advantage or request to, or agree to receive or accept a financial or other advantage from, either directly or indirectly, any government official or government employee (including employees of a government corporation or public international organization) or to any political party or candidate for public office or to any other person or entity with an intent to obtain or retain business or otherwise gain an improper business advantage; or (ii) take any action which would cause us to be in violation of any Anti-Corruption Laws. You shall promptly notify us if you become aware of any violation of the representations and covenants set forth in this paragraph.

If you do not pay or perform any obligation under this Lease within 10 days of when such payment or performance is due, or you or any guarantor die, become insolvent or unable to pay debts when due, stop doing business as a going concern, merge, consolidate, transfer all or substantially all of your assets, make an assignment for the benefit of creditors, file bankruptcy, appoint a trustee or receiver or undergo a material adverse change in your financial or operating condition, we can do any or all of the following: (1) accelerate without notice all payments provided for in this Lease (discounted at the Discount Rate), (2) immediately repossess the Equipment or (absent Equipment repossession or return) claim a further amount equal to Stipulated Loss Value from you, (3) collect all costs of collection, including any bad check charges and reasonable attorneys' fees, (4) collect lost tax benefits and all unpaid amounts due hereunder, (5) sell or relet the Equipment, and (6) exercise all other remedies at law or equity. If we do not receive any payment when due, you will pay a one-time late charge on any overdue payment equal to the greater of $.10 per dollar for each late payment, or $15 (to compensate for the cost and expense of collecting and processing the late payment), plus a charge of 1 1/2% of the late payment for every month after the first month in which the payment is late (for damages including our inability to reinvest the late amount), but in any case, never to exceed more than the maximum charge allowed by law. In addition, if you are delinquent in payment, you agree to pay the actual out-of-pocket expenses incurred by us in our collection efforts (including, but not limited to, any bad check charges). Your payments may be applied, as we elect, first to the oldest amount due. Our action or failure to act on any one remedy shall not constitute an election of such as our sole remedy. Any provision of this Lease is severable if unenforceable. Any action or claim by you against us shall be commenced within one year after the cause of action arises or be forever barred.

You agree to sign such other documents and take such other actions as we may require to accomplish the intent and purpose of this Lease. All of your representations, warranties and obligations hereunder shall survive the termination of this Lease. All notices, demands and other communications required to be given under this Lease shall be in writing and shall be deemed to have been given if delivered personally or mailed via certified mail or a nationally recognized overnight courier service.

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

TIME IS OF THE ESSENCE. THIS LEASE SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF NEW JERSEY AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF. TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE PARTIES HERETO EXPRESSLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY JURISDICTION. YOU WAIVE ANY STATUTORY PROVISIONS WHICH CONFLICT WITH THE TERMS OF THIS LEASE, INCLUDING BUT NOT LIMITED TO UCC ARTICLE 2A SECTION 303 AND SECTIONS 508 THROUGH 522. You acknowledge that neither any Vendor nor any Equipment salesperson is an agent of ours nor are they authorized to waive or alter the terms of this Lease. Their representations in no way affect any of our rights and obligations as herein set forth. We may initiate signature to this Lease or other related agreements by electronic means through Docusign, Adobe or any other commercial electronic signature provider (any such document, an "Electronic Document") to an electronic mail address that you have identified to us. If we first send and we and/or you thereafter sign an Electronic Document then you agree that: (1) the Electronic Document will be enforceable in accordance with its terms; (2) the Electronic Document will be deemed to be (i) a "writing" or "in writing" and (ii) an "original" when printed from our electronic files or records established and maintained in the normal course of business; (3) neither party will contest the validity or enforceability of the Electronic Document; (4) the Electronic Document will be admissible as evidence in any judicial proceeding the same as if it was an ink-signed document; (5) each party will use commercially reasonable security measures to protect and record signatures to and delivery of Electronic Documents only by identifiable authorized persons; and (6) each party will be responsible for (i) any unauthorized access to or processing of Electronic Documents within its own organization and (ii) the failure of its security measures. If you do not wish to sign an Electronic Document electronically, you may notify us in writing and thereafter we will not use Electronic Documents with you as stated.

You acknowledge that certain personal information may be communicated to us in the course of the performance of the Lease and will be used by us to administer our rights and obligations under the Lease and any other agreement entered into between you and us. You confirm that you have obtained any requisite consent to the disclosure and processing of such information by us for that purpose. All such personal data will be processed in accordance with the Hewlett Packard Enterpise privacy policy in force from time to time (available at www.hpe.com). You authorize us to share information related to this Lease with our affiliates for any reason and any third party as necessary to fulfill our obligations under this Lease.

If the Equipment includes software and the relevant licensor has authorized us to make the software available for your use under this Lease, you assign to us all of your right, title and interest in the relevant software license agreement (the "License"). Such assignment is an assignment of rights only and you will remain subject to all obligations and liabilities under the License except for the obligation to pay for the License after your execution and delivery of all documentation necessary to establish your acceptance of the software. At the end of the term of this Lease and provided you are not in default we will assign all rights, title and interest in the License back to you.

By signing and initialing a copy of this Lease where required below (either on paper or electronically) and providing the deposit account information required by Schedule B, you are agreeing to all of the terms and conditions of this Lease, including the terms and conditions contained in Schedules A and B and Annex 1, each of which is hereby incorporated by reference into this Business Lease Agreement. This Lease shall become effective upon our acceptance hereof but we will have no obligation to purchase the Equipment until you have accepted it as set forth below.

LESSEE SIGNATURE HERE AND BELOW*

BY: *[signature]*

NINGBO XU, president

Print Name and Title of Signatory:

## Read Carefully Before Signing

This lease is non-cancellable and is our full and final agreement, merging all prior understandings, and cannot be modified or terminated except by a written agreement signed by you and by a corporate officer of our company. You warrant to us that you have received, reviewed and approved your vendor's written supply contract covering the equipment terms of sale and warranties. You hereby authorize us to purchase the equipment in reliance solely upon your statements herein. By your initials below, you shall be deemed to have irrevocably accepted the equipment 10 business days after shipment of the equipment to you unless we receive your written rejection prior to the end of the 10-day period. However, you agree to execute and deliver to us a delivery and acceptance certificate upon our request. "Acceptance date" means the first business day following the expiration of such 10-day period or such other date set forth in any delivery and acceptance certificate requested by us. The term of this lease shall begin on the acceptance date.

*LESSEE (INITIAL) X *[initials]*
DATE: 2/6/2018

ACCEPTED BY: HEWLETT-PACKARD FINANCIAL SERVICES COMPANY¹

BY: *[signature]* DATE: 8/14/2018

## Guaranty

In consideration of this Lease of Equipment to Lessee, and to be legally bound, the undersigned ("Guarantor") personally, irrevocably and unconditionally guarantees payment and performance of, and as a primary debtor agrees to be jointly and severally liable for (without becoming entitled to the benefits of) all obligations under this Lease until such obligations are satisfied. WE MAY PROCEED AGAINST THE GUARANTOR IN THE FIRST INSTANCE WITHOUT RESORTING TO OTHER REMEDIES, AND THE GUARANTOR WAIVES ANY STATUTORY OR OTHER RIGHT TO REQUIRE OTHERWISE. Guarantor waives subrogation rights; waives defenses and rights relating to impairment, invalidity, modification, extension of the Lease, or relating to substitution, dishonor, release or compromise of Lessee; waives demand, protest, presentment; and waives all notices related to any of the foregoing. Guarantor shall pay all costs of enforcement and collection including attorneys' fees. THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF NEW JERSEY. GUARANTOR CONSENTS TO THE PERSONAL JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN NEW JERSEY. THE PARTIES HERETO EXPRESSLY WAIVE ALL RIGHTS TO A TRIAL BY JURY.

**GUARANTOR SIGNATURE HERE:**

| Name | Address |
|---|---|
| Ningbo Xu | 13500 W Airport Blvd Ste G, UNITED STATES |

BY: X _____

Soc. Sec #: _____

Authorized to do business in the name of Hewlett-Packard Financial Services Company Inc. in Alabama and New York.

Hewlett-Packard Financial Services Company
200 Connell Drive Suite 5000
Berkeley Heights NJ 07922

TIME IS OF THE ESSENCE. THIS LEASE SHALL BE DEEMED FULLY EXECUTED AND PERFORMED IN THE STATE OF NEW JERSEY AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS THEREOF TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THE PARTIES HERETO EXPRESSLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY JURISDICTION. YOU WAIVE ANY STATUTORY PROVISIONS WHICH CONFLICT WITH THE TERMS OF THIS LEASE INCLUDING BUT NOT LIMITED TO UCC ARTICLE 2A SECTION 303 AND SECTIONS 508 THROUGH 522 You acknowledge that neither any Vendor nor any Equipment salesperson is an agent of ours nor are they authorized to waive or alter the terms of this Lease Their representations in no way affect any of our rights and obligations as herein set forth. We may affix signature to this Lease or other related agreements by electronic means through DocuSign Adobe or any other commercial electronic signature provider (any such Document an "Electronic Document") to an electronic mail address that you have identified to us. If we first send and we and/or you thereafter sign an Electronic Document then you agree that (1) the Electronic Document will be enforceable in accordance with its terms; (2) the Electronic Document will be deemed to be (i) a "writing" or "in writing" and (ii) an "original" when printed from our electronic files or records established and maintained in the normal course of business; (3) neither party will contest the validity or enforceability of the Electronic Document; (4) the Electronic Document will be admissible as evidence in any judicial proceeding the same as if it was an ink-signed document; (5) each party will use commercially reasonable security measures to protect and record signatures to and deliver of Electronic Documents only by identifiable authorized persons; and 6) each party will be responsible for (i) any unauthorized access to or processing of Electronic Documents within its own organization and (ii) the failure of its security measures. If you do not wish to sign an Electronic Document electronically, you may notify us in writing and thereafter we will not use Electronic Documents with you as stated.

You acknowledge that certain personal information may be communicated to us in the course of the performance of the Lease and will be used by us to administer our rights and obligations under the Lease and any other agreement entered into between you and us. You confirm that you have obtained any requisite consent to the disclosure and processing of such information by us for that purpose. A such personal data will be processed in accordance with the Hewlett Packard Enterprise privacy policy in force from time to time available at www.hpe.com. You authorize us to share information related to this Lease with our affiliates for any reason and any third party as necessary to fulfill our obligations under this Lease.

If the Equipment includes software and the relevant licensor has authorized us to make the software available for your use under this Lease you assign to us all of your right title and interest in the relevant software license agreement (the "License"). Such assignment is an assignment of rights only and you will remain subject to all obligations and liabilities under the License except for the obligation to pay for the License after your execution and delivery of a documentation necessary to establish your acceptance of the software. At the end of the term of this Lease and provided you are not in default we will assign all rights title and interest in the License back to you.

By signing and initialing a copy of this Lease where required below (either on paper or electronically) and providing the deposit account information required by Schedule B, you are agreeing to all of the terms and conditions of this Lease, including the terms and conditions contained in Schedules A and B and Annex 1, each of which is hereby incorporated by reference into this Business Lease Agreement. This Lease shall become effective upon our acceptance hereof but we will have no obligation to purchase the Equipment until you have accepted it as set forth below.

LESSEE SIGNATURE HERE AND BELOW:

BY _/s/ Ningbo Xu_
Print Name and Title of Signatory: NINGBO XU, president

## Read Carefully Before Signing

This lease is non cancelable and is our full and final agreement merging all prior understandings and cannot be modified or terminated except by a written agreement signed by you and by a corporate officer of our company. You warrant to us that you have received reviewed and approved your vendor's written supply contract covering the equipment terms of sale and warranties. You hereby authorize us to purchase the equipment in our name solely upon your statements herein. By your initials below you shall be deemed to have irrevocably accepted the equipment 10 business days after shipment of the equipment to you unless we receive your written rejection prior to the end of the 10 day period. However, you agree to execute and deliver to us a delivery and acceptance certificate upon our request. Acceptance date means the first business day following the expiration of such 10-day period or such other date set forth in any delivery and acceptance certificate requested by us. The term of this lease shall begin on the acceptance date.

**LESSEE (INITIAL) X** _NRX_
**DATE:** 2/6/2018

**ACCEPTED BY: HEWLETT-PACKARD FINANCIAL SERVICES COMPANY:**
BY: _Carmella Matevy_ DATE: 8/14/2018

## Guaranty

In consideration of this Lease of Equipment to Lessee and to be legally bound the undersigned ("Guarantor") personally irrevocably and unconditionally guarantees payment and performance of and as a primary debtor agrees to be jointly and severally liable for (without becoming entitled to the benefits of all obligations under this Lease until such obligations are satisfied) WE MAY PROCEED AGAINST THE GUARANTOR IN THE FIRST INSTANCE WITHOUT RESORTING TO OTHER REMEDIES AND THE GUARANTOR WAIVES ANY STATUTORY OR OTHER RIGHT TO REQUIRE OTHERWISE. Guarantor waives subrogation rights, waives defenses and rights relating to impairment, invalidity, modification, extension of the Lease or relating to substitution, dishonor, release or compromise. Lessee waives demand, protest, presentment and waives all notices related to any of the foregoing. Guarantor shall pay all costs of enforcement and collection including attorneys' fees. THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF NEW JERSEY GUARANTOR CONSENTS TO THE PERSONAL JURISDICTION AND VENUE OF FEDERAL AND STATE COURTS IN NEW JERSEY THE PARTIES HERETO EXPRESSLY WAIVE ALL RIGHTS TO A TRIAL BY JURY

**GUARANTOR SIGNATURE HERE:**

| Name | Address |
|------|---------|
| Ningbo Xu | 13500 W Airport Blvd Ste G<br>UNITED STATES |
| BY: X _/s/_ | |
| Soc. Sec #: ▮▮▮▮▮▮▮▮▮ | |

Authorized to do business in the name of Hewlett-Packard Financial Services Company Inc. in Alabama and New York

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

## Schedule A to Business Lease Agreement

Lease Agreement Number: HOUVR.5429862126:01

| Lessee (full legal name): Dongtai Investent Group LLC | | | |
|---|---|---|---|
| Billing Address: 9090 Southwest Freeway, Houston, TX, 77074, UNITED STATES<br>Tax ID Number: 81-4703708 | | | |
| Telephone Number (including area code): 7139950123 Fax Number (including area code): | | | |
| Equipment Description: | See Attached Annex 1 to this Schedule | | |
| Equipment Location: (if different from Billing Address)<br>9090 Southwest Freeway, Houston, TEXAS, 77074, UNITED STATES | | | |
| Vendor Information(name): | Hewlett-Packard Company (Intercompany) | | |
| Term: 48<br>Period: Monthly<br>Payable: Advance | End-of-Term Option:<br>Fair Market Value | Periodic Lease Payment:<br>$ 536.11 | Tax on Periodic Lease Payment (if applicable):<br>$46.50 |
| Advance Lease Payment:<br>$582.61 | Tax on Advance Lease Payment (if applicable)<br>$0.00 | Documentation Fee:<br>$0.00 | |
| The payment of any Advance Lease Payment reflected herein shall be a condition to Lessor's agreement to this Lease and may include either or both of the following: (a) applicable taxes, and/or (b) any other "Down Payment" (defined herein below). "Down Payment" shall mean such amount determined by Lessor required upon the execution of this Lease and shall be credited against the original cost of the Equipment leased under this Lease. | | Total First Payment:<br>$582.61<br>(The Total First Payment shall include any Advance Lease Payment, the first Periodic Lease Payment, any applicable taxes, and the Documentation Fee.) | |

**Lessee's end of term options:**
If you have on a timely basis fully complied with all the terms and conditions of this Lease, you may choose to exercise one of the following options upon the natural expiration of the term or any extension or renewal term on an "all or none" basis as to each option, provided however, you must give us written notice not less than ninety (90) days before expiration of the relevant term:

1. **PURCHASE OPTIONS:** You may purchase the Equipment for the Purchase Price (as defined below) on an "as-is, where-is" basis, without any representations or warranties, including no warranties of merchantability or fitness for a particular purpose. "Purchase Price" means (a) if you have selected a FMV End of Term Purchase Option (as indicated above), the then "Fair Market Value" (as defined below) of the Equipment (plus all applicable taxes), or (b) if you have selected a 10% End of Term Purchase Option (as indicated above), an amount equal to ten percent (10%) of the original Equipment cost (plus all applicable taxes), or (c) if you have selected a $1.00 End of Term Purchase Option (as indicated above), an amount equal to one dollar ($1.00) (plus all applicable taxes). "Fair Market Value" means the price that a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment will be assumed to be in the condition in which it is required to be maintained and returned under this Lease, (ii) in the case of any installed Equipment, that Equipment shall be valued on an installed basis, and (iii) costs of removal from the current location shall not be a deduction from such valuation. If you and we are unable to agree on the Fair Market Value of the Equipment at least thirty (30) days before Lease expiration, we will appoint an independent appraiser (reasonably acceptable to you and at your expense) to determine the Fair Market Value and such appraiser's determination will be final, binding and conclusive.

2. **RENEWAL OPTION:** You may renew the Lease at the then Fair Market Rental Value. "Fair Market Rental Value" means the amount of periodic rent that would be payable for the Equipment in an arm's length transaction between an informed and willing lessee and an informed and willing lessor, neither under compulsion to lease. Such amount will not be reduced by the costs of removing any Equipment from its current location or moving it to a new location. In the event of such an election, Lessee shall enter into a mutually agreeable renewal agreement with Lessor on or before the last day of the then applicable term confirming the period for which the Lease is to be renewed (the "Renewal Term"), and the amount of Rent and the times at which such Rent is to be payable during the Renewal Term.

3. **EQUIPMENT RETURN OPTION, PACK AND SHIP:** You may return all the Equipment in a single shipment by (a) removing any of your labels, tags or other identifying marks on the Equipment and wiping clean or permanently deleting all data contained on the Equipment, including without limitation, any data contained on internal or external drives, discs or accompanying media, (b) carefully de-installing the Equipment in accordance with the manufacturer's specifications and guidelines, specifically including removal of any ink cartridges from printer Equipment, and (c) delivering the Equipment to us, for pick-up by our designated carrier at a loading dock at your facilities located at the equipment location designated on Schedule A, which must be accessible to a full size tractor trailer (the "Designated Pick-up Location"). In the case of any operating system software to be returned to us, you shall also deliver to us the original certificate of authenticity issued by the licensor of such software, if any, the end user license agreement, any CD-ROM, diskettes or other media relating to such software and any other materials originally delivered to you with such software. Tender of Equipment for return to us shall be made at a mutually agreeable time during normal business hours and you shall provide us with not less than five (5) business days advance notice for any requested pick up. We shall cause our authorized carrier to pack the Equipment, pick up the Equipment at the Designated Pick-up Location, and to ship the Equipment, insured, to our designated return facility. So long as no Default has occurred, and you tender all of the Equipment for a single shipment at the Designated Pick Up Location, all actual charges from the Designated Pick-up Location to Lessor's return facility shall be borne by us; provided, however, that you shall pay all actual costs of any Equipment packing, transportation, in-transit insurance and shipping if: (a) you tender less than all of the Equipment or require multiple shipments for the return of the Equipment; (b) you tender the Equipment at a location other than the Designated Pick-up Location; or (c) you are in default of your obligations under this Agreement. All Equipment shall be returned to us in the same condition and working order as when delivered to you, reasonable wear and tear excepted, and, except in the case of PC Equipment and Software, shall qualify for maintenance service by the Supplier at its then standard rates for Equipment of that age, if available. You shall be responsible for, and shall reimburse us promptly on demand for, the cost of returning the Equipment to good working condition or, in the case of Equipment other than PC Equipment and Software, qualifying the Equipment for the Supplier's maintenance service, if available. The return of the Equipment shall constitute a full release by you of any leasehold rights or possessory interest in the Equipment.

4. AUTOMATIC EXTENSION. IF THE LEASE DOES NOT CONTAIN A $1.00 END-OF-TERM PURCHASE OPTION, AND YOU FAIL TO DELIVER TO US THE END-OF-TERM NOTICE NOT LESS THAN NINETY (90) DAYS BEFORE THE EXPIRATION OF THE RELEVANT TERM, THEN, WITHOUT ANY ADDITIONAL NOTICE OR DOCUMENTATION, THE THEN RELEVANT TERM SHALL BE AUTOMATICALLY EXTENDED FOR SUCCESSIVE CALENDAR MONTHS WITH RESPECT TO ALL ITEMS OF EQUIPMENT SUBJECT TO THIS LEASE THROUGH THE END OF THE CALENDAR PERIOD FALLING AT LEAST 90 DAYS AFTER THE DATE YOU SHALL HAVE DELIVERED TO US AN END-OF-TERM NOTICE WITH RESPECT TO THIS LEASE AND ALL OTHER PROVISIONS OF THE LEASE SHALL CONTINUE TO APPLY. IF YOU DELIVER SUCH END-OF-TERM NOTICE, BUT SHALL HAVE SUBSEQUENTLY FAILED TO COMPLY WITH ITS OBLIGATIONS ARISING FROM THE ELECTIONS SPECIFIED THEREIN; THEN THE THEN APPLICABLE TERM OF THIS LEASE SHALL, WITHOUT ANY ADDITIONAL NOTICE OR DOCUMENTATION, BE AUTOMATICALLY EXTENDED, FOR EACH CALENDAR PERIOD THAT THE THEN APPLICABLE TERM OF THIS LEASE IS SO EXTENDED, YOU SHALL PAY TO US LEASE PAYMENTS IN AN AMOUNT EQUAL TO THE PERIODIC LEASE PAYMENT IN EFFECT IMMEDIATELY PRIOR TO SUCH EXTENSION AND ALL OTHER PROVISIONS OF THE LEASE SHALL CONTINUE TO APPLY.

Lessee (initial): _NBA_ (handwritten initials)

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

Lease Agreement Number: HOUVR 5429862126 01

## Schedule B to Business Lease Agreement
Authorization Agreement for Direct Payments (ACH Debits)

As a condition to Hewlett-Packard Financial Services Company entering into the Business Lease Agreement referenced above ("Lease Agreement"), Lessee hereby enters into this Authorization Agreement for Direct Payments. By executing this Authorization Agreement for Direct Payments, the undersigned hereby authorizes Hewlett-Packard Financial Services Company and its assignees (collectively "HPFS") to initiate debit entries to the account identified below ("Account") at the Depository Financial Institution identified below ("DFI") and debit the same to the Account for:

__X__ (a) the Total First Payment required under the Lease Agreement; and

__X__ (b) any periodic lease payments and any other applicable payments of taxes and/or other fees payable by Lessee to HPFS according to and under the Lease Agreement.

The undersigned further represents and warrants that: (a) the undersigned is a duly authorized representative of the Lessee, (b) the Account is a business account and is not an account used for personal or household purposes, and (c) if the Account is closed for any reason whatsoever, that Lessee will enter into a new Authorization Agreement for Direct Payments with respect to a replacement account within five (5) business days of the closing of the Account identified herein.

| Name of DFI | | | |
|---|---|---|---|
| DFI's Routing Number (9 digits only) | | | |
| Account number | | | |
| Branch SUGAR LAND | City SUGAR LAND | State TX | Zip 77478 |

This authorization will remain in full force and effect until Lessee provides HPFS with written notification of Lessee's termination of this Authorization Agreement for Direct Payments in such time and in such manner as to afford HPFS and DFI a reasonable opportunity to act upon such termination.

| Signature of Duly Authorized Representative of Lessee | [signature] | Date 2/6/18 |
|---|---|---|
| Phone Number 713-995-0123 | Federal Tax Identification Number 81-4703708 | |

**Please attach voided check to this authorization**

### Important Notification about ACH Debits

HPFS will automatically debit the Account for periodic applicable payments as set forth above. HPFS will invoice Lessee directly until the ACH debits are implemented as to this Lease Agreement. Lessee must remit all invoices received from HPFS by their respective due date. Lessee will continue to receive invoices from HPFS that will be labeled as "For Notification Purposes Only". We will automatically draft your account for the amount(s) described above once ACH debits are implemented.

Lessee (initial): ARA

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

## Annex 1 to the Schedule

Equipment Schedule Number HOUVR.5429862126.01 Forming Part of Lease # HOUVR.5429862126.01 between Lessor Hewlett-Packard Financial Services Company and Lessee Dongtai Investent Group LLC

| Part Number | Producer Name | Equipment Description | Unit Price | Qty | Extended Price |
|---|---|---|---|---|---|
| USB3FD016GB-AX | Axiom | 16GB USB 3.0 Flash Drive | $ 8.30 | 1 | $ 8.30 |
| A3L791-05-BLU-S | Belkin | 5ft Cat 5 UTP 10BaseT Patch Cable, Blue, Snagless | $ 1.98 | 3 | $ 5.94 |
| A3L791B50-YLW-S | Belkin | 50ft Cat 5 UTP 10BaseT Patch Cable, Yellow, Snagless | $ 9.30 | 1 | $ 9.30 |
| 02449 | Cables To Go | DB9 Male to DB25 Female Serial Adapter | $ 2.30 | 8 | $ 18.40 |
| 02459 | Cables To Go | Null Modem Adapter Cable, DB25 Male to DB25 Female | $ 2.00 | 8 | $ 16.00 |
| 02658 | Cables To Go | DB25 M/F Serial RS232 Extension Cable | $ 4.90 | 8 | $ 39.20 |
| 02774 | Cables To Go | DB25 F/F Mini Gender Changer | $ 2.00 | 8 | $ 16.00 |
| 03045 | Cables To Go | DB9 F/F Serial RS232 Null Modem Cable | $ 2.80 | 8 | $ 22.40 |
| 08075 | Cables To Go | DB9 M - F Null Modem Adapter | $ 2.20 | 8 | $ 17.60 |
| 631341-B21 | Compaq | BFR-PVC Keyboard/Mouse Kit, USB, US | $ 22.04 | 1 | $ 22.04 |
| 819766-B21 | Compaq | ProLiant DL20 G9 Rack Base, No CPU, 0 RAM, No HD | $ 2,735.49 | 1 | $ 2,735.49 |
| 30129-5 | Comtrol | RocketPort Express Octa DB25 Serial Adapter, 8 Ports | $ 335.00 | 1 | $ 335.00 |
| INSTALL | Generic | Installation Service | $ 445.00 | 1 | $ 445.00 |
| GCABLE | Generic | Cable | $ 7.50 | 1 | $ 7.50 |
| SURGE | Generic | Surge Protector | $ 12.00 | 7 | $ 84.00 |
| GCABLE | Generic | Cable | $ 4.00 | 8 | $ 32.00 |
| IMAGE | Generic | Custom Software Image Service | $ 22.78 | 1 | $ 22.78 |
| SUPPORT | Generic | Support Service | $ 120.00 | 1 | $ 120.00 |
| 1JX21UC | HP | ProDesk 600 G3 SFF, Core i5-7500 3.4GHz, 8GB RAM, 500GB HD, DVDRW, WLAN, BT | $ 514.00 | 7 | $ 3,598.00 |
| IHGPMO-002-M | HP | SCH Project Management Services Office | $ 1,300.00 | 1 | $ 1,300.00 |
| 1JS05A4 | HP | Z22n 21.5in Narrow Bezel IPS Display | $ 159.00 | 8 | $ 1,272.00 |
| N6N00AA | HP | Mounting Bracket | $ 25.00 | 7 | $ 175.00 |
| JG924A | HP | 1920-24G Web Managed Ethernet Switch, 24x1Gbps RJ45 & 4x1Gbps SFP Ports | $ 318.06 | 1 | $ 318.06 |
| J2Q99A | HP | R1500 G4 Uninterruptible Power System, Single Phase | $ 574.40 | 1 | $ 574.40 |
| H1AK7E | HP | 4Y FC 24x7 DL20 Gen9 Service | $ 396.49 | 1 | $ 396.49 |
| H7A66E | HP | Half Day PPS Project Specialist Support | $ 42.00 | 1 | $ 42.00 |
| H7A66E | HP | Half Day PPS Project Specialist Support | $ 604.30 | 1 | $ 604.30 |
| H7A66E | HP | Half Day PPS Project Specialist Support | $ 625.00 | 1 | $ 625.00 |
| H7A66E | HP | Half Day PPS Project Specialist Support | $ 911.55 | 1 | $ 911.55 |
| H9Y56E | HP | One Day PPS Program Manager Level 1 Support | $ 2,168.00 | 1 | $ 2,168.00 |
| U1PV8E | HP | 4 Year Priority Management PC 1K+ Seats Service | $ 10.00 | 7 | $ 70.00 |
| U3GG3E | HP | 4 Year 24x7 HP 19xx Switch Products Foundation Care Service | $ 44.40 | 1 | $ 44.40 |

Hewlett-Packard Financial Services Company
200 Connell Drive, Suite 5000
Berkeley Heights, NJ 07922

| | | | | | |
|---|---|---|---|---|---|
| 35S3272 | Lexmark | MS610dn Laser Printer, 256MB, 50ppm, 1200x1200dpi | $ 822.00 | 2 | $1,644.00 |
| 40G2251 | Lexmark | MD810dn Laser Printer, 512MB, 55ppm Mono, 1200x1200dpi | $ 906.00 | 1 | $ 906.00 |
| 980003-PTR-FULL | Micros | Opera Full Site License | $1,530.00 | 1 | $1,530.00 |
| 021-10559 | Microsoft | Office 2016 Standard License | $ 284.74 | 7 | $1,993.18 |
| 9EM-00264 | Microsoft | Windows Server 2016 Standard License | $ 573.12 | 1 | $ 573.12 |
| R18-05172 | Microsoft | Windows Server 2016 Client License, 1 Device | $ 19.00 | 7 | $ 133.00 |
| SSPS50USMS013YZZH | StorageCraft | ShadowProtect V5.0 Server Edition License w/3 Years Maintenance | $ 173.20 | 1 | $ 173.20 |
| SSPS50USPS0100ZZJ | StorageCraft | ShadowProtect V5.0 Server License | $ 312.10 | 1 | $ 312.10 |
| P156-000 | Tripp Lite | Compact/Slimline DB25 Gender Changer | $ 2.60 | 8 | $ 20.80 |

Total Amount $23,534.80

The described items constitute all the Equipment covered by the above referenced lease.

Lessee (initial): X _ARJ_

3/3/23
**Hewlett Packard Enterprise Financial Services**

**Dongtai Investent Group LLC (5429862126)**

| Contract # | Status | Commence Date | Maturity Date |
|---|---|---|---|
| HOUVR.5429862126.01P2 | TERMINATED | 06/25/2018 | 06/24/2022 |

| Payment Due Date | Invoice Control # | Invoice Type | Invoice Total Amt |
|---|---|---|---|
| | | | **17,629.11** |
| 03/25/2020 | 509146606 | Firm Rent | 566.35 |
| 04/25/2020 | 509199228 | Firm Rent | 566.35 |
| 05/17/2020 | 509287543 | Property Tax | 227.80 |
| 05/25/2020 | 509234186 | Firm Rent | 566.35 |
| 06/25/2020 | 509275187 | Firm Rent | 566.35 |
| 07/25/2020 | 509319537 | Firm Rent | 566.35 |
| 08/25/2020 | 509355606 | Firm Rent | 566.35 |
| 09/25/2020 | 509393901 | Firm Rent | 566.35 |
| 10/25/2020 | 509433450 | Firm Rent | 566.35 |
| 11/25/2020 | 509468642 | Firm Rent | 566.35 |
| 12/25/2020 | 509507504 | Firm Rent | 566.35 |
| 01/25/2021 | 509547227 | Firm Rent | 566.35 |
| 02/25/2021 | 509585114 | Firm Rent | 566.35 |
| 03/25/2021 | 509627540 | Firm Rent | 566.35 |
| 04/25/2021 | 509669524 | Firm Rent | 566.35 |
| 05/25/2021 | | Firm Rent | 566.35 |
| 06/25/2021 | | Firm Rent | 566.35 |
| 07/25/2021 | | Firm Rent | 566.35 |
| 08/25/2021 | | Firm Rent | 566.35 |
| 09/25/2021 | | Firm Rent | 566.35 |
| 10/25/2021 | | Firm Rent | 566.35 |
| 11/25/2021 | | Firm Rent | 566.35 |
| 12/25/2021 | | Firm Rent | 566.35 |
| 01/25/2022 | | Firm Rent | 566.35 |
| 02/25/2022 | | Firm Rent | 566.35 |
| 03/25/2022 | | Firm Rent | 566.35 |
| 04/25/2022 | | Firm Rent | 566.35 |
| 05/25/2022 | | Firm Rent | 566.35 |
| | | FMV | 2,109.86 |