**EXHIBIT F**

**Pamela Buenano**

| | |
|---|---|
| **From:** | Ron Sommers |
| **Sent:** | Wednesday, September 21, 2022 11:42 AM |
| **To:** | Iain Kennedy |
| **Subject:** | FW: Dongtai Investments |
| **Attachments:** | Plaintiffs' Original Petition - filed.pdf; 09.02.2022 Mtn for Leave to File Third Party Petition F.pdf; 09.02.2022 Ex 3 to Mtn for Leave to File Third Party Petition F.pdf; 09.02.2022 Ex 2 to Mtn for Leave to File Third Party Petition F.pdf; 09.02.2022 Ex 1 to Mtn for Leave to File Third Party Petition F.pdf |

**From:** Jed Williams <JWilliams@hfgtx.com>
**Sent:** Tuesday, September 20, 2022 9:44 AM
**To:** Ron Sommers <rsommers@nathansommers.com>
**Cc:** David Navarro <DNavarro@hfgtx.com>; Susie Reeves <SReeves@hfgtx.com>; Marcy Castanon <MarcyCastanon@hfgtx.com>
**Subject:** Dongtai Investments

Ron – thanks for the informative call today. Attached is a copy of our petition in our case and Defendants' proposed third party petition against Dongtai. The contract under which the indemnity claim arose is Exhibit 1 to that petition, attached.

The attorney for the defendant is:

      Matthew J. Massali
      The Mussalli Law Firm
      2441 High Timbers, Suite 220
      The Woodlands, Texas 77380

Below is a link to Mr. Udayan's obituary. Apparently, he was in an automobile accident in 2018 that left his paralyzed from the chest down. It seems pretty remarkable that he continued to operate the hotel and negotiate its eventual sale.

https://www.dignitymemorial.com/obituaries/houston-tx/michael-udayan-10555757

Thanks again and best of luck with your difficult assignment.

**David Jed Williams**
**Hornberger Fuller Garza & Cohen Incorporated**
The Quarry Heights Building | 7373 Broadway | Suite 300 | San Antonio, TX 78209 |
Main: 210.271.1700 | Direct: 210.271.1731 | Mobile: 210.287.7951
jwilliams@hfgtx.com | www.hfgtx.com |

**Pamela Buenano**

| | |
|---|---|
| **From:** | Matt Mussalli <matt@mussallilaw.com> |
| **Sent:** | Wednesday, October 19, 2022 2:55 PM |
| **To:** | Ron Sommers |
| **Cc:** | Iain Kennedy |
| **Subject:** | FW: Hui |
| **Attachments:** | ClientStatement-3231698702.pdf |


Ron, per your request and further the claim previously sent to you by email on this matter, attached is a summary of all invoices through September 30.  Our clients. are current in all payment obligations and have actually paid all amounts billed; however, as you know, we tried the case early this month and incurred a significant amount of fees both in trial prep and trial, and to a much lesser extent, in some post-trial matters.  On behalf of our clients, we are seeking indemnity for all attorney's fees and expenses incurred.  Therefore, we will be supplementing this email with our October invoices for services rendered during the month of October.

The share file link below will take you to each invoice.  Please note that these are unredacted and as we did not have a permissible claim for recovery of attorney's fees in the lawsuit, they were neither requested nor produced.   Although the relevant indemnity clause is not limited to only "reasonable" attorney's fees, I hope that upon your review, it is readily apparent that the tasks performed were appropriate and hourly rates and fees were reasonable.

We have not yet received a decision from the court yet but will keep you posted, and let you know if we elect to file suit in state court.  If you have any questions or are in a position to sign a) either a tolling agreement or b) another agreement that our clients' claim has been received, is timely and Dongtai Investments Group, LLC will not be asserting a SOL defense, then we would be pleased to draft same and defer filing suit, to the extent that might even be necessary.

Thanks.


Matt

The Mussalli Law Firm
2441 High Timbers Drive, Suite 220
The Woodlands, TX 77380
(281) 651-5577
(832) 218-1171 (Fax)
Matt@MussalliLaw.com
www.MussalliLaw.com



## COVID-19 IMPACT

In response to the CDC guidelines and local government orders, The Mussalli Law Firm has implemented changes to our existing in-office work schedules and staffing protocols for the health, safety and welfare of our valued team members and clients and to do our part in stopping the spread of COVID-19.  We remain committed to serving our clients' needs, including as may be necessary on a time-sensitive basis.  We are closely monitoring all pending litigation matters and keeping in frequent contact with court staff to ensure proper flow of cases and noting any scheduling changes.  Although we have ceased all in-office client meetings, we have made appropriate technology adjustments to continue to meaningfully communicate remotely, but even those systems have proven to be overburdened at times, by the sheer volume of users.  In the event you do not receive a timely reply to any communication, kindly email admin@mussallilaw.com and include "URGENT" in the subject line and we will expedite any necessary action on our part.

1

We appreciate your patience while we work together to prudently manage the existing circumstances.



This Message and any attachments are sent from a law firm and may contain information that is confidential and protected from disclosure by privilege.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving this communication or any portion hereof.  Please permanently delete the message without printing, copying, forwarding or saving this communication and notify the author immediately by telephone at the number above.  Thank you.

---

**From:** Becky Cohn <becky@mussallilaw.com>
**Date:** Wednesday, October 19, 2022 at 3:00 PM
**To:** Matt Mussalli <matt@mussallilaw.com>
**Subject:** Hui

https://mussallilaw.sharefile.com/d-s45a4bb9aa10a480aaf0b08c23d2ee6da


*Becky Cohn*
**Office Manager**
**The Mussalli Law Firm**
**www.mussallilaw.com**
**2441 High Timbers Drive, Suite 220**
**The Woodlands, Texas 77380**
**(281) 651-5577 (voice)**
**(832) 218-1171 (fax)**
**Send a file securely to our firm**

***Please note: we are moving.  Effective November 1, 2022, our office will be at 24 Waterway, Suite 830, The Woodlands, Texas 77380.***

This Message and any attachments are sent from a law firm and may contain information that is confidential and protected from disclosure by privilege.  If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving this communication or any portion hereof.  Please permanently delete the message without printing, copying, forwarding or saving this communication and notify the author immediately by telephone at the number above.  Thank you.


## THE
# MUSSALLI
## LAW FIRM

2441 HIGH TIMBERS DRIVE, SUITE 220
THE WOODLANDS, TEXAS 77380

October 29, 2018

*VIA EMAIL (sgovind@innvestment.net)*

Mr. Peter Hui
Hospitality Unlimited Investments, Inc.
17785 Center Court Drive, Suite 720
Cerritos, CA 90703

> Re: ***Defense of Cause No. 2018-69123 pending in the 334th Judicial District Court, Harris County, Texas***

Dear Mr. Hui:

It was a pleasure discussing this matter with you. As we have cleared all conflict of interest searches, The Mussalli Law Firm (the "Firm"), is pleased to have the opportunity to represent and defend the interests of all of the following named Defendants in the above referenced lawsuit: Peter Hui and Hospitality Unlimited Investments, Inc., effective as of October 26, 2018. We will initially investigate the proper forum based on the venue and jurisdictional considerations addressed, and if appropriate, remove the case to federal court or a more appropriate county after conducting our research and analysis. Thereafter, we will request that all parties improperly named be dismissed from the case and defend the case on the merits.

On this matter, the Firm will charge for its time by the hour in increments of 6 minutes (one-tenth of an hour). My currently hourly rate is $495.00, however, the reduced hourly rate for my time on this matter shall be $450.00 per hour. The hourly rate for Associates in our practice ranges from $250.00 to $345.00 per hour. Paralegal functions by a non-attorney shall be charged at the rate of $125.00 per hour. Out-of-pocket expenses will be billed to you and when necessary, you may be requested to pay expenses, if any, in advance or as same are incurred. In addition, you should expect that if depositions are conducted, deposition costs will be incurred in this case. In-house expenses are billed according to the usual pricing policy of the Firm and will be billed in addition to the hourly rates. An invoice is generated approximately every thirty (30) days or so and payment/replenishment is due on receipt. This engagement agreement shall apply to any work performed prior to its execution.

In the event that the matter is referred to mediation, a mediation fee payable to the mediator will be necessary. Mediator's fees are set by mediators alone but are generally expected to range between $1,400.00-1,700.00 for a full day session. In-house expenses are billed according to the usual pricing policy of the Firm and will be billed in addition to the hourly rates. An invoice is generated approximately every thirty (30) days or so and payment/replenishment is due on receipt. This engagement agreement shall apply to any work performed prior to its execution. We request an initial refundable retainer of $5,000.00. The retainer shall be held in the Firm's IOLTA (Interest on Lawyer's Trust Account) at Wells Fargo, from which interest is pooled to assist the indigent in receiving legal assistance. As a result, no interest shall be payable to you or the Firm from such funds. The Firm will debit fees and expenses for all tasks and transactions completed from the retainer at the end of each billing cycle and invoice you for any remaining

PH

Mr. Peter Hui
October 29, 2018
Page 2
--------

fees and retainer replenishment. We request that you maintain a trust account balance of no less than $2,500.00 for the duration of this matter. Although we expect your full cooperation, in the event you fail to timely pay all amounts due and owing to the Firm or a vendor related to these matters, the Firm shall be permitted to withdraw its representation of you.

You may terminate our representation at any time. Likewise, the Firm may withdraw after giving notice to you and, if applicable, obtaining relevant court approval. Generally, and by way of example only, a Firm will withdraw after a failure to timely pay amounts due, when a client fails to timely respond to inquiries or requests for information from the Firm, when a conflict of interest arises, or when the client has requested the Firm to engage in conduct which the Firm, in good faith, believes is not ethical.

While we are very proud of our commitment to excellence, please be advised that neither the Firm nor any agents or representatives of the Firm can warrant or guarantee the outcome of this matter. Please also be advised that the Firm does not provide tax advice. Thus, you are strongly encouraged to consult with a CPA or tax consultant for any potential tax consequences.

As you will note, our office number is on our letterhead. My cell phone number is 281-923-2515. Please do not hesitate to call with any questions, comments or concerns you may have at any time. In addition, you may email me at matt@mussallilaw.com. Once you have reviewed the terms of our engagement and Waiver of Potential Conflict, kindly sign on the signature line below to acknowledge the terms of our agreement and return this executed letter agreement to us.

## *WAIVER OF POTENTIAL CONFLICT*

You have each asked us to represent you individually, as well as the corporate entity jointly in connection with the above referenced matter (the "Claim"). We have reviewed the Claim and met with each of you and do not believe an actual conflict of interest exists. However, in light of the possibility of potential allegations by Plaintiff, we are exercising caution. Accordingly, our joint representation is subject to the following understandings.

Although your interests in this matter are generally consistent and parallel, it is recognized and understood that differences may exist or become evident during the course of our representation. Notwithstanding these possibilities, you have each determined that it is in your individual and mutual interests to have a single law firm represent you jointly in connection with the Claim and have selected the Firm. Potential conflicts of interest may arise, including by way of example only and not limited to, claims made against either one of you, but not the other, or a settlement offer being made to one of you but not the other. An impermissible conflict may later exist or develop by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question.

Accordingly, effective the date of this Agreement, you are confirming that each of you requests that the Firm may represent all of you (including all entities named above) jointly in connection with the Claim. This will also confirm that each of you individually and if applicable, on behalf of the entities, have been notified of your right and instruction to obtain separate counsel to consider any potential conflict issues and this waiver, and each of you has agreed to waive any

PH

Mr. Peter Hui
October 29, 2018
Page 3
--------

conflict of interest arising out of this matter, and that each of you will not object to the below named attorneys' representation of each of you in the matter described herein.

It is further understood and agreed that there will be no secrets as between any of you and the Firm relating to this matter. Each and all of you have shared interests and may share confidential and privileged information without waiving their right to assert attorney-client privilege. Among jointly represented clients, neither privilege nor confidentiality (among the clients) exists. Essentially, communications between each of you and the Firm shall remain confidential and privileged, but neither of you nor any member of any of the entities named above may keep secret any communications from the other members.

**This also confirms that you have been encouraged to retain their own attorneys regarding the Claim, its impact and any potential additional Claims. Notwithstanding, each and all of you wish to proceed without obtaining separate counsel.**

ACKNOWLEDGEMENT AND CONSENT

Despite any potential or actual conflict of interest which may exist now or in the future, by signing below, Clients hereby consent to the above attorneys' simultaneous representation of us with respect to the Claim as described above. Our current evaluation of the matter has led us to believe that representing multiple parties will not materially affect either of the clients in this matter. Under the Rules of Professional Conduct, common representation of persons having similar interests is proper if the risk of adverse effect is minimal. If at any time, this situation should change, the Firm will promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

Very truly yours,

Matthew J. Mussalli
MJM:kmc

**Agreed and Approved:**

**Peter Hui, Individually**

Date _11/14 2018_

**Peter Hui, on behalf of Hospitality
Unlimited Investments, Inc.**

Date _11/14/2018_

Mr. Peter Hui
October 29, 2018
Page 4
--------

NOTICE TO CLIENTS: The State Bar of Texas investigates and prosecutes professional misconduct committed by Texas attorneys. Although not every complaint against or dispute with a lawyer involves professional misconduct, the State Bar Office of General Counsel will provide you with information about how to file a complaint. For more information, you can call a toll free number: (800) 932-1900.

**Hui: HOSPITALITY UNLIMITED INVESTMENTS, INC.**

| Invoice # | Date | Matter | Amount |
|---|---|---|---|
| 20142019 | 11/30/2018 | Intergroup Realty | $ 1,481.30 |
| 20152019 | 12/31/2018 | Intergroup Realty | $ 3,093.40 |
| 26382019 | 4/30/2019 | Intergroup Realty | $ 2,327.55 |
| 28112019 | 5/31/2019 | Intergroup Realty | $ 3,127.43 |
| 31322019 | 7/31/2019 | Intergroup Realty | $ 2,699.72 |
| 32042019 | 8/31/2019 | Intergroup Realty | $ 1,716.65 |
| 38122019 | 12/31/2019 | Intergroup Realty | $ 362.10 |
| 44142020 | 3/31/2020 | Intergroup Realty | $ 4,094.55 |
| 45322020 | 4/30/2020 | Intergroup Realty | $ 1,475.35 |
| 46662020 | 5/31/2020 | Intergroup Realty | $ 812.50 |
| 47312020 | 6/30/2020 | Intergroup Realty | $ 945.00 |
| 49292020 | 7/31/2020 | Intergroup Realty | $ 4,326.05 |
| 49772020 | 8/31/2020 | Intergroup Realty | $ 675.00 |
| 50922020 | 10/2/2020 | Intergroup Realty | $ 225.00 |
| 52102020 | 10/31/2020 | Intergroup Realty | $ 340.00 |
| 56302021 | 1/31/2021 | Intergroup Realty | $ 952.25 |
| 63512021 | 4/30/2021 | Intergroup Realty | $ 272.50 |
| 68192021 | 6/30/2021 | Intergroup Realty | $ 585.00 |
| 69122021 | 7/31/2021 | Intergroup Realty | $ 497.80 |
| 76332021 | 11/30/2021 | Intergroup Realty | $ 356.25 |
| 77792022 | 12/31/2021 | Intergroup Realty | $ 408.15 |
| 80322022 | 2/28/2022 | Intergroup Realty | $ 770.95 |
| 81842022 | 3/31/2022 | Intergroup Realty | $ 206.40 |
| 85482022 | 6/30/2022 | Intergroup Realty | $ 360.00 |
| 89522022 | 8/31/2022 | Intergroup Realty | $ 4,084.20 |
| 90582022 | 9/30/2022 | Intergroup Realty | $ 26,112.61 |
|  |  | **Total** | **$ 62,307.71** |

**The Mussalli Law Firm**
24 Waterway Avenue, Suite 830
The Woodlands, TX 77380
281-651-5577
EIN: 05-0611496



**Bill To:**

Hospitality Unlimited Investments, Inc.
Attn: Peter Hui
17785 Center Court Drive, Suite 720
Cerritos, CA 90703

*INVOICE*

| | |
|---|---|
| Invoice # | **91892022** |
| Invoice Date | Nov 07, 2022 |
| Due | Due Upon Receipt |
| Case/Matter | Intergroup Realty |

| Date | Description | Staff | Rate | Hours | Amount |
|------|-------------|-------|------|-------|--------|
| ****** | **Fees** (October 2022) | ***** | | | |
| Oct 01, 2022 | Exchange correspondence with MJM and RLC re: Settlement (No Charge) | *KDR* | $250.00 | 0.1 | No Charge ($25.00) |
| Oct 01, 2022 | Receive and review correspondence between MJM and clients (No Charge) | *KDR* | $250.00 | 0.1 | No Charge ($25.00) |
| Oct 01, 2022 | Review Plaintiffs' Response to Defendant's Trial Brief and exchange correspondence with MJM re: same | *KDR* | $250.00 | 0.3 | $75.00 |
| Oct 01, 2022 | Receive and review correspondence between MJM and Ms. Reeves (No Charge) | *KDR* | $250.00 | 0.1 | No Charge ($25.00) |
| Oct 01, 2022 | Exchange communications with Mr. Williams (Plaintiffs' counsel) | *MJM* | $450.00 | 0.2 | $90.00 |
| Oct 01, 2022 | Communication to Messrs. Hui and Govind (No Charge) | *MJM* | $450.00 | 0.1 | No Charge ($45.00) |
| Oct 01, 2022 | Legal research/analysis re: admissibility of lay opinions (further) in light of Plaintiffs' failure to designate experts and attempts to offer opinions re: standards in commercial real estate transactions and related brokerage fee issues | *MJM* | $450.00 | 1.4 | $630.00 |
| Oct 01, 2022 | Continue Trial Preparation (Exhibit review and witness cross-examinations) and emails with counsel and Messrs. Govind and Hui | *MJM* | $450.00 | 5.0 | $2,250.00 |
| Oct 02, 2022 | Continue Trial Preparation (Opening Statement and rough outline of directs) | *MJM* | $450.00 | 2.3 | $1,035.00 |
| Oct 02, 2022 | Meeting with Messrs. Govind and Hui (including round trip travel) | *MJM* | $450.00 | 2.8 | $1,260.00 |
| Oct 03, 2022 | Exchange correspondence with MJM and SMS re: preadmitted Exhibit List | *KDR* | $250.00 | 0.1 | $25.00 |
| Oct 03, 2022 | Attention to preadmitted Exhibits | *KDR* | $250.00 | 0.4 | $100.00 |

| Oct 03, 2022 | Conferences with SMS re: same | KDR | $250.00 | 0.2 | $50.00 |
|---|---|---|---|---|---|
| Oct 03, 2022 | Exchange correspondence with MJM re: Trial preparation and plan of action | KDR | $250.00 | 0.1 | $25.00 |
| Oct 03, 2022 | Attention to Courtroom technology and necessary components and conferences with RLC re: same in connection with Exhibits | KDR | $250.00 | 1.0 | $250.00 |
| Oct 03, 2022 | Prepare for Trial, including review of Exhibits and Trial Binders | KDR | $250.00 | 0.6 | $150.00 |
| Oct 03, 2022 | Telephone conference with Ms. Miranda, Court Clerk, and email MJM re: same | KDR | $250.00 | 0.4 | $100.00 |
| Oct 03, 2022 | Attention to Exhibit Binder for Judge | KDR | $250.00 | 0.2 | $50.00 |
| Oct 03, 2022 | Review preadmitted Exhibits and draft correspondence to Ms. Miranda | KDR | $250.00 | 0.3 | $75.00 |
| Oct 03, 2022 | Receive and review correspondence from Ms. Miranda | KDR | $250.00 | 0.1 | $25.00 |
| Oct 03, 2022 | Continue Trial preparation (revise drafts of directs) | MJM | $450.00 | 1.2 | $540.00 |
| Oct 03, 2022 | Meeting with Messrs. Hui and Govind (including round trip travel to Houston) re: Trial preparation | MJM | $450.00 | 5.8 | $2,610.00 |
| Oct 03, 2022 | Continue Trial preparation for Day 1: Opening Statement, Legal arguments and Cross of Stryker | MJM | $450.00 | 3.1 | $1,395.00 |
| Oct 04, 2022 | Attend Trial (including round trip travel time) | KDR | $250.00 | 9.5 | $2,375.00 |
| Oct 04, 2022 | Commence rough draft of Findings of Fact and Conclusions of Law and forward to MJM | KDR | $250.00 | 0.3 | $75.00 |
| Oct 04, 2022 | Prepare for Trial (General) | KDR | $250.00 | 0.5 | $125.00 |
| Oct 04, 2022 | Attention to TrialPad and preparing Exhibits for ease of presentation | KDR | $250.00 | 0.7 | $175.00 |
| Oct 04, 2022 | Continue Trial preparation | MJM | $450.00 | 2.8 | $1,260.00 |
| Oct 04, 2022 | Appear for Trial: Day 1 - Opening Statements and Direct Exam of Plaintiff Gerrit Stryker (including round trip travel and meeting following court) and discussion with Ms. Xie (non-party witness during return travel) (Half day) | MJM | $450.00 | 7.4 | $3,330.00 |
| Oct 04, 2022 | Continue preparation for Trial: Day 2 - Cross Examination of Plaintiff Tandy Lofland | MJM | $450.00 | 4.6 | $2,070.00 |
| Oct 04, 2022 | Finalize Pre-Admitted Exhibit List | SMS | $125.00 | 0.2 | $25.00 |
| Oct 04, 2022 | Attend Trial (including round trip travel) (Half day) | KDR | $250.00 | 7.4 | $1,850.00 |

| Oct 05, 2022 | Attend trial (including round trip travel time and strategy conferences with Clients and MJM during all breaks) | KDR | $250.00 | 11.5 | $2,875.00 |
|---|---|---|---|---|---|
| Oct 05, 2022 | Exchange correspondence with MJM re: redaction of Exhibits to be submitted as "sensitive" or under seal | KDR | $250.00 | 0.1 | $25.00 |
| Oct 05, 2022 | Redact Exhibit 75 and email MJM re: same (employee wage records) | KDR | $250.00 | 0.3 | $75.00 |
| Oct 05, 2022 | Appear for Trial: Day 2 (including round trip travel) | MJM | $450.00 | 11.5 | $5,175.00 |
| Oct 05, 2022 | Prepare Plaintiffs' Exhibits 42-47 for Trial | SMS | $125.00 | 0.5 | $62.50 |
| Oct 06, 2022 | Prepare for Trial | KDR | $250.00 | 0.3 | $75.00 |
| Oct 06, 2022 | Attend Trial (including round trip travel time and conferences with Clients and MJM) | KDR | $250.00 | 11 | $2,750.00 |
| Oct 06, 2022 | Appear for Trial: Day 3 - (including round trip travel) | MJM | $450.00 | 11 | $4,950.00 |
| Oct 07, 2022 | Receive and review transcript of Stryker's testimony in response to Court's question re: "registered prospect" and receive and review correspondence between MJM and clients | KDR | $250.00 | 0.3 | $75.00 |
| Oct 07, 2022 | Meeting with KDR re: strategy and plan of action | MJM | $450.00 | 0.3 | $135.00 |
| Oct 07, 2022 | Misc. attention to organization (No Charge) | MJM | $450.00 | 0.5 | No Charge ($225.00) |
| Oct 07, 2022 | Receive and review of portion of Stryker testimony | MJM | $450.00 | 0.2 | $90.00 |
| Oct 07, 2022 | Meeting with MJM re: strategy and plan of action | KDR | $250.00 | 0.3 | $75.00 |
| Oct 08, 2022 | Receive and review correspondence from Ms. Reeves re: Trial Exhibits | KDR | $250.00 | 0.1 | $25.00 |
| Oct 08, 2022 | Continue Trial preparation (Direct Exam of Mr. Hui) and Motion for Judgment and review/edit PP slides | MJM | $450.00 | 4.5 | $2,025.00 |
| Oct 09, 2022 | Receive and review correspondence from Mr. Govind | KDR | $250.00 | 0.1 | $25.00 |
| Oct 09, 2022 | Exchange correspondence with MJM | KDR | $250.00 | 0.1 | $25.00 |
| Oct 09, 2022 | Attention to Motion for Judgment/Closing PowerPoint and email to MJM | KDR | $250.00 | 0.7 | $175.00 |
| Oct 09, 2022 | Review draft of Findings of Fact and Conclusions of Law and MJM's edits to Closing PowerPoint and exchange correspondence with MJM re: same | KDR | $250.00 | 0.3 | $75.00 |
| Oct 09, 2022 | Continue Trial preparation | MJM | $450.00 | 5.3 | $2,385.00 |
| Oct 09, 2022 | Telephone conference with Mr. Hui | MJM | $450.00 | 0.5 | $225.00 |

| Oct 09, 2022 | Telephone conference with Mr. Govind | *MJM* | $450.00 | 0.5 | $225.00 |
|---|---|---|---|---|---|
| Oct 10, 2022 | Attend trial (including round trip travel) | *KDR* | $250.00 | 13.5 | $3,375.00 |
| Oct 10, 2022 | Post-trial debriefing and dinner meeting with clients (No Charge) | *KDR* | $250.00 | 2.0 | No Charge ($500.00) |
| Oct 10, 2022 | Complete preparation for Final Day of Trial | *MJM* | $450.00 | 1.3 | $585.00 |
| Oct 10, 2022 | Appear for Trial (including round trip travel) | *MJM* | $450.00 | 13.5 | $6,075.00 |
| Oct 11, 2022 | Trial debrief and conferences with MJM re: Exhibits | *KDR* | $250.00 | 0.4 | $100.00 |
| Oct 11, 2022 | Review Exhibits re: providing Exhibit 106 | *MJM* | $450.00 | 0.3 | $135.00 |
| Oct 11, 2022 | Email to Court re: Exhibit 106 and non-pursuit of legal fees | *MJM* | $450.00 | 0.1 | $45.00 |
| Oct 11, 2022 | Email to Messrs. Hui and Govind (No Charge) | *MJM* | $450.00 | 0.1 | No Charge ($45.00) |
| Oct 11, 2022 | Revise correspondence to Judge Rogers regarding Attorney's Fees | *SMS* | $125.00 | 0.2 | $25.00 |
| Oct 11, 2022 | Finalize correspondence to Judge Rogers regarding Attorney's Fees | *SMS* | $125.00 | 0.1 | $12.50 |
| Oct 11, 2022 | Wind-up meeting with Messrs. Govind and Hui over dinner (No Charge) | *MJM* | $450.00 | 2.0 | No Charge ($900.00) |
| Oct 13, 2022 | Attention to research re: Court decision timeline | *KDR* | $250.00 | 0.5 | No Charge ($125.00) |
| Oct 13, 2022 | Edit/revise Findings of Fact and Conclusions of Law | *KDR* | $250.00 | 0.2 | $50.00 |
| Oct 13, 2022 | Telephone conference with Mr. Kennedy re: procedural status | *MJM* | $450.00 | 0.2 | $90.00 |
| Oct 14, 2022 | Draft communication to Mr. Sommers | *MJM* | $450.00 | 0.2 | $90.00 |
| Oct 14, 2022 | Commence draft of Original Petition re: Dongtai | *MJM* | $450.00 | 1.0 | $450.00 |
| Oct 14, 2022 | Receive email from Ms. Miranda of 334th Court re: proposed form of Judgment | *MJM* | $450.00 | 0.1 | $45.00 |
| Oct 14, 2022 | Continue draft/edit/revise form of Judgment and proposed Findings of Fact and Conclusions of Law | *MJM* | $450.00 | 1.8 | $810.00 |
| Oct 14, 2022 | Receive and review Plaintiff's Proposed Form of Judgment | *MJM* | $450.00 | 0.3 | $135.00 |
| Oct 15, 2022 | Receive and review correspondence from MJM to Court and review Findings of Fact and Conclusions of Law and Proposed Judgment | *KDR* | $250.00 | 0.2 | $50.00 |
| Oct 17, 2022 | Review status of court clerk's record Re: online activity and possible result of trial | *MJM* | $450.00 | 0.2 | $90.00 |
| Oct 17, 2022 | Telephone conference with Mr. Kennedy of Receiver re: process for claim submission | *MJM* | $450.00 | 0.2 | $90.00 |

| Oct 17, 2022 | Attention to re-filing proposed Judgment and Findings of Fact/Conclusions of Law (No Charge) | *MJM* | $450.00 | 0.2 | No Charge ($90.00) |
| Oct 19, 2022 | Attention to Plaintiffs' claim for Attorney's Fees | *MJM* | $450.00 | 1.5 | $675.00 |
| Oct 19, 2022 | Communication to Receiver, Mr. Sommers | *MJM* | $450.00 | 0.2 | $90.00 |
| Oct 21, 2022 | Continue work on draft of Original Petition re: Indemnity | *MJM* | $450.00 | 1.7 | $765.00 |
| Oct 21, 2022 | Complete draft of Original Petition against Dongtai | *MJM* | $450.00 | 0.5 | $225.00 |
| Oct 21, 2022 | Email to Messrs. Govind and Hui | *MJM* | $450.00 | 0.1 | $45.00 |
| Oct 21, 2022 | Finalize Original Petition against Dongtai | *SMS* | $125.00 | 0.3 | $37.50 |
| Oct 21, 2022 | Review of select materials in federal court case involving Dongtai | *MJM* | $450.00 | 1.8 | $810.00 |
| Oct 25, 2022 | Exchange communications with Receiver | *MJM* | $450.00 | 0.1 | $45.00 |
| Oct 26, 2022 | Draft communications to Messrs. Govind and Hui re: status and Dongtai and review online records to review whether any decision made in 334th District | *MJM* | $450.00 | 0.2 | $90.00 |
| | | | | | |
| ****** | **Expenses** | ****** | | | |
| Oct 02, 2022 | Round trip mileage to Houston re: meeting with Messrs. Hui and Govind (MJM) | | 58@$0.625 | Expense | $36.25 |
| Oct 02, 2022 | Dinner with clients (No Charge per MJM - $371.22) | | $371.22 | Expense | No Charge |
| Oct 03, 2022 | Round trip mileage to Houston re: meeting with Messrs. Hui and Govind | | 58@$0.625 | Expense | $36.25 |
| Oct 04, 2022 | Round trip mileage to courthouse (KDR) | | 58@$0.625 | Expense | $36.25 |
| Oct 04, 2022 | Parking at courthouse | | $8.00 | Expense | $8.00 |
| Oct 04, 2022 | Tolls | | $5.00 | Expense | $5.00 |
| Oct 04, 2022 | Round trip mileage to courthouse (MJM) | | 58@$0.625 | Expense | $36.25 |
| Oct 04, 2022 | Secretary of State find fee re: China Real Estate North America | | $1.00 | Expense | $1.00 |
| Oct 05, 2022 | Round trip mileage to courthouse (KDR) | | 58@$0.625 | Expense | $36.25 |
| Oct 05, 2022 | Parking at courthouse | | $8.00 | Expense | $8.00 |
| Oct 05, 2022 | Tolls | | $2.00 | Expense | $2.00 |
| Oct 05, 2022 | Round trip mileage to courthouse (MJM) | | 58@$0.625 | Expense | $36.25 |
| Oct 05, 2022 | Dinner with clients (No Charge per MJM - $361.13) | | $361.13 | Expense | No Charge |

| Date | Description | Amount | Type | Total |
|---|---|---|---|---|
| Oct 05, 2022 | Parking at courthouse | $12.00 | Expense | $12.00 |
| Oct 06, 2022 | Round trip mileage to courthouse (KDR) | 58@$0.625 | Expense | $36.25 |
| Oct 06, 2022 | Parking at courthouse (KDR) | $8.00 | Expense | $8.00 |
| Oct 06, 2022 | Tolls | $2.00 | Expense | $2.00 |
| Oct 06, 2022 | Lunch during Trial | $35.00 | Expense | $35.00 |
| Oct 06, 2022 | Round trip mileage to courthouse (MJM) | 58@$0.625 | Expense | $36.25 |
| Oct 06, 2022 | Parking at courthouse (MJM) | $8.00 | Expense | $8.00 |
| Oct 07, 2022 | Parking at courthouse (MJM) | $12.00 | Expense | $12.00 |
| Oct 07, 2022 | Lunch during trial | $25.57 | Expense | $25.57 |
| Oct 10, 2022 | Lunch/snacks/water | $40.00 | Expense | $40.00 |
| Oct 10, 2022 | Round trip mileage to courthouse (MJM) | 58@$0.625 | Expense | $36.25 |
| Oct 10, 2022 | Dinner with clients (No Charge per MJM - $570.23) | $570.23 | Expense | No Charge |
| Oct 13, 2022 | Efiling fees re: Original Petition - Hospitality Unlimited Investments, Inc. v Dongtai Investments, LLC | $384.81 | Expense | $384.81 |
| Oct 31, 2022 | Westlaw - online legal research | $474.43 | Expense | $474.43 |
| Oct 31, 2022 | Copies | 116@$0.35 | Expense | $40.60 |

Your retainer balance prior to this invoice : $10,000.00/After payment from retainer : $0.00. Invoice total may include additional amount for replenishing the retainer.

| | |
|---|---|
| Total Fees | $58,602.50 |
| Total Expenses | $1,392.66 |
| Subtotal | $59,995.16 |
| Past Due Balance | $0.00 |
| **Total** | **$59,995.16** |
| To Be Paid From Trust Funds | -$10,000.00 |
| **Balance Due** | $49,995.16 |

### Timekeeper Summary

| Timekeeper | Hours | Fee Billed |
|---|---|---|
| MJM - Matt Mussalli [Partner] | 98.60 h | $43,065.00 |
| KDR - Kelsey Ratz [Associate] | 64.30 h | $15,375.00 |
| SMS - Samantha Sanchez [Paralegal] | 1.30 h | $162.50 |
| **Total** | 164.20 h | $58,602.50 |

10/17/2022 4:29 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 69298879
By: SIMONE MILLS
Filed: 10/17/2022 4:29 PM
Pgs-3
6

NO. 2018-69123

| | | |
|---|---|---|
| **GERRIT STRYKER AND** | § | **IN THE DISTRICT COURT OF** |
| **INTERGROUP REALTY, INC.,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **PETER HUI AND HOSPITALITY** | § | |
| **UNLIMITED INVESTMENTS, INC.,** | § | |
| *Defendants*. | § | **334TH JUDICIAL DISTRICT** |

## FINAL TAKE NOTHING JUDGMENT

On October 4, 2022, this case was called to trial, with all issues submitted to the Court for determination. Gerrit Stryker and Intergroup Realty, Inc. appeared in person and through their attorneys. Defendants, Peter Hui and Hospitality Unlimited Investments, Inc. appeared in person and their attorneys. After considering the pleadings, the Court's file, the competent evidence presented, and the law and arguments of counsel, the Court rules as follows:

At the conclusion of Plaintiff's case-in-chief, Defendants moved for judgment on the two causes of action pled by Defendants: breach of contract and *Quantum Meruit*. The Court found Defendants' Motion for Judgment to be meritorious as it relates the Plaintiffs' cause of action for *Quantum Meruit*, and granted the Motion for Judgment on this cause of action, but denied as to breach of contract.

The Court finds that Plaintiffs failed to satisfy conditions precedent to their recovery under the Cooperating Brokerage Agreement. Therefore, Defendants did not breach the Cooperating Brokerage Agreement. **IT IS THEREFORE, ORDERED THAT**:

1

1. Plaintiffs shall take nothing by way of this suit.

2. All costs of court shall be taxed against the party which incurred them.

3. This is a Final Judgment disposing of all claims against and among all parties.

Signed:
11/2/2022
4:12 PM

_____
Date

THE HONORABLE DAWN D. ROGERS
District Judge, 334th District Court

2

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Samantha Sanchez on behalf of Matthew Mussalli
Bar No. 24005220
samantha@mussallilaw.com
Envelope ID: 69298879
Status as of 10/18/2022 2:19 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David WNavarro | | dnavarro@hfgtx.com | 10/17/2022 4:29:58 PM | SENT |
| Susie Reeves | | sreeves@hfgtx.com | 10/17/2022 4:29:58 PM | SENT |
| Marcy Castanon | | mcastanon@hfgtx.com | 10/17/2022 4:29:58 PM | SENT |
| David JedWilliams | | JWilliams@hfgtx.com | 10/17/2022 4:29:58 PM | SENT |
| Matthew J.Mussalli | | matt@mussallilaw.com | 10/17/2022 4:29:58 PM | SENT |

10/21/2022 2:51 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 69462281
By: Iris Collins
Filed: 10/21/2022 2:51 PM

CAUSE NO. _____

| | | |
|---|---|---|
| PETER HUI AND HOSPITALITY | § | |
| UNLIMITED INVESTMENTS, INC. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| RONALD SOMMERS, AS COURT APPOINTED | § | |
| RECEIVER FOR DONGTAI INVESTMENT | § | |
| GROUP, LLC, DONGTAI INVESTMENT | § | |
| GROUP, LLC, AND NINGBO XU, | § | |
| IN HIS REPRESENTATIVE CAPACITY | § | |
| AS AN AUTHORIZED SIGNATORY, | § | |
| MEMBER AND MANAGER OF | § | |
| DONGTAI INVESTMENTS, LLC | § | |
| | § | |
| | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |
| | § | |
| | § | |

---

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs, Peter Hui and Hospitality Unlimited Investments, Inc. ("Plaintiffs"), and file this Original Petition against Ronald Sommers, as Court Appointed Receiver for Dongtai Investments, LLC, Dongtai Investments, LLC, and Ningbu Xu, in his representative capacity as an Authorized Signatory, Member and Manager of Dongtai Investments, LLC and would respectfully show as follows:

### INTRODUCTION

1. This lawsuit seeks contractual indemnity from Defendants, arising out of a commercial real estate transaction. More specifically, in 2017, and in connection with their purchase of a Crowne Plaza Suites Hotel located at 9090 Southwest Fwy., Houston, Texas 77074

1

(the "Hotel"), Defendants Dongtai Investment Group, LLC ("Dongtai") and Ningbu Xu ("Xu")
entered into a written purchase agreement to acquire the Hotel ("Agreement").   In the Agreement,
Dongtai and Xu agreed to "fully and completely" indemnify Seller and Seller's agent from any
and all commission disputes by any parties including any alleged buyer's agent.  In the Agreement,
Defendants also represented to Plaintiffs that an individual named "Joanna Xie" was the only
broker working for the Buyer when the transaction closed.  Plaintiffs relied on such representations
and caused or otherwise permitted Joanna Xie to receive a broker's fee.  The Agreement was signed
in January 2018, closed thereafter and title was conveyed in accordance with the terms of the
Agreement.

2.      Several months after the sale, in October 2018, Plaintiffs were named as Defendants
in a lawsuit filed in Harris County District Court by Gerrit Stryker ("Stryker") and Intergroup
Realty, Inc., ("Intergroup"), both of whom claimed therein that they were entitled to receive a
broker's fee in connection with the ultimate purchase by Defendants, even though to Plaintiffs'
knowledge and belief, they did not perform in accordance with the terms of a Cooperating Broker
Agreement (the "Broker Agreement") to which they were parties in order to have entitlement to
any such fee.  The factual allegations, complaints and causes of action asserted by Stryker and
Intergroup are found in the pleadings filed by those parties in Cause No. 2018-69123, pending in
the 334th District Court, Harris County, Texas.

3.      Plaintiffs appeared in the lawsuit, denied all claims of liability and asserted certain
factual and legal defenses.   The lawsuit progressed very slowly, with Stryker and Intergroup
exerting minimal efforts and expense to pursue the case, while initial efforts made to locate
Dongtai and Xu and elicit their cooperation failed.  Through their investigation, Plaintiffs learned
Dongtai had become a defunct entity in Texas for which the State Comptroller filed a Tax

Forfeiture with the Texas Secretary of State in or around August 20, 2021.  Plaintiffs later learned

that in fact, Dongtai's corporate status was reinstated and more recently, in connection with a

separate lawsuit filed by one or more owners or investors of Dongtai in the Southern District of

Texas, Houston Division styled *In re: Dongtai Investment Group, LLC* under Case No. 4:19-CV-

01848, Ronald J. Sommers was appointed as Receiver of Dongtai.  Accordingly, Mr. Sommers is

named herein strictly in such capacity.

4.      For all of the above reasons and as further described below, Plaintiffs file this

Original Petition for all relief sought herein.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this claim as Defendants have their principal

place of business in Texas and/or for jurisdictional purposes, are residents of Texas.

6.      Venue is proper in this Court because the Receiver is domiciled in Harris County,

the Defendants' principal place of business and the county of Defendants' residence is Harris

County, Texas.

## PARTIES AND SERVICE

7.      Defendant, Dongtai Investment Group, LLC, has its principal place of business at

2800 Post Oak Blvd., Houston, Harris County, Texas 77056.  Its Registered Agent as appearing

in the records of the Texas Secretary of State is Ningbo Xu, residing at 1810 Alcorn Bayo Dr.,

Sugar Land, Texas 77479.  The Manager of Dongtai Inevestment Group, LLC is also Ningbo

Xu, who resides at 1810 Alcorn Bayou Dr., Sugar Land, Texas 77479. Notwithstanding the

foregoing, upon information and belief, all of Xu's management and ownership roles with and

for Dongtai have ceased to exist and the Receiver is now empowered to serve in such capacities,

subject to permission from the Court, as may be applicable.

3

8.      Plaintiffs request that citation be issued for Dongtai Investment Group, LLC, Ronald Sommers and Ningbu Xu.

## BREACH OF CONTRACT-DUTY TO INDEMNIFY

9.       Plaintiffs reallege and incorporate by reference all factual recitations contained above as if set forth fully herein.  In the Agreement, "Buyer" is defined as both Dongtai Investments, LLC and Ningbo Xu.  Plaintiffs were sued by a broker for a broker's fee related to the Hotel, and in particular, the sale of the Hotel.  In the Lawsuit, Stryker and Intergroup allege that they were responsible for the introduction of Ningbu Xu to Seller and further allege that he was a registered prospect, even though to Plaintiffs' knowledge, no such registration ever occurred.  The Lawsuit was tried to the Bench in October 2022.  To date, the Court has not rendered judgment; however regardless of the outcome, in Plaintiffs' defense of the Lawsuit, they were caused to incur significant legal expense exceeding $100,000.00, an amount within this Court's jurisdictional limits.  Demand for indemnity has been made because under the Agreement, Defendants owe Plaintiffs full and compete indemnity for the claims made by Stryker and Intergroup in the Lawsuit, not only for legal fees but any damages which the Court may find are warranted in that Lawsuit, as well as expenses or other costs incurred therein. Defendants have breached such duties by failing to honor their contractual indemnity obligations and such breach has caused economic harm to Plaintiffs.  Moreover, regarding the attorney's fees and costs of court that Plaintiffs are now incurring in the filing and prosecution of this cause due to Defendants breach and failure to unconditionally accept the indemnity obligations, Plaintiffs seek full indemnity for same from Defendants.  In summary, Plaintiffs seek a) indemnity and recovery of monetary damages for all legal fees, costs of court and expenses incurred in defending the Lawsuit; b) to the extent Stryker and Intergroup are successful in obtaining a

4

judgment against either or both Defendants in the Lawsuit, Defendants seek full indemnity regarding any such amounts awarded, if any; and c) attorney's fees incurred in this cause pursuant to the terms of the Agreement and as permitted by the Texas Civil Practice and Remedies Code.

**PRAYER**

WHEREFORE PREMISES CONSIDERED, Plaintiffs, Peter Hui and Hospitality Unlimited Investments, Inc. respectfully pray that upon hearing, they have and recover judgment against Defendants, Ronald Sommers, as Court Appointed Receiver for Dongtai Investment Group, LLC, Dongtai Investment Group, LLC, and Ningbu Xu, in his representative capacity as an Authorized Signatory, Member and Manager of Dongtai Investment Group, LLC for all damages and relief of any nature of which they show themselves justly entitled, at law or in equity, together with all damages, attorney's fees, costs of court and both pre-and post-judgment interest as permitted by law.

Respectfully submitted,

**THE MUSSALLI LAW FIRM**

By: _Matth J Mussalli_

Matthew J. Mussalli
State Bar No. 24005220
matt@mussallilaw.com
Kelsey D. Ratz
State Bar. No.24092333
kelsey@mussalilaw.com
2441 High Timbers Drive, Ste 220
The Woodlands, TX 77380
(281) 651-5577
(832) 218-1171
**Attorney for Plaintiffs**

# EXHIBIT 1

## COMMERCIAL CONTRACT - IMPROVED PROPERTY

This *Commercial Contract for Improved Property* ("Agreement") is entered into as of JANUARY 6th, 2017 by and between Dongtai Investment Group, LLC and/or Mr. Ningbo Xu (collectively, "**Buyer**") and Anaheim Coachman Inn LLC, Core Mesa LLC, H.I. Arizona LLC, Shinning City LLC and Homer Chan ("**Seller**") in connection with the purchase and sale of that certain hotel located at Crowne Plaza Suites, 9090 Southwest Freeway, Houston, TX 77074 ("**Property**").

Seller agrees to sell the Property, and Buyer agrees to purchase the Property, on the terms and conditions set forth in this Agreement:

1. **PURCHASE PRICE:** At or before closing, Buyer will pay the following sales price for the Property: **Fourteen Million Five Hundred Thousand Dollars** ($14,500,000) ("Purchase Price"). Buyer's Deposit (as defined below) shall be delivered to Escrow Agent, identified below, upon Seller's execution of this Agreement in accordance with the terms of this Agreement.  The balance of the purchase price shall be payable at close of escrow pursuant to the terms stated below.

2. **EARNEST MONEY:** not later than six **(6) days** after the execution of this agreement, Buyer shall deposit **Five Hundred Thousand Dollars** ($500,000) as earnest money ("Buyer's Deposit") at American Title Company of Houston, Attn: Shirley Chiu (Escrow Agent), 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 ("Title Company") by wire transfer, which shall be credited toward the Purchase Price at close of escrow. Buyer and Seller shall ensure that a fully executed copy of this Agreement is delivered to Escrow Agent. If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies pursuant to this agreement or as allows by law. By providing written notice to Buy before Buyer deposits the earnest money. If Buyer has not timely terminated this contract during the Due Diligence Period and/or Termination Period provided in this contract and such Termination Period has expired, Buyer's earnest money deposit and all other Buyer deposits shall become non-refundable and the Earnest Money shall immediately be released to Seller upon Title Company's receipt of Seller's demand for the release of the funds to Seller. This contract shall serve as Buyer's instruction to the Title Company to release the funds to Seller once the termination period has expired and Buyer has not timely submitted termination in writing to the Title Company.

3. **CLOSING:** The date of the closing of the sale ("Closing Date") will be anytime on or before **Sixty ( 60 ) days** after the "Effective Date" (herein defined as the opening of escrow and the buyer's deposit of earnest money) . Escrow fees shall be split equally between Buyer and Seller. Documentary transfer taxes shall be paid by Seller. All other closing costs shall be paid in accordance with the custom in the county in which the Property is located as advised and provided for by the title company.

A. Buyer shall have one option to extend the Closing Date. Buyer shall have a **Thirty ( 30 )** day extension by delivering written notice of Buyer's exercise of Buyer's extension option to Seller and by delivering of an additional non-refundable **One Hundred Thousand Dollars** ($100,000) deposit ("Buyer's Option Deposit") to Escrow Agent at American Title Company of Houston, 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 for deposit and prior to 5:00 pm CST on the Closing Date.  Buyer's Option Deposit shall be immediately released by Escrow Agent to Seller upon Buyer's election to extend the Closing Date and shall be credited toward the Purchase Price at the close of escrow. Buyer shall have a second option to extend the closing date for 20 days without additional deposits PROVIDED Buyer's earnest money and all additional deposits have been released by escrow to seller.

B. At closing, Buyer will:
    (1)  pay the sales price in good funds acceptable to the escrow agent;
    (2)  deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
    (3)  sign and send to each tenant in the Property a written statement that:
        (a) acknowledges Buyer has received and is responsible for the tenant's

Purchase and Sale Agreement      Sellers' Initials *SGPP PH*      Buyers' Initials

Concerning: 9090 Southwest Freeway, Houston, TX 77074

    security deposit; and
    (b) specifies the exact dollar amount of the security deposit;
(4)    sign an assumption of all leases then in effect; and
(5)    execute and delivery any notices, statements, certificates, or other
    documents required by this contract or law necessary to close the sale.

C.  Unless the parties agree otherwise, all documents should be completed and provided upon closing. Title company shall advise and forward a list of required closing documents to the parties prior to closing.

## 4. TERMS

4.1 **DOWN PAYMENT:** In addition to the Buyer's Deposit, Buyer shall make an all-cash down payment of N/A    dollars ($    N/A    ) by    N/A    ("Down Payment Deposit").

4.2 **NEW LOAN:** Buyer agrees to use Buyer's reasonable efforts, at Buyer's expense, to obtain a new loan. Buyer shall submit a written application to obtain said loan to a bona fide lender within **fourteen ( 14 )** calendar days from the effective date and shall authorize said lender to confirm in writing to Seller that lender has received such application. If Buyer fails to notify Seller in writing that Buyer has removed its loan contingency within **forty ( 40 )** calendar days from the effective date, the transaction contemplated by this Agreement shall continue and shall be consummated as set forth in this Agreement. If Buyer notified Seller in writing within such **forty ( 40 )** calendar days that it is unable to remove the loan contingency, this Agreement shall be null and void, and the entire Buyer's Deposit and any Additional Deposit shall be returned to Buyer.

5. **PRORATIONS:** Rentals, revenues, and other income, if any, from the Property and real property taxes and operating expenses, if any, affecting the Property shall be prorated as of 12:01A.M. of the Closing Date. At the close of escrow Buyer will receive a credit and Seller a debit in the amount of all "Advanced Booking Deposits" paid to Seller and not earned with respect to the period prior to the close of escrow. Other general provisions regarding prorations are as follows:

5.1 Seller shall terminate all employees at as of the Closing Date after check out and the rooms are cleaned. All benefits accrued by employees, including sick leave and vacation pay in connection with their employment, shall be responsibility of Seller.

5.2 Seller shall be responsible for all accounts payable, personal property, transient occupancy and payroll taxes as well as collection of accounts receivable accrued prior to the Closing Date.

5.3 Guest ledger receivables (e.g., all amounts, including, without limitation, room charges, food and beverage charges, telephone, in-room movies and any and all incidental charges accrued to the accounts of guests occupying rooms in the Hotel as of the Cutoff Time) shall be prorated as of the Cutoff Time between Buyer and Seller. Seller shall receive a credit for all guest ledger receivables for all room nights up to and including the room night during which the Cutoff Time occurs and Buyers shall be entitled to the amounts of guest ledger receivables for the room nights after the Cutoff Time.

5.4 All city ledger accounts receivable (excluding guest ledger receivables described above) generated from the operation of the Hotel Prior to the Cutoff Time (the **"Pre-Closing City Ledger Accounts"**), shall be retained by seller and seller is responsible for collecting such "Pre-Closing City Ledger Accounts", and Buyer shall not pay for or give Seller a credit at the Close of Escrow for any such accounts receivable. Buyer will cooperate with seller post Closing and use best efforts to pass checks received to seller for accounts receivable related to prior Cutoff Time.

Purchase and Sale Agreement    Sellers' Initials _SG PP PH_    Buyers' Initials _MPR_

Concerning: 9090 Southwest Freeway, Houston, TX 77074

## 6. TITLE POLICY and SURVEY:

A. Title Policy:

(1) Seller, at Seller's expense, will purchase a Standard Owner's Policy of Title (the title policy) issued by American Title Company of Houston, 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 (the "Title Company") in the amount of the sales price dated at or after closing, insuring Buyer against loss under the title policy, subject only to:
  (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and
  (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

(2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements: WILL NOT BE AMENDED OR DELETED FROM THE TITLE POLICY.

B. Survey: Within fourteen (14) days after the effective date: Seller shall furnish to Buyer a survey of the Property at Seller's expense and deliver a copy of the survey to the Buyer. The survey must be made in accordance with the: ALTA/ACSM Land Title Survey standards.

**7. PERSONAL PROPERTY:** Title to any personal property to be conveyed to Buyer in connection with the sale of the Property shall be conveyed to Buyer free and clear of all encumbrances (except for those previously approved by Buyer in writing). The price of these items shall be included in the purchase price for the Property, and Buyer agrees to accept all such personal property in "as is" condition. Buyer does require Seller to furnish a UCC search.

**8. DOCUMENT CONTINGENCIES:** Seller agrees to provide Buyer with copies of all items listed below within **Five ( 5 )** calendar days following the "Effective Date" of this Agreement.

  8.1 All rental agreements, leases, service contracts, insurance policies, latest tax bill(s).

  8.2 The operating statement of the Property for the **Thirty Six ( 36 )** calendar months immediately preceding the acceptance of the Purchase Agreement.

  8.3 A complete and current rent roll, including a schedule of all tenant deposit and fees.

  8.4 A written inventory of all items of Personal Property to be conveyed to Buyer on the Closing Date.

  8.5 All inspection reports including, but not limited to, reports conducted for health, fire, franchise-company and/or AAA inspections.

  8.6 All other items reasonably requested by Buyer in writing by a separate request for additional due diligence items, setting forth any other additional information requested by Buyer.

All Buyer's request for additional documents must be presented and acknowledged by seller within 2 days of the receipt of the documents 8.1-8.6.

Buyer shall have **Forty ( 40 )** calendar days ("Due Diligence Period" and/or "Termination Period") following Effective Date  to review and object in writing to any the foregoing items. If Buyer fails to object to these items within the specified time, Buyer shall be deemed to have accepted those items. Within the aforementioned **Forty ( 40 )** days ("Due Diligence Period") buyer may  conduct and examine the following:

  8.7 Inspect and approve the physical structure of the Property.

  8.8 Inspect and approve of all books and records of the Property.

  8.9 Evaluate the economic feasibility.

Purchase and Sale Agreement          Sellers' Initials _SG PP PH._          Buyers' Initials _NB__

3

Concerning: 9090 Southwest Freeway, Houston, TX 77074

8.10 Obtain Financing.

8.11 Approve of title report for the Property.

8.12 Inspect and approve to the extent they exist: all leases, service contracts, licenses and permits, zoning, governmental use restrictions or the like affecting the subject property.

8.13 Obtain Approval of IHG-Crowne Plaza license

If Buyer objects to any of the foregoing items 8.1 through 8.13 in writing and terminates this Agreement by delivering written notice to Seller prior to expiration of the Due Diligence Period / Termination Period, Buyer's Deposit, along with any Down Payment Deposit (if any), shall be returned, and Buyer and Seller shall have no further obligations hereunder. However, Buyer's failure to terminate the contract during the Due Diligence Period will result in Buyer forfeiting all earnest money to Seller; the earnest money will then become non-refundable and Title Company shall immediately release all earnest money and additional deposits to Seller immediately upon demand from Seller. This contract shall serve as Buyer's instruction to Title Company to perform the above if Buyers fails to terminate the contract during the Due Diligence Period and Seller provided Title Company with demand for release of the funds.

9. **PHYSICAL INSPECTION:** Buyer shall have until the end of the Due Diligence Period to inspect the physical condition of the Property, including, but not limited to interior inspection, soil conditions and the presence or absence of hazardous materials on or about the Property, and all other aspects of the Property to the satisfaction of Buyer. If Buyer fails to notify Seller of its objections to the physical condition of the Property, in writing, by the end of the Due Diligence Period, Buyer shall be deemed to have approved the physical condition of the Property. Notwithstanding any other provision of this Agreement to the contrary, if Buyer objects to the condition of the Property, Buyer may terminate this Agreement prior to the end of the Due Diligence Period, and Buyer's Deposit, along with any Down Payment Deposit, shall be returned to Buyer, and Buyer and Seller shall have no further obligations hereunder.

    (1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

    (2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspection, studies, or assessments.

    (3) Buyer must:

        (a) employ only trained and qualified inspectors and assessors;

        (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;

        (c) abide by any reasonable entry rules or requirements of Seller;

        (d) not interfere with existing operations or occupants of the Property; and

        (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

    (4) Except for those matters that arise from negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of actions, and expenses resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. Buyer's shall secure a policy of insurance to cover all activities to be conducted on the Property on Buyer's behalf prior to the close of escrow. This paragraph survives termination of this contract.

10. **ESCROW DEPOSIT:** Buyer's Deposit (along with any Down Payment Deposit) shall remain in escrow until the date of closing or as otherwise provided in this Commercial Contract for Improved Property. If Buyer has not timely terminated this contract during the Due Diligence Period and/or Termination Period provided in this contract and such Termination Period has expired, Buyer's earnest money deposit and all other Buyer deposits shall become

Purchase and Sale Agreement      Sellers' Initials _SG PP P.H_      Buyers' Initials _NRA_

Concerning: 9090 Southwest Freeway, Houston, TX 77074

non-refundable and the Earnest Money shall immediately be released to Seller upon Title Company's receipt of Seller's demand for the release of the funds to Seller. This contract shall serve as Buyer's instruction to the Title Company to release the funds to Seller once the termination period has expired and Buyer has not timely submitted termination in writing to the Title Company. If the Property is made unmarketable by Seller or by acts of God, war or terrorism, Buyer's Deposit, along with any Down Payment Deposit, shall be returned to Buyer if closing has not occurred and escrow shall be terminated without prejudice to the rights of Buyer, Seller, or Agent (as defined below).

11. **CONDITION OF PROPERTY:** IT IS UNDERSTOOD AND AGREED THAT THE PROPERTY IS BEING SOLD "AS IS", THAT BUYER HAS, OR WILL HAVE PRIOR TO THE CLOSING DATE, INSPECTED THE PROPERTY TO ITS SATISFACTION AND THAT EXCEPT AS MAY BE EXPRESSLY PROVIDED IN THIS AGREEMENT NEITHER SELLER NOR ITS AGENT, REPRESENTATIVE, EMPLOYEES, INCLUDING WITHOUT LIMITATION, THE AGENT, MAKES ANY REPRESENTATION OR WARRANTY AS TO THE PHYSICAL CONDITION, HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, VALUE OF THE PROPERTY OR ITS SUITABILITY FOR BUYER'S INTENDED USE.

BUYER WILL COMPLETE, PRIOR TO THE END OF DUE-DILIGENCE PERIOD, AN ON-SITE INSPECTION OF THE PROPERTY, INCLUDING ALL IMPROVEMENTS AND PERSONAL PROPERTY, THE BOOKS AND RECORDS RELATING TO THE OPERATION OF THE PROPERTY, AND/OR WILL OTHERWISE INVESTIGATE THE PROPERTY, ITS OPERATIONS, ZONING, TITLE MATTERS, ENVIRONMENTAL CONDITION AND THE LIKE TO BUYER'S SATISFACTION. EXCEPT AS SPECIFICALLY PROVIDED TO THE CONTRARY IN THIS AGREEMENT, SELLER AND ITS AGENTS, REPRESENTATIVES, AND EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT, ARE FULLY AND COMPLETELY RELEASED FROM ALL RESPONSIBILITY AND LIABILITY REGARDING THE CONDITION, FITNESS, SUITABILITY, VALUATION AND/OR UTILITY OF THE PROPERTY. BUYER EXPRESSLY ACKNOWLEDGES THAT BUYER IS BUYING THE PROPERTY "AS-IS", WHERE IS, WITH ALL FAULTS,  AND BUYER HAS NOT RELIED ON ANY WARRANTIES, PROMISES, AND ALL ASPECTS THEREOF. BUYER ACKNOWLEDGES THAT THE LEASING INFORMATION, FEASIBILITY, MARKETING REPORTS, OR OTHER INFORMATION OF ANY TYPE INCLUDING ANY ENVIRONMENTAL REPORTS THAT BUYER HAS RECEIVED OR MAY RECEIVE FROM SELLER OR SELLER'S AGENTS, REPRESENTATIVES, EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT,  IS FURNISHED ON THE EXPRESS CONDITION THAT BUYER SHALL OR WOULD MAKE AN INDEPENDENT VERIFICATION OF THE ACCURACY OF ANY OR ALL SUCH INFORMATION, ALL SUCH INFORMATION BEING FURNISHED WITHOUT ANY WARRANTY WHATSOEVER (EXPRESS OR IMPLIED) AS TO THEIR ACCURACY OR THEIR COMPLETENESS. BUYER AGREES THAT IT WILL NOT ATTEMPT TO ASSERT ANY LIABILITY AGAINST SELLER, OR SELLER'S AGENTS, REPRESENTATIVES, EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT, AND BUYER AGREES TO INDEMNIFY AND HOLD SELLER OR SELLER'S AGENT, REPRESENTATIVE, EMPLOYEES, INCLUDING WITHOUT LIMITATION, THE AGENT FREE OF AND HARMLESS FROM ANY AND ALL SUCH CLAIMS OF LIABILITY. THIS INDEMNIFY SHALL SURVIVE THE CLOSING DATE OR THE TERMINATION OF THIS AGREEMENT.

Seller's Initials _SG_   Seller's Initials _PP_   Seller's Initials _PA_   Seller's Initials _____   Seller's Initials _____

Buyer's Initials _NR_  Buyer's Initials _____   Buyer's Initials _____   Buyer's Initials _____   Buyer's Initials _____

12. **RISK OF LOSS:** Risk of loss to the Property shall be borne by Buyer upon closing In the event that the improvements on the Property are destroyed or materially damaged between the acceptance of this Agreement and the date title is conveyed to Buyer, Seller shall make such necessary repairs to restore the condition of the Property to the same condition as was approved by Buyer, reasonable wear and tear excepted, until title is conveyed to Buyer, and Buyer shall have no option to terminate this Agreement. Seller shall assign all insurance proceeds, plus Seller's responsibility to pay any deductible amount, to Buyer upon closing, from which time Buyer shall continue to make all necessary repairs to restore the Property to the condition desired by Buyer. Upon Buyer's physical inspection and approval of the Property, Seller shall maintain the Property through close of escrow in the same condition and repair as approved, reasonable wear and tear excepted. This provision is subject to any other option by Buyer to terminate this Agreement.

Purchase and Sale Agreement          Sellers' Initials _SG PP PA_          Buyers' Initials _NR_

5

Concerning: 9090 Southwest Freeway, Houston, TX 77074

13. **POSSESSION:** Possession of the Property shall be delivered to Buyer on the Closing Date. All keys, leases, rental agreements, ongoing vendor contracts, shall be delivered to Buyer at close of escrow.

14. **LIQUIDATED DAMAGES:** BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO FIX ACTUAL DAMAGES IN THE EVENT OF A DEFAULT BY BUYER, THAT THE AMOUNT OF BUYER'S EARNEST MONEY DEPOSIT AND ADDITIONAL DEPOSITS INCLUDING DEPOSITS FOR EXTENSION PERIOD IS THE PARTIES' REASONABLE ESTIMATE OF SELLER'S DAMAGES IN THE EVENT OF BUYER'S DEFAULT, AND UPON THE BUYER'S DEFAULT IN ITS PURCHASE OBLIGATIONS UNDER THIS AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY AND SHALL RETAIN BUYER'S DEPOSIT (AS SAME MAY BE INCREASED BY THE TERMS HEREOF) AS LIQUIDATED DAMAGES, WHICH SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY IN LAW OR AT EQUITY FOR BUYER'S DEFAULT.

Seller's Initials ___SG___ Seller's Initials ___PP___ Seller's Initials _____ Seller's Initials _____ Seller's Initials _____

Buyer's Initials ___MZA___ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

15. **SELLER EXCHANGE:** Buyer agrees to cooperate should Seller elect to sell the Property as part of a like-kind exchange under IRC Section 1031. Seller's contemplated exchange shall not impose upon Buyer any additional liability or financial obligation, and Seller agrees to hold Buyer harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Seller's ability to acquire a suitable exchange property or effectuate an exchange. In the event any exchange contemplated by Seller should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

16. **BUYER EXCHANGE:** Seller agrees to cooperate should Buyer elect to purchase the Property as part of a like-kind exchange under IRC Section 1031. Buyer's contemplated exchange shall not impose upon Seller any additional liability or financial obligation, and Buyer agrees to hold Seller harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Buyer's ability to dispose of its exchange property or effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

17. **AGENCY DISCLOSURE and BUYER ACKNOWLEDGEMENT:**

BUYER AND SELLER ARE AWARE THAT HOSPITALITY UNLIMITED INVESTMENTS, INC., 17785 CENTER COURT DRIVE N., SUITE 720, CERRITOS, CALIFORNIA 90703 ("SELLER'S AGENT"), REPRESENTS THE SELLER ONLY AND DOES NOT REPRESENT BUYER IN THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

BUYER AND SELLER ARE AWARE THAT JOANNA XIE OF GOLDENPALM INTERNATIONAL, LLC, 14019 SOUTWEST FREEWAY, SUGAR LAND, TEXAS 77478, ("BUYER'S AGENT") REPRESENTS THE BUYER ONLY, IS THE BUYER'S SOLE AGENT, AND DOES NOT REPRESENT SELLER IN THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

Buyer acknowledged that it relied solely on its own evaluation, inspection and judgment and specifically agreed that other than the due diligence material provided directly from Seller, Seller has not made any representation as to the condition of the property or current/future business or performance of business. Buyer has the right to hire Seller's senior management staff after the close of escrow, however, Buyer understands and agrees that Seller does not authorize and shall not be held liable for any representation made by Seller's senior management.

Seller's Initials ___SG___ Seller's Initials ___PP___ Seller's Initials ___PH___ Seller's Initials _____ Seller's Initials _____

Buyer's Initials ___MZA___ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

18. **BROKER DISCLAIMER:** Buyer and Seller acknowledge that, except as otherwise expressly stated herein, Seller's Agent has not made any investigation, determination, warranty or representation with respect to any of the

Purchase and Sale Agreement      Sellers' Initials SG PP PH      Buyers' Initials MZA

Concerning: <u>9090 Southwest Freeway, Houston, TX 77074</u>

following: (a) the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property; (b) the legality of the present or any possible future use of the Property under an federal, state, or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that lease, options, or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility. . Buyer further agrees to reaffirm its acknowledgement of this disclaimer at close of escrow and to confirm that it has relied upon no representations of Buyer's Agent or Seller's Agent in connection with its acquisition of the Property.

Seller's Initials _SG___ Seller's Initials _PP___ Seller's Initials ___ Seller's Initials _____ Seller's Initials _____

Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

19. **INDEMNIFICATION:** Seller and Buyer agree to indemnify and hold Seller's Agent harmless from any and all liability, damages, losses, causes of action, or other claims (including attorneys' fees and other defense costs) arising from or asserted in connection with any incomplete or inaccurate information provided by Seller, or any material information concerning the Property which Seller has failed to disclose.

20. **DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

Seller's Initials _SG___ Seller's Initials _PP___ Seller's Initials ___ Seller's Initials _____ Seller's Initials _____

Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

21. **SUCCESSORS & ASSIGNS:** This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

22. **ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Buyer's Agent or Seller's Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable attorneys' fees in addition to any other relief to which such party may be entitled.

23. **TIME:** Time is of the essence of this agreement.

24. **NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Buyer's Agent) at their respective addresses as set forth below. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or legal holiday, the time for performance shall be extended to the next business day. All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent by fax, or by email. The parties will send copies of any notices to the broker or agent representing the party to whom the notices are sent. Notice sent to one Buyer shall be notice be deemed delivered to all Buyers.

25. **FOREIGN INVESTOR DISCLOSURE:** Seller agrees to execute and deliver any instrument, affidavit or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax and regulations promulgated thereunder.

Purchase and Sale Agreement          Sellers' Initials _SGPP_ _____          Buyers' Initials _____

7

Concerning: 9090 Southwest Freeway, Houston, TX 77074

26. **ENTIRE AGREEMENT; MODIFICATION:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this contract, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by all parties.

27. **INSPECTION OF PROPERTY:** Seller agrees that Buyer and its representatives shall have the right to enter upon and inspect the interior(s) and exterior of the Property during business hours by appointment.

28. **GOVERNING LAW:** This agreement shall be governed by and construed in accordance with the laws of the State of Texas with venue in the county where the Property is located.

29. **SPECIFIC PERFORMANCE:** In the event Buyer fulfills its obligations under the agreement, and Seller refuses to close the transaction and sell the property, Buyer shall be entitled to injunctive relief and/or a decree of specific performance requiring Seller to close the transaction and sell the property.

30. **BACK UP CONTRACTS:** Seller is permitted to entertain and accept backup offers prior to Buyer's removal of contingencies and release of funds to Seller.

31. **MULTIPLE COUNTERPARTS:** This Agreement may be executed in multiple counterparts by the undersigned and all such counterparts so executed shall together be deemed to constitute one final agreement, as if one document had been signed by all the parties hereto. Each such counterpart shall be deemed to be an original, binding the party subscribed thereto, and multiple signature pages (including faxes or other electronic delivery of signature pages) affixed to a single copy of this Agreement shall be deemed to be a fully executed original Agreement. It shall be sufficient in making proof of this Agreement to produce or account for a facsimile or PDF copy of an executed counterparty of this Agreement.

32. **OTHER TERMS AND CONDITIONS:**

**Assumption of Service Contracts.**
Buyer shall, on and as of the Close of Escrow, at its sole cost and expense, assume and agree to pay all sums and perform, fulfill and comply with all other covenants and obligations which are to be paid, performed and complied with by Seller with regards to any Utility and Service Contracts related to the property which arise on and after the Closing Date.

**Crowne Plaza License Agreement.**
Buyer shall, within 10 days of opening escrow, at Purchaser's sole cost and expense, submit its franchise application to obtain the consent of IHG - Crowne Plaza License Agreement (or, if different, the licensor/franchisor under the License Agreement) to the assumption thereof or, alternatively, the termination thereof (purchaser to pay all costs associated with termination) and the release of Seller from all liability under the License Agreement for all periods after the Close of Escrow.

**Liquor License.**
Seller and Buyer shall execute any and all documents applicable to the transfer of Liquor License. The purchase price includes the cost of the Liquor License. The Purchaser will pay for the application fee and all cost related to the application and transfer of the Liquor License.

33. **ADDITIONAL NOTICES:**

    A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

Purchase and Sale Agreement     Sellers' Initials SG PP JA       Buyers' Initials

Concerning: 9090 Southwest Freeway, Houston, TX 77074

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

J. Disclosure: Hospitality Unlimited Investment, Inc. is a California licensed Real Estate Broker, representing Seller. Seller has a business relationship with Shinning City LLC which is a California licensed real Estate broker.

THE PARTIES ARE ADVISED TO CONSULT THEIR RESPECTIVE ATTORNEYS WITH REGARD TO THE LEGAL EFFECT AND VALIDITY OF THIS PURCHASE AGREEMENT.

The undersigned Buyer hereby offers and agrees to purchase the above-described Property for the price and upon the terms and conditions herein stated.

Purchase and Sale Agreement        Sellers' Initials *SG PP M*        Buyers' Initials *NBL*

9

Concerning: 9090 Southwest Freeway, Houston, TX 77074

**This offer is made by Buyer to Seller on this** ⟨6th⟩ **day of January, 2017. The undersigned Buyer hereby acknowledges receipt of an executed copy of this Agreement, including the Agency Disclosure contained in Paragraph 17 above.**

**EXECUTED the** ⟨6th⟩ **day of** ⟨Jan.⟩ **, 2017 (Execution Date).**

BUYER: **Dongtai Investment Group, LLC and/or Mr. Ningbo Xu**

ADDRESS: 13500 West Airport Blvd, # G, Sugar Land, Texas 77498

E-mail: kevinxu98@yahoo.com

By: _____

Name: NINGBO XU

Title: President

DATE: 1/6/2017

TELEPHONE: +1-281-798-2699

SELLER: **Anaheim Coachman Inn LLC, Core Mesa LLC, H.I. Arizona LLC, Shinning City LLC and Homer Chan.**

ADDRESS: 25 Mauchly Suite 305, Irvine, CA 92618

E-mail: SGovind@INNvestment.net

By: _____

Name: Sanjay Govind

Title: General Partner/ Manager

DATE: 01/05/2016

TELEPHONE: (949) 857 1088

## SELLER'S ACCEPTANCE AND AGREEMENT TO PAY COMMISSION

The undersigned Seller accepts the foregoing offer and agrees to sell the Property to Buyer for the price and on the terms and conditions stated herein. Seller acknowledges receipt of an executed copy of this Agreement and authorizes Buyer's Agent to deliver an executed copy to Buyer.

Seller reaffirms its agreement to pay to Seller's Agent and Buyer's Agent a combined real estate brokerage commission equal to two percent (2%) of the Purchase Price to GoldenPalm International, LLC. Said commission is payable in full on the Closing Date and shall be paid through escrow, through closing at the Title Company. Escrow Agent is directed to make such payment to agents from Seller's proceeds of sale.

Buyer agrees to fully and completely indemnify and hold Seller and Seller's Agent harmless from any and all commission disputes by any parties, including any alleged buyer's agent or procuring personnel.
  a. In the event of any commission dispute:

Purchase and Sale Agreement      Sellers' Initials SG PP PH      Buyers' Initials NB

10

Concerning: 9090 Southwest Freeway, Houston, TX 77074

1. Buyer Agent's share of commission shall remain in the escrow, pending resolution, between/among the disputing parties.
2. If Buyer's Agent's commission is in dispute, and if Seller's Agent's commission is not in dispute, Escrow shall release Seller's Agent's commission to Seller's Agent without any further consent or approval by any parties.

2. No such parties, which are disputing commission payment, shall have the right to file a Lis Pendens or take any action to delay or otherwise impede, for whatever reason, the close of the escrow. Escrow is instructed to close escrow without further consent or signatures from Seller/Buyer.

b. All expenses necessary to cover Buyer's duty to indemnify Seller, shall be deducted from Buyers Agent's commission. Escrow is instructed to deduct from the sum prior to final distribution.
THE ABOVE PROVISIONS SHALL SURVIVE AT LEAST 12 MONTHS AFTER THE CLOSE OF ESCROW

BUYER: **Dongtai Investment Group, LLC**    ADDRESS:    13500 West Airport Blvd, # G, Sugar Land, Texas 77498

By:

Name: _NINGBO XU_

Title: _President_

DATE: _1 / 6 / 2017_    TELEPHONE:    +1-281-798-2699


SELLER: **Anaheim Coachman Inn, LLC**    ADDRESS:    25 Mauchly Ste 305 Irvine, CA 92618

By:

Name: Pankaj Patel

Title: Manager

DATE: 01/05/2016    TELEPHONE:    (949) 857 1088


SELLER: **Core Mesa, LLC**    ADDRESS: _____

By: _____

Name: _____

Title: _____

DATE: _____    TELEPHONE: _____

Purchase and Sale Agreement    Sellers' Initials _SG PP. P4_    Buyers' Initials _NBX_

11

Concerning: 9090 Southwest Freeway, Houston, TX 77074

| | | | |
|---|---|---|---|
| SELLER: | H.I. Arizona, LLC | ADDRESS: | 25 Mauchly Ste 305<br>Irvine, CA 92618 |

By: _____

Name: Sanjay Govind

Title: Manager

DATE: 01/05/2016            TELEPHONE: (949) 857 1088

SELLER: **Shinning City, LLC**            ADDRESS: *1785 CENTER COURT DR.*
                                                      *Suite 720, CERRITOS CA 90703*

By: _____

Name: _ICKOR HUI_

Title: _MEMBER_

DATE: 1/6 2016            TELEPHONE: _172-865-6411_

SELLER: **Homer Chan**            ADDRESS: _____

Signed: _____            _____

DATE: _____            TELEPHONE: _____

Seller's Agent accepts and agrees to the foregoing. Seller's Agent represents and warrants that Seller's Agent is unaware of any incorrect or incomplete information contained in any Natural Hazard Disclosures.

SELLER'S AGENT:    HOSPITALITY UNLIMITED INVESTMENTS, INC.

BY: _____            ADDRESS: 17785 Center Court Drive N.,
                                                        Suite 720, Cerritos, CA 90703

DATE: _____            TELEPHONE: _____

Purchase and Sale Agreement        Sellers' Initials _SG PP . MH ._        Buyers' Initials _NKA_

12

Concerning: 9090 Southwest Freeway, Houston, TX 77074

BUYER'S AGENT:      JOANNA XIE OF GOLDENPALM INTERNATIONAL, LLC

BY:                                          ADDRESS:      14019 Southwest Freeway
                                                          Sugar Land, TX 77478

DATE:        01/16/201                       TELEPHONE:    +1-832-488-5813

NO REPRESENTATION IS MADE BY ANY AGENT AS TO THE LEGAL OR TAX EFFECT OR VALIDITY OF ANY
PROVISION OF THIS PURCHASE AGREEMENT. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR
ATTORNEY OR TAX ADVISOR.

## ESCROW RECEIPT

Escrow agent acknowledges receipt of:

☐  A.  the contract on this day _____ (effective date);
☐  B.  earnest money in the amount of $ _____ in the form of _____ on
_____.

Escrow Agent: _____      Address:

By: _____      Phone & Fax: _____
Assigned file number (GF#): _____      E-mail: _____

Purchase and Sale Agreement        Sellers' Initials  SG PP PH            Buyers' Initials  M...

13

# EXHIBIT 2

## COOPERATING BROKERAGE AGREEMENT

Peter Hui, with Hospitality Investments, Inc. (the "Listing Broker / Partner") has agreed to pay United Real Estate and Intergroup Companies ( the "Cooperating Broker's ) a total commission fee of 3% of the total sale price, regarding the Crowne Plaza Hotel located at 9090 Southwest Freeway, only if the transaction closes with one of the Cooperating Broker's registered Prospects. The Coop Fee shall be paid in full to the Cooperating Broker's at Closing. Cooperating Broker agrees to perform the following duties to the best of their abilities:

i. Cooperating Broker agrees to represent the Buyer in all parts of the transaction.

ii. Cooperating Broker will attend all property showings as needed, meetings with the Seller, Buyer due diligence activities, escrow closing and change over.

iii. Cooperating Broker is not acting as a principal or taking any ownership position in the Property.

 *This agreement will expired in 6 months from signing (PH)*

I have read and agree to all of the terms and conditions as set forth above.

_____    2/11/16    _____    2/11/16

Gerrit Stryker (Cooperating Broker)    Date    Peter Hui  (Listing Broker/Partner)    Date

## EXHIBIT A

# EXHIBIT 3

CAUSE NO. 2018-69123

| | | |
|---|---|---|
| GERRIT STRYKER | § | IN THE DISTRICT COURT |
| AND INTERGROUP REALTY, INC., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | 334th JUDICIAL DISTRICT |
| | § | |
| PETER HUI AND HOSPITALITY | § | |
| UNLIMITED INVESTMENTS, INC. | § | |
|     Defendants. | § | HARRIS COUNTY, TEXAS |
| | § | |
| v. | § | |
| | § | |
| DONGTAI INVESTMENTS, LLC AND | § | |
| NINGBO XU | § | |

_____

## <u>DEFENDANTS' THIRD-PARTY PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Defendants, Peter Hui and Hospitality Unlimited Investments, Inc. ("Defendants"), pursuant to TRCP 38 and subject to their Motion for Leave, and file this Third-Party Petition, and would respectfully show as follows:

## I.
## INTRODUCTION

1.0     This case arises from a commercial real estate sale transaction that occurred in 2017.  In short, Plaintiffs claim they are entitled to a commission for the transaction.  Defendants relied on the Buyer's express representations that an individual named Joanna Xie was the only broker working for Buyer when the transaction closed.  Ms. Xie performed all broker duties for the buyer in connection therewith.  Defendants were the agents for the Sellers and already satisfied or caused to be satisfied any obligations to compensate the buyer's broker.  Nevertheless, the contract at issue contains an indemnity clause requiring that buyer "fully and completely" indemnify Seller and Seller's agent (Defendants) from any and all commission disputes by any

1

parties including any alleged buyer's agent.  Because Plaintiffs are making such a claim for a commission, Defendants are entitled to indemnity from the buyer.  Accordingly, Defendants file this Third-Party Petition, subject to their Motion for Leave.  Plaintiffs' causes of action against Defendants sound in Breach of Contract and Quantum Meruit.

## II.
## JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this claim as Third-Party Defendants are residents of Texas.

2.2     Venue is proper in this Court because a substantial part of the acts or omissions alleged herein took place in the district.

## III.
## PARTIES AND SERVICE

3.1     Third Party Defendant, Dongtai Investment Group, LLC, has its principal place of business at 2800 Post Oak Blvd., Houston, Texas 77056; however, upon information and belief, that entity forfeited its existence with the Texas Secretary of State.  Its Registered Agent is Ningbo Xu, residing at 1810 Alcorn Bayo Dr., Sugar Land, Texas 77479.  The Manager of Dongtai Inevestment Group, LLC is also Ningbo Xu, who resides at 1810 Alcorn Bayou Dr., Sugar Land, Texas 77479.  Dongtai Investment Group, LLC d/b/a Crowne Plaza Houston Suites has been a defunct entity in Texas since the Comptroller filed a Tax Forfeiture with the Texas Secretary of State on August 20, 2021.  When it was in business, this entity was managed by Ningbo Xu, and upon information and belief, its primary business was ownership and management of the Crowne Plaza Suites Houston -Near Sugar Land Hotel located at 9090 Southwest Fwy, Houston, Texas 77074 (the "Hotel").

3.2     Ningbo "Kevin" Xu, individually, resides at 1810 Alcorn Bayou Dr., Sugar Land, Texas 77479. **Defendants/Third-Party Plaintiffs requests that citation be issued for Dongtai Investements, LLC and Ningbo Xu.**

3.3     Plaintiffs, Gerrit Stryker and Intergroup Realty, Inc. have appeared through their counsel of record, David Navarro and Jed Williams, Hornberger Fuller & Garza Incorporated.

3.4     Defendants, Peter Hui and Hospitality Unlimited Investments, Inc. have appeared through their counsel of record, Matthew J. Mussalli, The Mussalli Law Firm, 2442 High Timbers Drive, Suite 220, The Woodlands, Texas 77380.

## IV.
## FACTS

4.1     Defendants reallege and incorporate by reference all facts contained above as if set forth fully herein.  Plaintiffs sued Defendants, seeking recovery of a commission in connection with a real estate transaction as more fully described in Plaintiff's Original Petition, a true and accurate copy of which is attached hereto as **Exhibit 1.**

4.2     Defendants have denied the allegations in Plaintiffs' Original Petition against them and asserted certain defenses; however, subject to same, Defendants/Third-Party Plaintiffs are entitled to contractual indemnity from Third-Party Defendants for all purposes related to Plaintiffs' claims.  A true and accurate copy of the contract signed by Third-Party Defendants is attached as **Exhibit 2.**

## V.
## BREACH OF CONTRACT-DUTY TO INDEMNIFY

5.1     Defendants reallege and incorporate by reference all facts contained above as if set forth fully herein.  Pursuant to a written agreement, Buyer-defined in the operative agreement as both Dongtai Investments, LLC and Ningbo Xu owe Defendants/Third-Party Plaintiffs full

3

and compete indemnity for the claims made by Plaintiffs.  Third-Party Defendants have breached

such duties and such breach has caused economic harm to Third-Party Plaintiffs.  Moreover, as to

any judgment that may be rendered against Defendants in this case, they are entitled to indemnity

for same by Dongtai Investments, LLC and Ningbo Xu, Third-Party Defendants.  Third-Party

Defendants have refused to cooperate, and their continued refusal constitutes a material breach of

the operative agreement among the relevant parties. The amount of damages sustained by

Defendants thus far include legal expense but in any case, all damages sustained by Defendants

are within the jurisdictional limits of this Court.  In addition, to the extent Plaintiffs are

successful in obtaining a judgment against either or both Defendants, Defendants are entitled to

indemnity fir not only attorney's fees incurred in the defense of the lawsuit but also, any

damages which may be found to apply by the finder of fact.  Moreover, Third-Party Defendants

are essential parties to this case, and this matter cannot be properly adjudicated without them as

parties in this suit.

**V.**
**PRAYER**

WHEREFORE PREMISES CONSIDERED, Defendants/Third-Party Plaintiffs, Peter Hui

and Hospitality Unlimited Investments, Inc. respectfully pray that upon hearing, Plaintiffs take

nothing against them by way of this lawsuit, and that Defendants/Third-Party Plaintiffs have and

recover judgment against Third-Party Defendants, Dongtai Investments, LLC and Ningbo Xu for

all damages and relief of any nature of which they show themselves justly entitled, at law or in

equity, together with all damages, attorney's fees, costs of court and interest as permitted by law.

Respectfully submitted,

**THE MUSSALLI LAW FIRM**

By: _____

Matthew J. Mussalli
State Bar No. 24005220
Matt@mussallilaw.com
2441 High Timbers Drive, Ste 220
The Woodlands, TX 77380
(281) 651-5577
(832) 218-1171
**Attorney for Defendants**

## CERTIFICATE OF SERVICE

The foregoing document was served upon the following of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on September 2, 2022:

David Jed Williams
Hornberger Fuller & Garza Incorporated
7373 Broadway, Suite 300
San Antonio, Texas 78209

_____
Matthew J. Mussalli

5

# EXHIBIT 1

9/27/2018 5:04 PM
Chris Daniel - District Clerk Harris County
Envelope No. 27871289
By: Miaeda Hutchinson
Filed: 9/27/2018 10:55 AM

CAUSE NO. 2018-69123

| | | |
|---|---|---|
| GERRIT STRYKER | § | IN THE DISTRICT COURT |
| AND INTERGROUP REALTY, INC., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 334th JUDICIAL DISTRICT |
| | § | |
| PETER HUI AND HOSPITALITY | § | |
| UNLIMITED INVESTMENTS, INC. | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Gerrit Stryker and Intergroup Realty, Inc., file their Original Petition against Peter Hui and Hospitality Unlimited Investments, Inc., and would show the court the following:

### I. DISCOVERY CONTROL PLAN

#### 1.01

Plaintiffs intend to conduct discovery in this matter under Level 3 as provided by Rule 190.4 of the Texas Rules of Civil Procedure.

### II. PARTIES

#### 2.01

Plaintiff Gerrit Stryker is an individual residing in Houston, Harris County, Texas. The last three numbers of his driver's license number are 815 and the last three numbers of his Social Security number are 708.

{00225423.1}
4889540.1

2.02

Plaintiff Intergroup Realty, Inc., is a corporation licensed to do business in the State of Texas, whose principal place of business is located at 1119A Waverly Street, Houston, Texas  77008.

2.03

Defendant Peter Hui is an individual residing in Cerritos, California. Hospitality Unlimited Investments, Inc., is a corporation organized under the laws of the State of California that is doing business in Texas.  Defendant Hui and Defendant Hospitality Unlimited Investments, Inc. may each be served with citation at 17785 Center Court Drive, Suite 720, Cerritos, California  90703.

## III. JURISDICTION AND VENUE

3.01

This Court has jurisdiction over the parties and subject matter of this cause of action.  The amount in controversy is within the jurisdictional limits of this Court. Plaintiff seek monetary relief of $1,000,000 or less and nonmonetary relief. TEX. R. CIV. P. 47(c)(2).  Venue is proper and in Harris County, Texas, pursuant to §15.002 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this action occurred in Harris County, Texas.

## IV. FACTS

### 4.01

Plaintiff Stryker is a licensed real estate agent associated with United Real Estate – Houston, which is a d/b/a of URE Houston, LLC ("United"). Plaintiff Intergroup Realty, Inc., ("Intergroup") is a real estate brokerage company. Peter Hui is a licensed real estate broker and a certified hotel administrator. Mr. Hui is also the President, CEO, CFO, and Secretary of Defendant Hospitality Unlimited Investments ("HUI").

### 4.02

On or about February 11, 2016, United and Intergroup entered into a Cooperating Brokerage Agreement ("Agreement") with Defendants, under which Defendants, as Listing Broker/Partner, agreed to pay United and Intergroup, as Cooperating Broker, a three percent (3%) commission fee of the total sales price of the Crowne Plaza Hotel located at 9090 Southwest Freeway in Houston, Texas. Pursuant to the Agreement, the commission fee was to be paid in full upon closing. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

### 4.03

Thereafter, Stryker, on behalf of United, and/or Tandy Lofland, on behalf of Intergroup, introduced HUI and the hotel to a prospect that included American Liberty Hospitality, Inc. and its investors, Ningbo "Kevin" Xu and a "Mr. Jiao" from China, all of whom attended tours of the hotel. In July/August of 2016, these prospects entered into a contract to purchase the hotel, but the sale did not close and

the contract terminated. In December of 2016, HUI agreed to an extension of the Agreement for an additional six months. A true and correct copy of the email communication setting out the agreed-upon extension is attached hereto as Exhibit "B."

4.04

On May 18, 2017, the owners of the hotel signed a Warranty Deed conveying the hotel property to Dongtai Investment Group, LLC, a Texas limited liability company ("Dongtai"). Mr. Xu is the Manager of Dongtai and, based on information and belief, Mr. Jiao is an investor. Even though HUI was aware that this purchaser included prospects introduced by Plaintiffs, HUI knowingly and deliberately excluded Plaintiffs from the transaction. Having introduced the ultimate buyers of the hotel to HUI as prospective purchasers, Plaintiffs are owed a commission on the sale.

4.05

To date, HUI has wholly failed and/or refused to pay the commission in question. On August 31, 2018, Plaintiffs made written demand upon HUI to pay the three percent (3%) commission pursuant to the terms of the Agreement and the subsequent extension of the Agreement. A true and correct copy of that demand letter is attached to this Petition as Exhibit "C." As of the date of filing this Petition, HUI has failed to pay the commission to Plaintiffs.

## V.  CLAIMS AND CAUSES OF ACTION

### 5.01

### Conditions Precedent

All conditions precedent to HUI's performance under the Agreement have occurred.

### 5.02

### Breach of Contract

As a result of HUI's failure to pay for the services contracted for in the Agreement, HUI has breached its contract with Plaintiffs for which Plaintiffs now sue. As a result of this breach, HUI owes Plaintiffs three percent (3%) of the sales price for the hotel, and additional fees, expenses and interest that are still accruing as a result of this breach.

### 5.03

### Quantum Meruit

Alternatively, United and Intergroup rendered valuable services to HUI in introducing prospects for the purchase of the hotel and those services were accepted, used and enjoyed by HUI. By accepting those services, HUI knew and understood that United and Intergroup were expecting to be paid a commission on the sale of the hotel to an investment group which included the prospects introduced by them. Therefore, HUI is liable to United and Intergroup under *quantum meruit* for the reasonable value of the services provided.

## VI. ATTORNEY'S FEES

### 6.01

Plaintiffs incorporate herein all paragraphs set forth above. Plaintiffs have been forced to employ the law firm of Hornberger Fuller & Garza Incorporated to pursue legal remedies against Defendants. Plaintiffs may recover attorney's fees under a written contract pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8). Plaintiffs presented their claim to Defendants, and Defendants did not tender the amount owed within 30 days after the claim was presented.

## VII. REQUEST FOR DISCLOSURE

### 7.01

Under Texas Rules of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that the Defendants be cited to appear and answer, and that upon final hearing in this matter, Plaintiffs be granted judgment including the following relief:

1. Award of all damages resulting from Defendants' breach of the Agreement;

2. Alternatively, award of the reasonable value of the services provided to Defendant by Plaintiffs;

3. Pre-judgment and post-judgment interest on Plaintiffs' recovery at the highest legal rate allowed by law or equity;

4. Costs of Court;

5. Reasonable and necessary attorney's fees allowed under Texas law;

6. All legal and equitable relief requested herein; and

7. Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**HORNBERGER FULLER & GARZA INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209
(210) 271-1700 – Telephone
(210) 271-1730 – Facsimile

By: */s/ David Jed Williams*
    David Jed Williams
    State Bar No. 21518060
    David W. Navarro
    dnavarro@hfgtx.com
    State Bar No. 24027683

ATTORNEYS FOR PLAINTIFFS

# EXHIBIT 2

## COMMERCIAL CONTRACT - IMPROVED PROPERTY

This *Commercial Contract for Improved Property* ("Agreement") is entered into as of JANUARY 6th, 2017 by and between Dongtai Investment Group, LLC and/or Mr. Ningbo Xu (collectively, "**Buyer**") and Anaheim Coachman Inn LLC, Core Mesa LLC, H.I. Arizona LLC, Shinning City LLC and Homer Chan ("**Seller**") in connection with the purchase and sale of that certain hotel located at Crowne Plaza Suites, 9090 Southwest Freeway, Houston, TX 77074 ("**Property**").

Seller agrees to sell the Property, and Buyer agrees to purchase the Property, on the terms and conditions set forth in this Agreement:

1. **PURCHASE PRICE:** At or before closing, Buyer will pay the following sales price for the Property: **Fourteen Million Five Hundred Thousand Dollars** ($14,500,000) ("Purchase Price"). Buyer's Deposit (as defined below) shall be delivered to Escrow Agent, identified below, upon Seller's execution of this Agreement in accordance with the terms of this Agreement.  The balance of the purchase price shall be payable at close of escrow pursuant to the terms stated below.

2. **EARNEST MONEY:** not later than six **(6) days** after the execution of this agreement, Buyer shall deposit **Five Hundred Thousand Dollars** ($500,000) as earnest money ("Buyer's Deposit") at American Title Company of Houston, Attn: Shirley Chiu (Escrow Agent), 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 ("Title Company") by wire transfer, which shall be credited toward the Purchase Price at close of escrow. Buyer and Seller shall ensure that a fully executed copy of this Agreement is delivered to Escrow Agent. If Buyer fails to timely deposit the earnest money, Seller may terminate this contract or exercise any of Seller's other remedies pursuant to this agreement or as allows by law. By providing written notice to Buy before Buyer deposits the earnest money. If Buyer has not timely terminated this contract during the Due Diligence Period and/or Termination Period provided in this contract and such Termination Period has expired, Buyer's earnest money deposit and all other Buyer deposits shall become non-refundable and the Earnest Money shall immediately be released to Seller upon Title Company's receipt of Seller's demand for the release of the funds to Seller. This contract shall serve as Buyer's instruction to the Title Company to release the funds to Seller once the termination period has expired and Buyer has not timely submitted termination in writing to the Title Company.

3. **CLOSING:** The date of the closing of the sale ("Closing Date") will be anytime on or before **Sixty ( 60 ) days** after the "Effective Date" (herein defined as the opening of escrow and the buyer's deposit of earnest money) . Escrow fees shall be split equally between Buyer and Seller. Documentary transfer taxes shall be paid by Seller. All other closing costs shall be paid in accordance with the custom in the county in which the Property is located as advised and provided for by the title company.

A. Buyer shall have one option to extend the Closing Date. Buyer shall have a **Thirty ( 30 )** day extension by delivering written notice of Buyer's exercise of Buyer's extension option to Seller and by delivering of an additional non-refundable **One Hundred Thousand Dollars** ($100,000) deposit ("Buyer's Option Deposit") to Escrow Agent at American Title Company of Houston, 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 for deposit and prior to 5:00 pm CST on the Closing Date. Buyer's Option Deposit shall be immediately released by Escrow Agent to Seller upon Buyer's election to extend the Closing Date and shall be credited toward the Purchase Price at the close of escrow. Buyer shall have a second option to extend the closing date for 20 days without additional deposits PROVIDED Buyer's earnest money and all additional deposits have been released by escrow to seller.

B. At closing, Buyer will:
   (1) pay the sales price in good funds acceptable to the escrow agent;
   (2) deliver evidence that the person executing this contract is legally capable and authorized to bind Buyer;
   (3) sign and send to each tenant in the Property a written statement that:
       (a) acknowledges Buyer has received and is responsible for the tenant's

Purchase and Sale Agreement      Sellers' Initials *SGPP PH*        Buyers' Initials *NRX*

Concerning: 9090 Southwest Freeway, Houston, TX 77074

security deposit; and
(b) specifies the exact dollar amount of the security deposit;
(4) sign an assumption of all leases then in effect; and
(5) execute and delivery any notices, statements, certificates, or other
documents required by this contract or law necessary to close the sale.

C. Unless the parties agree otherwise, all documents should be completed and provided upon closing. Title company shall advise and forward a list of required closing documents to the parties prior to closing.

## 4. TERMS

4.1 **DOWN PAYMENT:** In addition to the Buyer's Deposit, Buyer shall make an all-cash down payment of N/A _____ dollars ($ ___ N/A ___ ) by ___ N/A ___ ("Down Payment Deposit").

4.2 **NEW LOAN**: Buyer agrees to use Buyer's reasonable efforts, at Buyer's expense, to obtain a new loan. Buyer shall submit a written application to obtain said loan to a bona fide lender within **fourteen ( 14 )** calendar days from the effective date and shall authorize said lender to confirm in writing to Seller that lender has received such application. If Buyer fails to notify Seller in writing that Buyer has removed its loan contingency within **forty ( 40 )** calendar days from the effective date, the transaction contemplated by this Agreement shall continue and shall be consummated as set forth in this Agreement. If Buyer notified Seller in writing within such **forty ( 40 )** calendar days that it is unable to remove the loan contingency, this Agreement shall be null and void, and the entire Buyer's Deposit and any Additional Deposit shall be returned to Buyer.

5. **PRORATIONS:** Rentals, revenues, and other income, if any, from the Property and real property taxes and operating expenses, if any, affecting the Property shall be prorated as of 12:01A.M. of the Closing Date. At the close of escrow Buyer will receive a credit and Seller a debit in the amount of all "Advanced Booking Deposits" paid to Seller and not earned with respect to the period prior to the close of escrow. Other general provisions regarding prorations are as follows:

5.1 Seller shall terminate all employees at as of the Closing Date after check out and the rooms are cleaned. All benefits accrued by employees, including sick leave and vacation pay in connection with their employment, shall be responsibility of Seller.

5.2 Seller shall be responsible for all accounts payable, personal property, transient occupancy and payroll taxes as well as collection of accounts receivable accrued prior to the Closing Date.

5.3 Guest ledger receivables (e.g., all amounts, including, without limitation, room charges, food and beverage charges, telephone, in-room movies and any and all incidental charges accrued to the accounts of guests occupying rooms in the Hotel as of the Cutoff Time) shall be prorated as of the Cutoff Time between Buyer and Seller. Seller shall receive a credit for all guest ledger receivables for all room nights up to and including the room night during which the Cutoff Time occurs and Buyers shall be entitled to the amounts of guest ledger receivables for the room nights after the Cutoff Time.

5.4 All city ledger accounts receivable (excluding guest ledger receivables described above) generated from the operation of the Hotel Prior to the Cutoff Time (the **"Pre-Closing City Ledger Accounts"**), shall be retained by seller and seller is responsible for collecting such "Pre-Closing City Ledger Accounts", and Buyer shall not pay for or give Seller a credit at the Close of Escrow for any such accounts receivable. Buyer will cooperate with seller post Closing and use best efforts to pass checks received to seller for accounts receivable related to prior Cutoff Time.

Purchase and Sale Agreement          Sellers' Initials _SG PP PH_          Buyers' Initials _NP Q_

2

Concerning: 9090 Southwest Freeway, Houston, TX 77074

## 6. TITLE POLICY and SURVEY:

A. Title Policy:

(1) Seller, at Seller's expense, will purchase a Standard Owner's Policy of Title (the title policy) issued by American Title Company of Houston, 4660 Sweetwater Blvd, Suite 280, Sugarland, Texas 77479 (the "Title Company") in the amount of the sales price dated at or after closing, insuring Buyer against loss under the title policy, subject only to:

    (a) those title exceptions permitted by this contract or as may be approved by Buyer in writing; and

    (b) the standard printed exceptions contained in the promulgated form of title policy unless this contract provides otherwise.

(2) The standard printed exception as to discrepancies, conflicts, or shortages in area and boundary lines, or any encroachments or protrusions, or any overlapping improvements: WILL NOT BE AMENDED OR DELETED FROM THE TITLE POLICY.

B. Survey: Within fourteen (14) days after the effective date: Seller shall furnish to Buyer a survey of the Property at Seller's expense and deliver a copy of the survey to the Buyer. The survey must be made in accordance with the: ALTA/ACSM Land Title Survey standards.

**7. PERSONAL PROPERTY:** Title to any personal property to be conveyed to Buyer in connection with the sale of the Property shall be conveyed to Buyer free and clear of all encumbrances (except for those previously approved by Buyer in writing). The price of these items shall be included in the purchase price for the Property, and Buyer agrees to accept all such personal property in "as is" condition. Buyer does require Seller to furnish a UCC search.

**8. DOCUMENT CONTINGENCIES:** Seller agrees to provide Buyer with copies of all items listed below within **Five ( 5 )** calendar days following the "Effective Date" of this Agreement.

    8.1 All rental agreements, leases, service contracts, insurance policies, latest tax bill(s).

    8.2 The operating statement of the Property for the **Thirty Six ( 36 )** calendar months immediately preceding the acceptance of the Purchase Agreement.

    8.3 A complete and current rent roll, including a schedule of all tenant deposit and fees.

    8.4 A written inventory of all items of Personal Property to be conveyed to Buyer on the Closing Date.

    8.5 All inspection reports including, but not limited to, reports conducted for health, fire, franchise-company and/or AAA inspections.

    8.6 All other items reasonably requested by Buyer in writing by a separate request for additional due diligence items, setting forth any other additional information requested by Buyer.

All Buyer's request for additional documents must be presented and acknowledged by seller within 2 days of the receipt of the documents 8.1-8.6.

Buyer shall have **Forty ( 40 )** calendar days ("Due Diligence Period" and/or "Termination Period") following Effective Date to review and object in writing to any the foregoing items. If Buyer fails to object to these items within the specified time, Buyer shall be deemed to have accepted those items. Within the aforementioned **Forty ( 40 )** days ("Due Diligence Period") buyer may conduct and examine the following:

    8.7 Inspect and approve the physical structure of the Property.

    8.8 Inspect and approve of all books and records of the Property.

    8.9 Evaluate the economic feasibility.

Purchase and Sale Agreement     Sellers' Initials _SG PP PH._      Buyers' Initials _NBX_

3

Concerning: 9090 Southwest Freeway, Houston, TX 77074

8.10 Obtain Financing.

8.11 Approve of title report for the Property.

8.12 Inspect and approve to the extent they exist: all leases, service contracts, licenses and permits, zoning, governmental use restrictions or the like affecting the subject property.

8.13 Obtain Approval of IHG-Crowne Plaza license

If Buyer objects to any of the foregoing items 8.1 through 8.13 in writing and terminates this Agreement by delivering written notice to Seller prior to expiration of the Due Diligence Period / Termination Period, Buyer's Deposit, along with any Down Payment Deposit (if any), shall be returned, and Buyer and Seller shall have no further obligations hereunder. However, Buyer's failure to terminate the contract during the Due Diligence Period will result in Buyer forfeiting all earnest money to Seller; the earnest money will then become non-refundable and Title Company shall immediately release all earnest money and additional deposits to Seller immediately upon demand from Seller. This contract shall serve as Buyer's instruction to Title Company to perform the above if Buyers fails to terminate the contract during the Due Diligence Period and Seller provided Title Company with demand for release of the funds.

9. **PHYSICAL INSPECTION:** Buyer shall have until the end of the Due Diligence Period to inspect the physical condition of the Property, including, but not limited to interior inspection, soil conditions and the presence or absence of hazardous materials on or about the Property, and all other aspects of the Property to the satisfaction of Buyer. If Buyer fails to notify Seller of its objections to the physical condition of the Property, in writing, by the end of the Due Diligence Period, Buyer shall be deemed to have approved the physical condition of the Property. Notwithstanding any other provision of this Agreement to the contrary, if Buyer objects to the condition of the Property, Buyer may terminate this Agreement prior to the end of the Due Diligence Period, and Buyer's Deposit, along with any Down Payment Deposit, shall be returned to Buyer, and Buyer and Seller shall have no further obligations hereunder.

     (1) During the feasibility period, Buyer, at Buyer's expense, may complete or cause to be completed any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer.

     (2) Seller, at Seller's expense, will turn on all utilities necessary for Buyer to make inspection, studies, or assessments.

     (3) Buyer must:

          (a) employ only trained and qualified inspectors and assessors;

          (b) notify Seller, in advance, of when the inspectors or assessors will be on the Property;

          (c) abide by any reasonable entry rules or requirements of Seller;

          (d) not interfere with existing operations or occupants of the Property; and

          (e) restore the Property to its original condition if altered due to inspections, studies, or assessments that Buyer completes or causes to be completed.

     (4) Except for those matters that arise from negligence of Seller or Seller's agents, Buyer is responsible for any claim, liability, encumbrance, cause of actions, and expenses resulting from Buyer's inspections, studies, or assessments, including any property damage or personal injury. Buyer will indemnify, hold harmless, and defend Seller and Seller's agents against any claim involving a matter for which Buyer is responsible under this paragraph. Buyer's shall secure a policy of insurance to cover all activities to be conducted on the Property on Buyer's behalf prior to the close of escrow. This paragraph survives termination of this contract.

10. **ESCROW DEPOSIT:** Buyer's Deposit (along with any Down Payment Deposit) shall remain in escrow until the date of closing or as otherwise provided in this Commercial Contract for Improved Property. If Buyer has not timely terminated this contract during the Due Diligence Period and/or Termination Period provided in this contract and such Termination Period has expired, Buyer's earnest money deposit and all other Buyer deposits shall become

Purchase and Sale Agreement    Sellers' Initials _SG PP P.H_       Buyers' Initials _NRA_

Concerning: 9090 Southwest Freeway, Houston, TX 77074

non-refundable and the Earnest Money shall immediately be released to Seller upon Title Company's receipt of Seller's demand for the release of the funds to Seller. This contract shall serve as Buyer's instruction to the Title Company to release the funds to Seller once the termination period has expired and Buyer has not timely submitted termination in writing to the Title Company. If the Property is made unmarketable by Seller or by acts of God, war or terrorism, Buyer's Deposit, along with any Down Payment Deposit, shall be returned to Buyer if closing has not occurred and escrow shall be terminated without prejudice to the rights of Buyer, Seller, or Agent (as defined below).

11. **CONDITION OF PROPERTY:** IT IS UNDERSTOOD AND AGREED THAT THE PROPERTY IS BEING SOLD "AS IS", THAT BUYER HAS, OR WILL HAVE PRIOR TO THE CLOSING DATE, INSPECTED THE PROPERTY TO ITS SATISFACTION AND THAT EXCEPT AS MAY BE EXPRESSLY PROVIDED IN THIS AGREEMENT NEITHER SELLER NOR ITS AGENT, REPRESENTATIVE, EMPLOYEES, INCLUDING WITHOUT LIMITATION, THE AGENT, MAKES ANY REPRESENTATION OR WARRANTY AS TO THE PHYSICAL CONDITION, HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, VALUE OF THE PROPERTY OR ITS SUITABILITY FOR BUYER'S INTENDED USE.

BUYER WILL COMPLETE, PRIOR TO THE END OF DUE-DILIGENCE PERIOD, AN ON-SITE INSPECTION OF THE PROPERTY, INCLUDING ALL IMPROVEMENTS AND PERSONAL PROPERTY, THE BOOKS AND RECORDS RELATING TO THE OPERATION OF THE PROPERTY, AND/OR WILL OTHERWISE INVESTIGATE THE PROPERTY, ITS OPERATIONS, ZONING, TITLE MATTERS, ENVIRONMENTAL CONDITION AND THE LIKE TO BUYER'S SATISFACTION. EXCEPT AS SPECIFICALLY PROVIDED TO THE CONTRARY IN THIS AGREEMENT, SELLER AND ITS AGENTS, REPRESENTATIVES, AND EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT, ARE FULLY AND COMPLETELY RELEASED FROM ALL RESPONSIBILITY AND LIABILITY REGARDING THE CONDITION, FITNESS, SUITABILITY, VALUATION AND/OR UTILITY OF THE PROPERTY. BUYER EXPRESSLY ACKNOWLEDGES THAT BUYER IS BUYING THE PROPERTY "AS-IS", WHERE IS, WITH ALL FAULTS, AND BUYER HAS NOT RELIED ON ANY WARRANTIES, PROMISES, AND ALL ASPECTS THEREOF. BUYER ACKNOWLEDGES THAT THE LEASING INFORMATION, FEASIBILITY, MARKETING REPORTS, OR OTHER INFORMATION OF ANY TYPE INCLUDING ANY ENVIRONMENTAL REPORTS THAT BUYER HAS RECEIVED OR MAY RECEIVE FROM SELLER OR SELLER'S AGENTS, REPRESENTATIVES, EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT, IS FURNISHED ON THE EXPRESS CONDITION THAT BUYER SHALL OR WOULD MAKE AN INDEPENDENT VERIFICATION OF THE ACCURACY OF ANY OR ALL SUCH INFORMATION, ALL SUCH INFORMATION BEING FURNISHED WITHOUT ANY WARRANTY WHATSOEVER (EXPRESS OR IMPLIED) AS TO THEIR ACCURACY OR THEIR COMPLETENESS. BUYER AGREES THAT IT WILL NOT ATTEMPT TO ASSERT ANY LIABILITY AGAINST SELLER, OR SELLER'S AGENTS, REPRESENTATIVES, EMPLOYEES, INCLUDING WITHOUT LIMITATION, AGENT, AND BUYER AGREES TO INDEMNIFY AND HOLD SELLER OR SELLER'S AGENT, REPRESENTATIVE, EMPLOYEES, INCLUDING WITHOUT LIMITATION, THE AGENT FREE OF AND HARMLESS FROM ANY AND ALL SUCH CLAIMS OF LIABILITY. THIS INDEMNIFY SHALL SURVIVE THE CLOSING DATE OR THE TERMINATION OF THIS AGREEMENT.

Seller's Initials _SG_   Seller's Initials _PP_   Seller's Initials _PM_   Seller's Initials _____   Seller's Initials _____

Buyer's Initials _NRZ_   Buyer's Initials _____   Buyer's Initials _____   Buyer's Initials _____   Buyer's Initials _____

12. **RISK OF LOSS:** Risk of loss to the Property shall be borne by Buyer upon closing In the event that the improvements on the Property are destroyed or materially damaged between the acceptance of this Agreement and the date title is conveyed to Buyer, Seller shall make such necessary repairs to restore the condition of the Property to the same condition as was approved by Buyer, reasonable wear and tear excepted, until title is conveyed to Buyer, and Buyer shall have no option to terminate this Agreement. Seller shall assign all insurance proceeds, plus Seller's responsibility to pay any deductible amount, to Buyer upon closing, from which time Buyer shall continue to make all necessary repairs to restore the Property to the condition desired by Buyer. Upon Buyer's physical inspection and approval of the Property, Seller shall maintain the Property through close of escrow in the same condition and repair as approved, reasonable wear and tear excepted. This provision is subject to any other option by Buyer to terminate this Agreement.

Purchase and Sale Agreement        Sellers' Initials _SG PP PM_        Buyers' Initials _NRZ_

5

Concerning: 9090 Southwest Freeway, Houston, TX 77074

13. **POSSESSION:** Possession of the Property shall be delivered to Buyer on the Closing Date. All keys, leases, rental agreements, ongoing vendor contracts, shall be delivered to Buyer at close of escrow.

14. **LIQUIDATED DAMAGES:** BUYER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO FIX ACTUAL DAMAGES IN THE EVENT OF A DEFAULT BY BUYER, THAT THE AMOUNT OF BUYER'S EARNEST MONEY DEPOSIT AND ADDITIONAL DEPOSITS INCLUDING DEPOSITS FOR EXTENSION PERIOD IS THE PARTIES' REASONABLE ESTIMATE OF SELLER'S DAMAGES IN THE EVENT OF BUYER'S DEFAULT, AND UPON THE BUYER'S DEFAULT IN ITS PURCHASE OBLIGATIONS UNDER THIS AGREEMENT, SELLER SHALL BE RELEASED FROM ITS OBLIGATION TO SELL THE PROPERTY AND SHALL RETAIN BUYER'S DEPOSIT (AS SAME MAY BE INCREASED BY THE TERMS HEREOF) AS LIQUIDATED DAMAGES, WHICH SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY IN LAW OR AT EQUITY FOR BUYER'S DEFAULT.

Seller's Initials ___SG___ Seller's Initials ___PP___ Seller's Initials _____ Seller's Initials _____ Seller's Initials _____

Buyer's Initials ___MRA___ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

15. **SELLER EXCHANGE:** Buyer agrees to cooperate should Seller elect to sell the Property as part of a like-kind exchange under IRC Section 1031. Seller's contemplated exchange shall not impose upon Buyer any additional liability or financial obligation, and Seller agrees to hold Buyer harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Seller's ability to acquire a suitable exchange property or effectuate an exchange. In the event any exchange contemplated by Seller should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

16. **BUYER EXCHANGE:** Seller agrees to cooperate should Buyer elect to purchase the Property as part of a like-kind exchange under IRC Section 1031. Buyer's contemplated exchange shall not impose upon Seller any additional liability or financial obligation, and Buyer agrees to hold Seller harmless from any liability that might arise from such exchange. This Agreement is not subject to or contingent upon Buyer's ability to dispose of its exchange property or effectuate an exchange. In the event any exchange contemplated by Buyer should fail to occur, for whatever reason, the sale of the Property shall nonetheless be consummated as provided herein.

17. **AGENCY DISCLOSURE and BUYER ACKNOWLEDGEMENT:**

BUYER AND SELLER ARE AWARE THAT HOSPITALITY UNLIMITED INVESTMENTS, INC., 17785 CENTER COURT DRIVE N., SUITE 720, CERRITOS, CALIFORNIA 90703 ("SELLER'S AGENT"), REPRESENTS THE SELLER ONLY AND DOES NOT REPRESENT BUYER IN THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

BUYER AND SELLER ARE AWARE THAT JOANNA XIE OF GOLDENPALM INTERNATIONAL, LLC, 14019 SOUTWEST FREEWAY, SUGAR LAND, TEXAS 77478, ("BUYER'S AGENT") REPRESENTS THE BUYER ONLY, IS THE BUYER'S SOLE AGENT, AND DOES NOT REPRESENT SELLER IN THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

Buyer acknowledged that it relied solely on its own evaluation, inspection and judgment and specifically agreed that other than the due diligence material provided directly from Seller, Seller has not made any representation as to the condition of the property or current/future business or performance of business. Buyer has the right to hire Seller's senior management staff after the close of escrow, however, Buyer understands and agrees that Seller does not authorize and shall not be held liable for any representation made by Seller's senior management.

Seller's Initials ___SG___ Seller's Initials ___PP___ Seller's Initials ___PH___ Seller's Initials _____ Seller's Initials _____

Buyer's Initials ___MRA___ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

18. **BROKER DISCLAIMER:** Buyer and Seller acknowledge that, except as otherwise expressly stated herein, Seller's Agent has not made any investigation, determination, warranty or representation with respect to any of the

Purchase and Sale Agreement          Sellers' Initials SG PP · PH          Buyers' Initials MRA

Concerning: 9090 Southwest Freeway, Houston, TX 77074

following: (a) the financial condition or business prospects of any tenant, or such tenant's intent to continue or renew its tenancy in the Property; (b) the legality of the present or any possible future use of the Property under an federal, state, or local law; (c) pending or possible future action by any governmental entity or agency which may affect the Property; (d) the physical condition of the Property, including but not limited to, soil conditions, the structural integrity of the improvements, and the presence or absence of fungi or wood-destroying organisms; (e) the accuracy or completeness of income and expense information and projections, of square footage figures, and of the texts of leases, options, and other agreements affecting the Property; (f) the possibility that lease, options, or other documents exist which affect or encumber the Property and which have not been provided or disclosed by Seller; or (g) the presence or location of any hazardous materials on or about the Property, including but not limited to, asbestos, PCB's, or toxic, hazardous or contaminated substances, and underground storage tanks.

Buyer agrees that investigation and analysis of the foregoing matters is Buyer's sole responsibility. . Buyer further agrees to reaffirm its acknowledgement of this disclaimer at close of escrow and to confirm that it has relied upon no representations of Buyer's Agent or Seller's Agent in connection with its acquisition of the Property.

Seller's Initials __SG__ Seller's Initials __PP__ Seller's Initials __/M__ Seller's Initials _____ Seller's Initials _____

Buyer's Initials __MBX__ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

**19. INDEMNIFICATION:** Seller and Buyer agree to indemnify and hold Seller's Agent harmless from any and all liability, damages, losses, causes of action, or other claims (including attorneys' fees and other defense costs) arising from or asserted in connection with any incomplete or inaccurate information provided by Seller, or any material information concerning the Property which Seller has failed to disclose.

**20. DISPUTE RESOLUTION:** The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

Seller's Initials __SG__ Seller's Initials __PP__ Seller's Initials __/M__ Seller's Initials _____ Seller's Initials _____

Buyer's Initials __MBL__ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____ Buyer's Initials _____

**21. SUCCESSORS & ASSIGNS:** This Agreement and any addenda hereto shall be binding upon and inure to the benefit of the heirs, successors, agents, representatives and assigns of the parties hereto.

**22. ATTORNEYS' FEES:** In any litigation, arbitration or other legal proceeding which may arise between any of the parties hereto, including Buyer's Agent or Seller's Agent, the prevailing party shall be entitled to recover its costs, including costs of arbitration, and reasonable attorneys' fees in addition to any other relief to which such party may be entitled.

**23. TIME:** Time is of the essence of this agreement.

**24. NOTICES:** All notices required or permitted hereunder shall be given to the parties in writing (with a copy to Buyer's Agent) at their respective addresses as set forth below. Should the date upon which any act required to be performed by this Agreement fall on a Saturday, Sunday or legal holiday, the time for performance shall be extended to the next business day. All notices between the parties under this contract must be in writing and are effective when hand-delivered, mailed by certified mail return receipt requested, sent by fax, or by email. The parties will send copies of any notices to the broker or agent representing the party to whom the notices are sent. Notice sent to one Buyer shall be notice be deemed delivered to all Buyers.

**25. FOREIGN INVESTOR DISCLOSURE:** Seller agrees to execute and deliver any instrument, affidavit or statement, and to perform any act reasonably necessary to carry out the provisions of the Foreign Investment in Real Property Tax and regulations promulgated thereunder.

Purchase and Sale Agreement          Sellers' Initials __SGPP__ __/M__          Buyers' Initials __MBX__

Concerning: <u>9090 Southwest Freeway, Houston, TX 77074</u>

26. **ENTIRE AGREEMENT; MODIFICATION:** Any addendum attached hereto and either signed or initialed by the parties shall be deemed a part hereof. This Agreement, including addenda, if any, expresses the entire agreement of the parties and supersedes any and all previous agreements between the parties with regard to the Property. There are no other understandings, oral or written, which in any way alter or enlarge the terms of this contract, and there are no warranties or representations of any nature whatsoever, either express or implied, except as set forth herein. Any future modification of this Agreement will be effective only if it is in writing and signed by all parties.

27. **INSPECTION OF PROPERTY:** Seller agrees that Buyer and its representatives shall have the right to enter upon and inspect the interior(s) and exterior of the Property during business hours by appointment.

28. **GOVERNING LAW:** This agreement shall be governed by and construed in accordance with the laws of the State of Texas with venue in the county where the Property is located.

29. **SPECIFIC PERFORMANCE:** In the event Buyer fulfills its obligations under the agreement, and Seller refuses to close the transaction and sell the property, Buyer shall be entitled to injunctive relief and/or a decree of specific performance requiring Seller to close the transaction and sell the property.

30. **BACK UP CONTRACTS:** Seller is permitted to entertain and accept backup offers prior to Buyer's removal of contingencies and release of funds to Seller.

31. **MULTIPLE COUNTERPARTS:** This Agreement may be executed in multiple counterparts by the undersigned and all such counterparts so executed shall together be deemed to constitute one final agreement, as if one document had been signed by all the parties hereto. Each such counterpart shall be deemed to be an original, binding the party subscribed thereto, and multiple signature pages (including faxes or other electronic delivery of signature pages) affixed to a single copy of this Agreement shall be deemed to be a fully executed original Agreement. It shall be sufficient in making proof of this Agreement to produce or account for a facsimile or PDF copy of an executed counterparty of this Agreement.

32. **OTHER TERMS AND CONDITIONS:**

**Assumption of Service Contracts.**
Buyer shall, on and as of the Close of Escrow, at its sole cost and expense, assume and agree to pay all sums and perform, fulfill and comply with all other covenants and obligations which are to be paid, performed and complied with by Seller with regards to any Utility and Service Contracts related to the property which arise on and after the Closing Date.

**Crowne Plaza License Agreement.**
Buyer shall, within 10 days of opening escrow, at Purchaser's sole cost and expense, submit its franchise application to obtain the consent of IHG - Crowne Plaza License Agreement (or, if different, the licensor/franchisor under the License Agreement) to the assumption thereof or, alternatively, the termination thereof (purchaser to pay all costs associated with termination) and the release of Seller from all liability under the License Agreement for all periods after the Close of Escrow.

**Liquor License.**
Seller and Buyer shall execute any and all documents applicable to the transfer of Liquor License. The purchase price includes the cost of the Liquor License. The Purchaser will pay for the application fee and all cost related to the application and transfer of the Liquor License.

33. **ADDITIONAL NOTICES:**

   A. Buyer should have an abstract covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

Purchase and Sale Agreement    Sellers' Initials _SG PP_ _PH_    Buyers' Initials _AKR_

Concerning: 9090 Southwest Freeway, Houston, TX 77074

B. If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fees of the district before final execution of this contract.

C. Notice Required by §13.257, Water Code: "The real property, described below, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in the notice or at closing of purchase of the real property." The real property is described in Paragraph 2 of this contract.

D. If the Property adjoins or shares a common boundary with the tidally influenced submerged lands of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included as part of this contract.

E. If the Property is located seaward of the Gulf Intracoastal Waterway, §61.025, Texas Natural Resources Code, requires a notice regarding the seaward location of the Property to be included as part of this contract.

F. If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction (ETJ) of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Buyer should contact all municipalities located in the general proximity of the Property for further information.

G. If apartments or other residential units are on the Property and the units were built before 1978, federal law requires a lead-based paint and hazard disclosure statement to be made part of this contract.

H. Section 1958.154, Occupations Code requires Seller to provide Buyer a copy of any mold remediation certificate issued for the Property during the 5 years preceding the date the Seller sells the Property.

I. Brokers are not qualified to perform property inspections, surveys, engineering studies, environmental assessments, or inspections to determine compliance with zoning, governmental regulations, or laws. Buyer should seek experts to perform such services. Buyer should review local building codes, ordinances and other applicable laws to determine their effect on the Property. Selection of experts, inspectors, and repairmen is the responsibility of Buyer and not the brokers.

J. Disclosure: Hospitality Unlimited Investment, Inc. is a California licensed Real Estate Broker, representing Seller. Seller has a business relationship with Shinning City LLC which is a California licensed real Estate broker.

THE PARTIES ARE ADVISED TO CONSULT THEIR RESPECTIVE ATTORNEYS WITH REGARD TO THE LEGAL EFFECT AND VALIDITY OF THIS PURCHASE AGREEMENT.

The undersigned Buyer hereby offers and agrees to purchase the above-described Property for the price and upon the terms and conditions herein stated.

Purchase and Sale Agreement          Sellers' Initials _SG_ _PP_ _M_          Buyers' Initials _NBJ_

9

Concerning: 9090 Southwest Freeway, Houston, TX 77074

**This offer is made by Buyer to Seller on this ___ day of January, 2017. The undersigned Buyer hereby acknowledges receipt of an executed copy of this Agreement, including the Agency Disclosure contained in Paragraph 17 above.**

**EXECUTED the ___ day of _Jan._, 2017 (Execution Date).**

| | | | |
|---|---|---|---|
| BUYER: | Dongtai Investment Group, LLC and/or Mr. Ningbo Xu | ADDRESS: | 13500 West Airport Blvd, # G, Sugar Land, Texas 77498 |
| | | E-mail: | kevinxu98@yahoo.com |
| | By: _____ | | |
| | Name: NINGBO XU | | |
| | Title: President | | |
| DATE: | 1/6/2017 | TELEPHONE: | +1-281-798-2699 |
| | | | |
| SELLER: | Anaheim Coachman Inn LLC, Core Mesa LLC, H.I. Arizona LLC, Shinning City LLC and Homer Chan. | ADDRESS: | 25 Mauchly Suite 305, Irvine, CA 92618 |
| | | E-mail: | SGovind@INNvestment.net |
| | By: _____ | | |
| | Name: Sanjay Govind | | |
| | Title: General Partner/ Manager | | |
| DATE: | 01/05/2016 | TELEPHONE: | (949) 857 1088 |

## SELLER'S ACCEPTANCE AND AGREEMENT TO PAY COMMISSION

The undersigned Seller accepts the foregoing offer and agrees to sell the Property to Buyer for the price and on the terms and conditions stated herein. Seller acknowledges receipt of an executed copy of this Agreement and authorizes Buyer's Agent to deliver an executed copy to Buyer.

Seller reaffirms its agreement to pay to Seller's Agent and Buyer's Agent a combined real estate brokerage commission equal to two percent (2%) of the Purchase Price to GoldenPalm International, LLC. Said commission is payable in full on the Closing Date and shall be paid through escrow, through closing at the Title Company. Escrow Agent is directed to make such payment to agents from Seller's proceeds of sale.

Buyer agrees to fully and completely indemnify and hold Seller and Seller's Agent harmless from any and all commission disputes by any parties, including any alleged buyer's agent or procuring personnel.
   a. In the event of any commission dispute:

Purchase and Sale Agreement          Sellers' Initials SG PP /H          Buyers' Initials NB

10

Concerning: 9090 Southwest Freeway, Houston, TX 77074

1. Buyer Agent's share of commission shall remain in the escrow, pending resolution, between/among the disputing parties.
2. If Buyer's Agent's commission is in dispute, and if Seller's Agent's commission is not in dispute, Escrow shall release Seller's Agent's commission to Seller's Agent without any further consent or approval by any parties.

2.   No such parties, which are disputing commission payment, shall have the right to file a Lis Pendens or take any action to delay or otherwise impede, for whatever reason, the close of the escrow.  Escrow is instructed to close escrow without further consent or signatures from Seller/Buyer.

b.   All expenses necessary to cover Buyer's duty to indemnify Seller, shall be deducted from Buyers Agent's commission. Escrow is instructed to deduct from the sum prior to final distribution.
THE ABOVE PROVISIONS SHALL SURVIVE AT LEAST 12 MONTHS AFTER THE CLOSE OF ESCROW

| | | | |
|---|---|---|---|
| BUYER: | **Dongtai Investment Group, LLC** | ADDRESS: | 13500 West Airport Blvd, # G, Sugar Land, Texas 77498 |

By: _____

Name: _NING BO XU_

Title: _President_

DATE: _1 / 6 / 2017_     TELEPHONE: _+1-281-798-2699_


SELLER:   **Anaheim Coachman Inn, LLC**     ADDRESS:   25 Mauchly Ste 305
Irvine, CA 92618

By:_____

Name: Pankaj Patel

Title: Manager

DATE: 01/05/2016     TELEPHONE:   (949) 857 1088


SELLER:   **Core Mesa, LLC**     ADDRESS:   _____

By: _____

Name: _____

Title:_____

DATE: _____     TELEPHONE:   _____

Purchase and Sale Agreement     Sellers' Initials _SG PP. PA_     Buyers' Initials _NBX_

11

Concerning: 9090 Southwest Freeway, Houston, TX 77074

SELLER: **H.I. Arizona, LLC**                      ADDRESS: 25 Mauchly Ste 305
                                                             Irvine, CA 92618

By: _____

Name: Sanjay Govind

Title: Manager

DATE: 01/05/2016                    TELEPHONE: (949) 857 1088

SELLER: **Shinning City, LLC**              ADDRESS: 17785 CENTER COURT DR.
                                                     Suite 720, CERRITOS CA 90703

By: _____

Name: ICFOR HUI

Title: MEMBER

DATE: 1/6 2016                      TELEPHONE: 562-865-6411

SELLER: **Homer Chan**                      ADDRESS: _____

Signed: _____           _____

DATE: _____     TELEPHONE: _____

Seller's Agent accepts and agrees to the foregoing. Seller's Agent represents and warrants that Seller's Agent is unaware of any incorrect or incomplete information contained in any Natural Hazard Disclosures.

SELLER'S AGENT:    HOSPITALITY UNLIMITED INVESTMENTS, INC.

BY:                                 ADDRESS: 17785 Center Court Drive N.,
    _____                Suite 720, Cerritos, CA 90703

DATE: _____     TELEPHONE: _____

Purchase and Sale Agreement    Sellers' Initials  SGPP . PH .    Buyers' Initials  NR

12

Concerning: <u>9090 Southwest Freeway, Houston, TX 77074</u>

BUYER'S AGENT:     JOANNA XIE OF GOLDENPALM INTERNATIONAL, LLC

BY:                                              ADDRESS:        14019 Southwest Freeway
                                                                 Sugar Land, TX 77478

DATE:        01/16/2017                          TELEPHONE:      +1-832-488-5813

NO REPRESENTATION IS MADE BY ANY AGENT AS TO THE LEGAL OR TAX EFFECT OR VALIDITY OF ANY
PROVISION OF THIS PURCHASE AGREEMENT. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT YOUR
ATTORNEY OR TAX ADVISOR.

## ESCROW RECEIPT

Escrow agent acknowledges receipt of:

❑  A.  the contract on this day _____ (effective date);
❑  B.  earnest money in the amount of $ _____ in the form of _____ on
_____.

Escrow Agent: _____          Address:
_____
By: _____          Phone & Fax: _____
Assigned file number (GF#): _____          E-mail: _____

Purchase and Sale Agreement          Sellers' Initials _SG PP PH_          Buyers' Initials _____

13

CAUSE NO. 2018-69123

| | | |
|---|---|---|
| GERRIT STRYKER | § | IN THE DISTRICT COURT |
| AND INTERGROUP REALTY, INC., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 334th JUDICIAL DISTRICT |
| | § | |
| PETER HUI AND HOSPITALITY | § | |
| UNLIMITED INVESTMENTS, INC. | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## DEFENDANTS' MOTION FOR LEAVE TO FILE THIRD PARTY PETITION

Defendants, Peter Hui and Hospitality Unlimited Investments, Inc. ("Defendants") move this Court for leave to implead and join Third-Party Defendants, Dongtai Investment Group, LLC, and Ningbo Xu, and would respectfully show this Court the following:

1.  Pursuant to TRCP 38, Defendants seek leave to file their Original Third-Party Petition against Dongtai, Investment Group, LLC and Ningbo Xu.

2.  By way of brief background, this lawsuit involves a commercial real estate transaction for the sale of a Crown Plaza Suites Hotel which was located on the Southwest Freeway in Houston.  The sale occurred on or around January 6, 2017, and was documented with a written purchase agreement identified as "Commercial Contract for Improved Property," (the "Sale Agreement").  The Sale Agreement contained all material terms and conditions, including identification of the parties and the price, as well as a series of material representations and warranties.  A true and accurate copy of the Sale Agreement is attached as **Exhibit 1.**   As is reflected in the Sale Agreement, Dongtai Investments, LLC and Ningbo Xu are collectively identified as the "Buyer." Coachman Inn LLC, Core Mesa LLC, H.I. Arizona LLC, Shinning City LL and Homer Chan are all collectively referred to as the "Seller."  See **Exhibit 1**.

1

3.      In addition, paragraph 17 of the Sale Agreement entitled "Agency Disclosure and Buyer Acknowledgement" identified the Seller's agent as "Hospitality Unlimited Investments, Inc. in Cerritos, California" and the Buyer's agent as "Joanna Xie;" not either Plaintiff.  See **Exhibit 1**.

4.      For purposes of this case, one of the most important provisions contained in the Sale Agreement is an affirmative representation by the Buyer that Joanna Xie of Goldenpalm International, LLC in Sugar Land was the buyer's **sole agent** for the sale and **its only agent**.  See Exhibit 1. In reliance upon that representation, Buyer and its agents acted in conformity, and allowed for the necessary payments to be made to Joanna Xie, the disclosed Buyer's agent who performed her contractual duties.  Nevertheless, in this lawsuit, Plaintiffs-Gerrit Stryker, individually, and Intergroup Realty, Inc., are claiming entitlement to a brokerage fee and the basis of same is a separate document-a Cooperating Brokerage Agreement (the "Broker Agreement").  A true and accurate copy of the Broker Agreement is attached as **Exhibit 2.**  That document was signed by Gerrit Stryker, Individually, and Peter Hui, individually; however, the body of the document defines the "Listing Broker/Partner" as "Peter Hui with American Hospitality Investments, Inc." and the "Cooperating Broker" as "United Real Estate and Intergroup Companies."  **Exhibit 2**.  The Broker Agreement is dated February 11, 2016.  **Exhibit 2**.  Issues relating to the Plaintiff parties are not the subject of this motion.

5.      The Broker Agreement states that the Listing Broker would pay a total commission fee of 3% of the total sale price, **"only if the transaction closes with one of the Cooperating Broker's registered Prospects."  See Exhibit 2** (emphasis added).  The Broker Agreement had a six (6) month term and was extended by agreement. Under the Broker Agreement, the Cooperating Broker was required to identify registered prospects and then perform certain duties in order to be entitled to compensation.  Prior to the conclusions of the term as extended, although Plaintiff

2

identified a prospective buyer, the deal fell through, and a sale was never consummated through any prospect registered by the Cooperating Broker, United Real Estate and Intergroup Companies.

6.      Dongtai Investments, LLC was never a registered prospect under the Broker Agreement.  Although Defendants already allowed for a broker fee to be paid to Joanna Xie, Plaintiffs claim they are entitled to a broker fee because they allege to have introduced a gentlemen named Ningbo Xu to Sellers and further, claim that Mr. Xu was a Manager of Dongtai (which may well have been true); however, the fact remains that neither Ningbo Xu nor Dongtai were registered prospects and neither of them performed services of a broker that were required under the agreement in connection with the closing.  If Plaintiffs are permitted to recover in this suit, that would result in Defendants paying two separate broker fees when only one could have been earned and become due, and Sellers already paid Joanna Xie in 2017.  Although no specific claim for broker fees by more than one broker was ever expected by Defendants, in real estate transactions such as this one, Sellers typically require protection from competing claims by brokers alleging entitlement to brokerage fees, and in this case, such protective language was part of the Sale Agreement.

7.      Dongtai and Xu, the buyer, agreed to blanket indemnity for any and all commission disputes as specifically set forth in the following provision (in relevant part) of the Sale Agreement: ***"Buyer agrees to fully and completely indemnify and hold Seller and Seller's Agent harmless from any and all commission disputes by any parties, including any alleged buyer's agent or procuring personnel."*** **Exhibit 2**.

8.       In this case, the parties have exchanged written documentary discovery and despite good faith efforts to align schedules and locate witnesses, with other trial settings and scheduling conflicts, they have not been able to complete depositions yet.  Defendants recognize this case has been on file for some time, but they earnestly tried to resolve it and minimize expense.  In addition,

3

Defendants recently learned that a witness, Michael Udayan died in or around January 27, 2022. Mr. Udayan was a witness Defendants intended to call as a live witness at trial, and prior to his death, he had served or been appointed in a Receiver capacity for Dongtai. But in connection with Defendants' case work-up and investigation, including following learning of Mr. Udayan's death, although prior attempts to reach Dongtai had been unsuccessful, the undersigned counsel actually made phone contact with Ningbo "Kevin" Xu, and received his email address to ensure that he understood this case was pending and that although Defendants denied any liability to Plaintiffs, Dongtai would be contractually obligated to indemnify Defendants for their attorney's fees and expenses, as well as any potential liability for the claims made the basis of Plaintiff's underlying suit.

9.       Defendants had previously attempted to contact Dongtai, only to receive no response. Since making recent contact with Mr. Xu, he has essentially gone underground and not responded. Without Mr. Udayan able to testify due to his recent death, it is even more critical to join Dongtai and Xu in this lawsuit. Defendants deny their liability to Plaintiff, and it is clear that under the Sale Agreement, Defendants are entitled to indemnity and that they are not the proper parties who would owe Plaintiffs any fee, if entitlement to any such fee is even proven. Given that trial appears imminent and in order to seek justice, Defendants respectfully request that the Court grant them leave to implead Dongtai and Ningbo Xu into this suit.

10.       A true an accurate copy of the Third-Party Petition is attached as **Exhibit 3**. Defendants would show they are contemporaneously filing a Motion for Continuance of the Trial date, and such will be the **final trial continuance that they will urge**. This Motion for Leave is not brought for purposes of mere delay, but so that justice may be done, and that Defendants receive the benefit of the bargain that they negotiated for and avoid an injustice.

4

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that the Court grant their Motion for Leave to implead Dongtai Investments, LLC and Ningbo Xu, together with such other and further relief to which they show themselves entitled or as the Court deems just, proper and equitable under the circumstances.

Respectfully submitted,

**THE MUSSALLI LAW FIRM**

By: _____

Matthew J. Mussalli
State Bar No. 24005220
matt@mussallilaw.com
2441 High Timbers Drive, Suite 220
The Woodlands, Texas 77380
Telephone: (281) 651-5577
Facsimile: (832) 218-1171

**ATTORNEY FOR PETER HUI AND HOSPITALITY UNLIMITED INVESTMENTS, INC.**

## CERTIFICATE OF SERVICE

The foregoing document was served upon the following of record in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on September 2, 2022:

David Jed Williams
Hornberger Fuller & Garza Incorporated
7373 Broadway, Suite 300
San Antonio, Texas 78209

_____

Matthew J. Mussalli

5

9/27/2018 5:04 PM
Chris Daniel - District Clerk Harris County
Envelope No. 27871289
By: Miaeda Hutchinson
Filed: 9/27/2018 10:55 AM

CAUSE NO. _____

| | | |
|---|---|---|
| GERRIT STRYKER | § | IN THE DISTRICT COURT |
| AND INTERGROUP REALTY, INC., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ____ JUDICIAL DISTRICT |
| | § | |
| PETER HUI AND HOSPITALITY | § | |
| UNLIMITED INVESTMENTS, INC. | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs Gerrit Stryker and Intergroup Realty, Inc., file their Original Petition against Peter Hui and Hospitality Unlimited Investments, Inc., and would show the court the following:

## I.  DISCOVERY CONTROL PLAN

### 1.01

Plaintiffs intend to conduct discovery in this matter under Level 3 as provided by Rule 190.4 of the Texas Rules of Civil Procedure.

## II. PARTIES

### 2.01

Plaintiff Gerrit Stryker is an individual residing in Houston, Harris County, Texas.  The last three numbers of his driver's license number are 815 and the last three numbers of his Social Security number are 708.

2.02

Plaintiff Intergroup Realty, Inc., is a corporation licensed to do business in the State of Texas, whose principal place of business is located at 1119A Waverly Street, Houston, Texas  77008.

2.03

Defendant Peter Hui is an individual residing in Cerritos, California. Hospitality Unlimited Investments, Inc., is a corporation organized under the laws of the State of California that is doing business in Texas.  Defendant Hui and Defendant Hospitality Unlimited Investments, Inc. may each be served with citation at 17785 Center Court Drive, Suite 720, Cerritos, California  90703.

### III. JURISDICTION AND VENUE

3.01

This Court has jurisdiction over the parties and subject matter of this cause of action.  The amount in controversy is within the jurisdictional limits of this Court. Plaintiff seek monetary relief of $1,000,000 or less and nonmonetary relief. TEX. R. CIV. P. 47(c)(2).  Venue is proper and in Harris County, Texas, pursuant to §15.002 of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this action occurred in Harris County, Texas.

# IV. FACTS

### 4.01

Plaintiff Stryker is a licensed real estate agent associated with United Real Estate – Houston, which is a d/b/a of URE Houston, LLC ("United"). Plaintiff Intergroup Realty, Inc., ("Intergroup") is a real estate brokerage company. Peter Hui is a licensed real estate broker and a certified hotel administrator. Mr. Hui is also the President, CEO, CFO, and Secretary of Defendant Hospitality Unlimited Investments ("HUI").

### 4.02

On or about February 11, 2016, United and Intergroup entered into a Cooperating Brokerage Agreement ("Agreement") with Defendants, under which Defendants, as Listing Broker/Partner, agreed to pay United and Intergroup, as Cooperating Broker, a three percent (3%) commission fee of the total sales price of the Crowne Plaza Hotel located at 9090 Southwest Freeway in Houston, Texas. Pursuant to the Agreement, the commission fee was to be paid in full upon closing. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

### 4.03

Thereafter, Stryker, on behalf of United, and/or Tandy Lofland, on behalf of Intergroup, introduced HUI and the hotel to a prospect that included American Liberty Hospitality, Inc. and its investors, Ningbo "Kevin" Xu and a "Mr. Jiao" from China, all of whom attended tours of the hotel. In July/August of 2016, these prospects entered into a contract to purchase the hotel, but the sale did not close and

the contract terminated. In December of 2016, HUI agreed to an extension of the Agreement for an additional six months.  A true and correct copy of the email communication setting out the agreed-upon extension is attached hereto as Exhibit "B."

### 4.04

On May 18, 2017, the owners of the hotel signed a Warranty Deed conveying the hotel property to Dongtai Investment Group, LLC, a Texas limited liability company ("Dongtai"). Mr. Xu is the Manager of Dongtai and, based on information and belief, Mr. Jiao is an investor. Even though HUI was aware that this purchaser included prospects introduced by Plaintiffs, HUI knowingly and deliberately excluded Plaintiffs from the transaction. Having introduced the ultimate buyers of the hotel to HUI as prospective purchasers, Plaintiffs are owed a commission on the sale.

### 4.05

To date, HUI has wholly failed and/or refused to pay the commission in question. On August 31, 2018, Plaintiffs made written demand upon HUI to pay the three percent (3%) commission pursuant to the terms of the Agreement and the subsequent extension of the Agreement.  A true and correct copy of that demand letter is attached to this Petition as Exhibit "C."  As of the date of filing this Petition, HUI has failed to pay the commission to Plaintiffs.

## V.  CLAIMS AND CAUSES OF ACTION

### 5.01

### Conditions Precedent

All conditions precedent to HUI's performance under the Agreement have occurred.

### 5.02

### Breach of Contract

As a result of HUI's failure to pay for the services contracted for in the Agreement, HUI has breached its contract with Plaintiffs for which Plaintiffs now sue. As a result of this breach, HUI owes Plaintiffs three percent (3%) of the sales price for the hotel, and additional fees, expenses and interest that are still accruing as a result of this breach.

### 5.03

### Quantum Meruit

Alternatively, United and Intergroup rendered valuable services to HUI in introducing prospects for the purchase of the hotel and those services were accepted, used and enjoyed by HUI.  By accepting those services, HUI knew and understood that United and Intergroup were expecting to be paid a commission on the sale of the hotel to an investment group which included the prospects introduced by them. Therefore, HUI is liable to United and Intergroup under *quantum meruit* for the reasonable value of the services provided.

## VI. ATTORNEY'S FEES

### 6.01

Plaintiffs incorporate herein all paragraphs set forth above. Plaintiffs have been forced to employ the law firm of Hornberger Fuller & Garza Incorporated to pursue legal remedies against Defendants.  Plaintiffs may recover attorney's fees under a written contract pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8). Plaintiffs presented their claim to Defendants, and Defendants did not tender the amount owed within 30 days after the claim was presented.

## VII. REQUEST FOR DISCLOSURE

### 7.01

Under Texas Rules of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2

## VIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that the Defendants be cited to appear and answer, and that upon final hearing in this matter, Plaintiffs be granted judgment including the following relief:

1. Award of all damages resulting from Defendants' breach of the Agreement;

2. Alternatively, award of the reasonable value of the services provided to Defendant by Plaintiffs;

3. Pre-judgment and post-judgment interest on Plaintiffs' recovery at the highest legal rate allowed by law or equity;

4.  Costs of Court;

5.  Reasonable and necessary attorney's fees allowed under Texas law;

6.  All legal and equitable relief requested herein; and

7.  Such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

**HORNBERGER FULLER & GARZA INCORPORATED**
7373 Broadway, Suite 300
San Antonio, Texas 78209
(210) 271-1700 – Telephone
(210) 271-1730 – Facsimile


By: */s/ David Jed Williams*
David Jed Williams
State Bar No. 21518060
David W. Navarro
dnavarro@hfgtx.com
State Bar No. 24027683

ATTORNEYS FOR PLAINTIFFS

## COOPERATING BROKERAGE AGREEMENT

Peter Hui, with Hospitality Investments, Inc.  (the "Listing Broker / Partner") has agreed to pay United Real Estate and Intergroup Companies ( the "Cooperating Broker's ) a total commission fee of 3% of the  total sale price, regarding the Crowne Plaza Hotel located at 9090 Southwest Freeway, only if the transaction closes with one of the Cooperating Broker's registered Prospects. The Coop Fee shall be paid in full to the Cooperating Broker's at Closing. Cooperating Broker agrees to perform the following duties to the best of their abilities:

i. Cooperating Broker agrees to represent the Buyer in all parts of the transaction.

ii. Cooperating Broker will attend all property showings as needed, meetings with the Seller, Buyer due diligence activities, escrow closing and change over.

iii. Cooperating Broker is not acting as a principal or taking any ownership position in the Property.

④ *This agreement will expired in 6 months from signing* (PH)

I have read and agree to all of the terms and conditions as set forth above.

| | | | |
|---|---|---|---|
| _____ | 2/11/16 | _____ | 2/11/16 |
| Gerrit Stryker (Cooperating Broker) | Date | Peter Hui  (Listing Broker/Partner) | Date |



## EXHIBIT A

| | |
|---|---|
| **Subject:** | Fwd: Cooperating Brokerage Agreement |
| **From:** | Gerrit Stryker (gerritstryker@yahoo.com) |
| **To:** | tandy@intergroupcompanies.com; |
| **Date:** | Tuesday, August 8, 2017 3:34 PM |

Begin forwarded message:

**From:** Gerrit Stryker <gerritstryker@yahoo.com>
**Date:** February 23, 2017 at 4:27:39 PM CST
**To:** William Harmeyer <wharmeyer@harmeyerlaw.com>
**Subject: Fwd: Cooperating Brokerage Agreement**

Here is the email thread for the extension.

Begin forwarded message:

**From:** Peter Hui <peter@huihotels.com>
**Date:** December 5, 2016 at 6:34:30 PM CST
**To:** 'Gerrit Stryker' <gerritstryker@yahoo.com>
**Cc:** Sanjay Govind <Sgovind@innvestment.net>
**Subject: RE: Cooperating Brokerage Agreement**

O.K. I will extend that for another 6 months.

**From:** Gerrit Stryker [mailto:gerritstryker@yahoo.com]
**Sent:** Monday, December 05, 2016 4:28 PM
**To:** Peter Hui
**Cc:** Sanjay Govind
**Subject:** Re: Cooperating Brokerage Agreement

We can't approach other prospects unless we are protected. We only go to previous contacts we know are qualified. But we can't register clients or buyers with you without having protection.

# EXHIBIT B

Just reply agreeing is all we need to continue working on this for you guy. I assure you we are the best around.

On Dec 5, 2016, at 5:45 PM, Peter Hui <peter@huihotels.com> wrote:

Dear Gerrit.

I will consider it If and when you have a qualified buyer on the table.

**From:** Gerrit Stryker [mailto:gerritstryker@yahoo.com]
**Sent:** Monday, December 05, 2016 9:21 AM
**To:** Peter Hui; Sanjay Govind
**Subject:** Re: Cooperating Brokerage Agreement

Hi Peter and Sanjay,

We are still speaking with Nick on a regular basis and attempting to get him to move forward again as well as find out at what price he feels comfortable with, given the drastic decline in income since we first got started. We have a few other avenues of buyers we want to pursue, however we realized that our agreement has expired. So if you could please reply to this email approving a 6 month extension to our cooperating agreement, effective at the date of replying, for any buyers me and Tandy bring to the table, so we are protected.

Thanks

Gerrit Stryker

Begin forwarded message:

**From:** Peter Hui <peter@huihotels.com>
**Date:** February 11, 2016 at 1:41:21 PM CST
**To:** 'Gerrit Stryker' <gerritstryker@yahoo.com>
**Subject: FW: Cooperating Brokerage Agreement**

Here it go.

**From:** Terisa Liang
**Sent:** Thursday, February 11, 2016 11:15 AM
**To:** Peter Hui
**Subject:** Cooperating Brokerage Agreement

# Terisa Liang

Hospitality Unlimited Investments, Inc.

17785 Center Court Drive N

Suite 720

Cerritos, CA 90703

Tel:  (562) 865-6411

Fax: (562) 865-6511

Email: terisa@huihotels.com

Website: www.huihotels.com

***Attention: Please note new phone number and address as above

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# Hornberger Fuller & Garza
### INCORPORATED

David Jed Williams
jwilliams@hfgtx.com
Direct Dial: (210) 271-1731

August 31, 2018

***Via Email and***
***Via CMRRR***
Mr. Peter Hui
Hospitality Unlimited Investments, Inc.
17785 Center Court Dr., Suite 720
Cerritos, California 90703

Re:   Cooperating Brokerage Agreement with United Real Estate and Intergroup
       Realty, Inc. pertaining to Crown Plaza Hotel, 9090 Southwest Freeway,
       Houston, Texas

Dear Mr. Hui:

This firm represents United Real Estate, Intergroup Realty, Inc., and their principals, Gerrit Stryker and Tandy O. Lofland.

On February 11, 2016, you entered into a Cooperating Brokerage Agreement with our clients pertaining to the prospective sale of the Crown Plaza Hotel located at 9090 Southwest Freeway, Houston, Texas. Under the terms of this agreement, you agreed to pay our clients a commission fee of 3% of the total sales price of the hotel if a sales transaction closed with one of our clients' registered prospects.

Our clients introduced to you and the hotel a prospect that included American Liberty Hospitality and its investors Ningbo "Kevin" Xu and Mr. Jiao from China, all of whom attended tours of the hotel. In July/August, 2016, our clients' prospects entered into a contract to purchase the hotel, but the sale did not close and the contract terminated.

In December, 2016, you agreed to an extension of the Cooperating Broker Agreement for an additional six months.

On May 18, 2017, the owners of the hotel signed a Warranty Deed conveying the hotel property to Dongtai Investment Group, LLC, a Texas limited liability company ("Dongtai"). Mr. Xu is the Manager of Dongtai and we suspect that Mr. Jiao is involved as an investor.

{00223150.1}

7373 Broadway, Suite 300 · San Antonio, Texas  78209
(210) 271-1700 · Fax (210) 271-1740

**EXHIBIT C**

Mr. Peter Hui
Hospitality Unlimited Investments, Inc.
August 31, 2018
Page 2

Because our clients introduced the ultimate buyers of the hotel to you as prospective purchasers, our clients are owed their commission on the sale. This letter constitutes a demand for payment of a commission equaling 3% of the total sales price of the hotel. If you fail to honor the agreement and pay this commission, our clients will have no choice but to pursue all available legal remedies, including filing suit to seek all damages and recovery of attorneys' fees.

Our clients are interested in resolving this matter without litigation, if possible, but if not, please be assured that we will move forward with filing a lawsuit if we do not resolve this matter soon.

Please contact us if you wish to discuss this matter further.

Sincerely,

**HORNBERGER FULLER & GARZA INCORPORATED**

By: _____
David Jed Williams

DJW:mec

{00223150.1}

**Hornberger Fuller & Garza**
INCORPORATED