IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **XIONGEN JIAO, QIANJU JIAO,** § <br> **ZHONGHUA YU, JIATONG YU,** § <br> **PENGFEI ZHOU & XUANMEI ZHOU,** § <br> *Plaintiffs*, § <br> § <br> **vs.** § <br> § <br> **NINGBO XU, an individual, and** § <br> **LCL COMPANY, LLC, a Texas** § <br> **Limited Liability Company,** § <br> *Defendants*, § <br> § <br> **DONGTAI INVESTMENT GROUP, a** § <br> **Texas Limited Liability Company,** § <br> *Nominal Defendant*. § | | Case No.: 4:19-CV-01848 |

### PLAINTIFFS' OBJECTION TO CLAIM NO. 10
### FILED BY PROPERTY CARE SERVICES LLC

COME NOW, Xiongen Jiao, Qianju Jiao, Zhonghua Yu, Jiatong Yu, Pengfei Zhou and Xuanmei Zhou, Plaintiffs and Receivership Claimants (the "Plaintiffs") herein, and file this, their Reply to the Response to Objection to Claim No. 10 Filed by Property Care Services LLC (the "Claim"). In doing so, they would show this Honorable Court as follows:

**I**
**NO CONTRACT EXISTS**

Property Care Services LLC ("Property Care") is owned and operated by Carlos Campos, who was also employed (and still is) as the chief maintenance employee of the Crowne Plaza Hotel (the "Hotel"). Campos was employed to maintain the Hotel and act according to industry standards. Campos was employed by the Hotel as Director Engineering and was employed in this position throughout COVID. Further, payroll records for the Hotel indicate that Mr. Campos was employed by the hotel and receiving a salary from the hotel and there are no documents

which indicate that Campos was authorized to contract out work to Property Services LLC nor do any documents exist between the Hotel and Property Care for work to be performed. Additionally, Campos claims he was terminated from employed in 2020 due to the COVID crisis. However, this is likely not the case. During this time, it was a common situation for hotels which temporarily suspended operations during the pandemic to preserve capital by not incurring any unnecessary expenses, such as contracting cleaning work to a third parties. *See* Exhibit 2, ¶¶ 7 and 10, Declaration of Dilip Kanji.

Campos makes the claim that no written contract is needed for the type of work done because an oral contract is sufficient. However, the industry standard is that a chief maintenance employee or Director of Engineering may not contract work out to themselves in the hospitality industry without a written contract between the parties. *See* Exhibit 2, ¶¶ 9 and 11. Moreover, a written agreement for this type of work, especially with financial costs related to such work, necessitate written consent of the hotel owner/manager, is the standard practice followed and outlined in the manuals and guidelines of the hospitality industry. *See* Exhibit 2, ¶ 13.

## II
### UDAYAN LACKED CONTRACTUAL AUTHORITY

Claimant argues that the Hotel Management Agreement ("HMA") between Ameristar Hospitality Group and Dongtai Investment group provided Michaal Udayan ("Udayan') with authority to operate and manage all spaces in the Hotel. However, the HAM naturally terminated as per the agreement on March 4, 2019, two (2) years from the effective date as pointed out in Section 5, Term, Termination and Default. As a result, after March 4, 2019, Michael Udayan, the President of Ameristar Hospitality Group, no longer had the authority under the HMA to operate and manage the spaces in the Hotel.

While Udayan may have authority as the court-appointed Receiver of the Hotel, (1) there lacks a written contract between Campos and the Hotel for such work, as required by industry standards; (2) there is a lack of evidence to show that the work was commissioned or necessary for what Claimant claims; and (3) as per industry standard the cost for cleaning was not reasonable.

### III
### UNREASONABLE CHARGES FOR THE VALUE OF THE WORK DONE

Campos claims that $500 per room for cleaning is a reasonable price and is industry standard. Campos further provides a biased affidavit of Faramarz Salahshour, who is familiar and has a working relationship with Campos that $500 a room for deep cleaning is more than fair, as typically it costs $1,200 to $1,500 per room. However, the value for deep cleaning a room is not such, and typically ranges between $100 to $150 per room in the Houston market. *See* Exhibit 2, ¶ 8.

Campos makes a claim that 243 rooms were deep cleaned, and provides an un-countersigned invoice of such, which Campos failed to provide when previously requested, creating doubt that such invoice existed until recently. Nevertheless, the evidence is to the contrary. Exhibit 5 to the Campos Affidavit in Campos's response, is a text message between Udayan and Campos. In the text exchange, Campos texts Udayan that only 150 rooms need to be cleaned. Further the text message states nothing about getting a deep clean. In fact, Udayan in his text message, states that "It's not [a] full clean. Just remove mold if they see any. It does not have to be spotless. It is already mostly clean." *See* Docket Entry 211-3, p.13. Clearly, based on the text message, Udayan's explicit instructions to Campos, a deep clean is not necessary.

Furthermore, Udayan writes the following regarding what areas and how many rooms to clean: "Honestly if you just focus on 10 rooms or so on the corners where the water leak was it

will be fine: 6 though 2 and ground floor it will be fine too." Ultimately, Udayan states "that will be about 50 rooms." *Id*. Simply put, Campos was not given the order to clean 243 rooms, and rather was asked to clean only fifty (50) rooms. Either way, based on the hotel industry standard, the manuals and guidelines of the hospitality industry would not outsource deep cleaning or the type of cleaning that was done for the Hotel here to a third party, like PCS. *See* Management Manual, Exhibit 1. Given that only fifty (50) rooms needed light cleaning, this would be done by the Hotel and if the work was outsourced to a third party then it would typically cost $5,000 to $7,500, applying a cost of cleaning of $100 to $150 per room as is the typical practice. *See* Exhibit 2, ¶ 8. Further, as per the standard practices of the hospitality industry would required a written agreement and written consent of the hotel owner / manager. *See* Exhibit 2, ¶ 13.

Expert witness Dilip Kanji reviewed documents and evidence pertaining to the claim and finds that if a hotel is hiring an outside cleaning service company it would typically have obtained several comparable quotes prior to selecting a third party. *See* Exhibit 2, ¶ 15. Kanji also finds it "extremely unusual that there is no written contract, no written scope of work, nor ongoing approval and sign-off on work accomplished. There appears to be only one invoice for the work involved, no progressive draw requests for work completed to date (as typically submitted by most contractors). There is also absolutely no reliable documentation for this apparent verbal agreement which is not in the best interests of the Hotel or its owners." *See* Exhibit 2, ¶ 12. Additionally, the only written communication between Udayan and Campos illustrates that Campos was requested to clean around 50 hotel rooms. *See* Docket Entry #211-3, p. 13.

Based on Kanji's long professional experience he does not believe any responsible owner or professional hotel management team would have contracted the subject work to a third party

especially in a Covid pandemic environment where the focus on most hotels was to preserve capital. *See* Exhibit 2, ¶ 10. This is especially true had the work taken place while the hotel operations were suspended, as they were in this case, and in Kanji's opinion he also does not believe such work would be contracted out to the director of maintenance for the hotel. Typically such work would fall under the responsibility of the hotel's maintenance department and be done through hotel employees. "This is far more cost-effective and allows for closer and more efficient supervision of the work in question." *See* Exhibit 2, ¶ 10.

As per the Hotel Management Manual of a hotel similar to that of Crown Royal, it states that "each hotel must develop, implement and document a deep cleaning program. The program must be designed to ensure that the hotel is maintained at a high level of cleanliness." *See* Exhibit 1, Hampton Inn Manual; Exhibit 2, ¶ 14. "This cleaning is done by the hotel staff and maintenance team." Exhibit 2, ¶ 14.

Here, the cost per room is much too high, there is no written agreement evidencing the request for a cleaning by a third party, and, at best, Udayan is requesting Campos clean fifty (50) rooms as an employee of the Hotel. There is no authority that allows Udayan to outsource such work, as the HMA has terminated and there is no written consent for such work from the Plaintiffs.

## IV
### EVIDENTIARY CONCERNS

Any evidence presented in a summary judgment proceeding must be properly authenticated and admissible. Fed. R. Civ. P. 56(c)(1)(A); *Law Co. v. Mohawk Constr. Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009); *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007). Documentary evidence should be proved up by an affidavit or declaration authenticating such evidence, sworn by a person with knowledge of the document. *Las Vegas Sands v. Nehme*, 632

F.3d 526, 532-33 (9th Cir. 2011); *Bias*, 508 F.3d at 1224; *Zoslaw v. MCA Distrib.*, 693 F.2d 870, 883 (9th Cir. 1982).

Property Care Services LLC previously attempted to submit a confusing and unauthenticated welter of documentation and photographs in support of its claim. The documents do not and cannot represent summary judgment evidence in this claim procedure. While this is not a summary judgment proceeding, the Court has ordered that claim submission evidentiary matters will be governed by summary judgment evidentiary standards. "Any evidence supporting such objection [or response to objection] should be submitted in the same manner as that required under Fed. R. Civ. P. 56 practice." Order to Establish Procedures to Determine and/or Disallow Disputed Claims Against the Receivership, Docket Entry 192, p. 2-3. Accordingly, evidence not proven up by affidavit or declaration cannot be considered as evidence in support of the claim.

Property Care Services LLC's only properly authenticated evidence in support of its claim are the affidavits and evidence attached to the affidavits in Docket Entry 211. In this evidence, Claimant purports to show a before and after photograph of one hotel room, one uncountersigned invoice, and a copy of a text exchange in which the former receiver, Mr. Michael Udayan only asks for the cleaning of 50 hotel rooms, not over 200, as the Claimant seeks to recover. The affidavits and evidence attached to the affidavits in Docket Entry 211 are the only properly authenticated evidence submitted in support of Property Care Services LLC's claim in the amount of $153,823.00. They simply do not properly support the claim.

## V
## CONCLUSION

Campos lacks evidence to support his claim that he was given authority to conduct the work through PCS for the value he is requesting. Based on the evidence, no written contractual

agreement exists for the type of work as required by the hospitality industry standard and the evidence only supports the cleaning of fifty (50) rooms at best. Typically the cost for cleaning a room would be $100 to $150.  However this type of work would be done by the Hotel by and under the chief maintenance employee or Director of Engineering. Here, Campos was not acting within his scope of employment, the agreement to contracting work out to Campos through Property Care Services LLC was not authorized and therefore the Claim should be objected.

WHEREFORE, premises considered, Plaintiffs respectfully pray that the Court disallow the Claim filed by the Property Care Services LLC, or in the alternative, limit the amount of the claim to $7,500, the fair market value of same.  Plaintiffs pray for all other relief, either at law or in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ Stacey L. Barnes
Stacey L. Barnes
sbarnes@kmd.law
Kearney, McWilliams & Davis, PLLC
55 Waugh Drive, Suite 150
Houston, Texas 77007
(713) 936-9620 x121
(832) 413-5405 *fax*
**Counsel for Plaintiffs Xiongen Jiao, Qianju Jiao, Zhonghua Yu, Jiatong Yu, Pengfei Zhou and Xuanmei Zhou**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of May, 2023, I served a true and correct copy of the foregoing pursuant to Rule 5 of the Federal Rules of Civil Procedure, via the CM/ECF system and/or electronic mail and/or by depositing in the United States Mail, postage prepaid and properly addressed to all known counsel of record.

*/s/ Stacey L. Barnes*
Stacey L. Barnes